## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOSH WOZNIAK, ANGEL CASTANEDA, RAJ CHAUHAN, ROBERT DESOTELLE, SAMANTHA ELLIS, DONALD LYCAN, and DAVID MATHIAS, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> vs.<br><br>FORD MOTOR COMPANY,<br><br>     Defendant. | No.<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................... 1

II.  JURISDICTION ..................................................................... 5

III.  VENUE ............................................................................... 5

IV.  PARTIES ............................................................................. 6

    A.  Plaintiffs ....................................................................... 6

        1.  Arizona Plaintiff ...................................................... 6

            a.  Josh Wozniak ................................................. 6

        2.  California Plaintiff .................................................. 8

            a.  Angel Castaneda ............................................ 8

        3.  Illinois Plaintiff .................................................... 11

            a.  Raj Chauhan .................................................. 11

        4.  North Carolina Plaintiff ......................................... 13

            a.  Robert Desotelle ............................................ 13

        5.  Ohio Plaintiff ....................................................... 17

            a.  Samantha Ellis ............................................... 17

        6.  Tennessee Plaintiff ............................................... 19

            a.  Donald Lycan ................................................ 19

        7.  Virginia Plaintiff .................................................. 22

            a.  David Mathias ............................................... 22

    B.  Defendant ..................................................................... 24

V.  FACTUAL ALLEGATIONS ................................................... 25

A.    The lug nut is a simple part with a simple purpose...........................25

B.    Ford marketed Affected Vehicles based on appearance and styling because it knew appearance and styling were material to prospective customers. .......................................................28

C.    The Affected Vehicles cannot be safely driven with swollen and delaminated lug nuts..................................................31

    1.    The nature of the defect and its safety consequences ..............31

    2.    The economic consequences associated with the defective lug nuts .....................................................32

    3.    Consumer complaints document years of frustration with Ford's defective two-piece lug nuts...........................33

D.    Ford has been aware of the defective nature of their lug nuts for years, yet has done nothing. ................................................46

E.    Despite express warranties, Ford has not fixed the problems with the defective lug nuts. .................................................68

    1.    Ford provided an express warranty with vehicles equipped with defective lug nuts that promised to fix both design and manufacturing defects. ...................................68

A.    Discovery Rule tolling .......................................................71

B.    Fraudulent concealment tolling...........................................72

C.    Estoppel .........................................................................73

VII.    CLASS ALLEGATIONS ............................................................73

VIII.    CLAIMS FOR RELIEF................................................................83

A.    Claims brought on behalf of the Nationwide Class ...........................83

COUNT ONE VIOLATION OF MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301 *ET SEQ.*)........................................................83

B.    State law claims..................................................................87

- ii -

COUNT TWO VIOLATION OF THE ARIZONA CONSUMER FRAUD
ACT (ARIZ. REV. STAT. § 44-1521 *ET SEQ.*)............................................87

COUNT THREE FRAUD BY CONCEALMENT (BASED ON ARIZONA
LAW)....................................................................................................88

COUNT FOUR UNJUST ENRICHMENT (BASED ON ARIZONA LAW)........92

COUNT FIVE VIOLATION OF THE CALIFORNIA UNFAIR
COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *ET
SEQ.*)....................................................................................................93

COUNT SIX VIOLATION OF THE CALIFORNIA CONSUMERS
LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*) ...............95

COUNT SEVEN VIOLATION OF THE CALIFORNIA FALSE
ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 ET
SEQ.)....................................................................................................97

COUNT EIGHT FRAUD BY CONCEALMENT (BASED ON
CALIFORNIA LAW)................................................................................99

COUNT NINE UNJUST ENRICHMENT (BASED ON CALIFORNIA
LAW)...................................................................................................104

COUNT TEN VIOLATION OF THE ILLINOIS CONSUMER FRAUD
AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1
*ET SEQ.* AND 720 ILCS 295/1A) .............................................105

COUNT ELEVEN FRAUD BY CONCEALMENT (BASED ON ILLINOIS
LAW)...................................................................................................106

COUNT TWELVE BREACH OF EXPRESS WARRANTY (810 ILCS 5/2-
313) ...................................................................................................110

COUNT THIRTEEN UNJUST ENRICHMENT (BASED ON ILLINOIS
LAW)...................................................................................................115

COUNT FOURTEEN VIOLATION OF THE NORTH CAROLINA
UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT (N.C.
GEN. STAT. § 75-1.1 *ET SEQ.*) ................................................116

COUNT FIFTEEN FRAUD BY CONCEALMENT (BASED ON NORTH
CAROLINA LAW) ..................................................................................117

COUNT SIXTEEN UNJUST ENRICHMENT (BASED ON NORTH
CAROLINA LAW) ..................................................................................121

COUNT SEVENTEEN VIOLATION OF THE OHIO CONSUMER SALES
PRACTICES ACT (OHIO REV. CODE ANN. § 1345.01 *ET SEQ.*) ........122

COUNT EIGHTEEN FRAUD BY CONCEALMENT (BASED ON OHIO
LAW) ......................................................................................................125

COUNT NINETEEN UNJUST ENRICHMENT (BASED ON OHIO LAW).....129

COUNT TWENTY VIOLATION OF THE TENNESSEE CONSUMER
PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET SEQ.*) .........130

COUNT TWENTY-ONE FRAUD BY CONCEALMENT (BASED ON
TENNESSEE LAW) ................................................................................132

COUNT TWENTY-TWO BREACH OF EXPRESS WARRANTY (TENN.
CODE ANN. § 47-2-313)..........................................................................136

COUNT TWENTY-THREE UNJUST ENRICHMENT (BASED ON
TENNESSEE LAW) ................................................................................140

COUNT TWENTY-FOUR VIOLATION OF THE VIRGINIA
CONSUMER PROTECTION ACT (VA. CODE ANN. §§ 59.1-196
*ET SEQ.*) ...............................................................................................141

COUNT TWENTY-FIVE FRAUD BY CONCEALMENT (BASED ON
VIRGINIA LAW).....................................................................................143

COUNT TWENTY-SIX UNJUST ENRICHMENT (BASED ON
VIRGINIA LAW).....................................................................................147

IX.     STATUTORY CLAIMS ..........................................................................148

COUNT TWENTY-SEVEN VIOLATION OF THE ALABAMA
DECEPTIVE TRADE PRACTICES ACT (ALA. CODE § 8-19-1, *ET
SEQ.*)......................................................................................................148

010700-11 977510 V1

COUNT TWENTY-EIGHT VIOLATION OF THE ALASKA UNFAIR
TRADE PRACTICES  AND CONSUMER PROTECTION ACT
(ALASKA STAT. ANN. § 45.50.471, *ET SEQ.*) .........................................149

COUNT TWENTY-NINE VIOLATION OF THE ARKANSAS
DECEPTIVE TRADE PRACTICES ACT (ARK. CODE ANN. § 4-
88-101, *ET SEQ.*)..........................................................................................150

COUNT THIRTY VIOLATION OF THE COLORADO CONSUMER
PROTECTION ACT (COLO. REV. STAT. § 6-1-101, *ET SEQ.*).............151

COUNT THIRTY-ONE VIOLATION OF THE CONNECTICUT UNFAIR
TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A, *ET
SEQ.*)...............................................................................................................153

COUNT THIRTY-TWO VIOLATION OF THE DELAWARE
CONSUMER FRAUD ACT (DEL. CODE ANN. TIT. 6, § 2513, *ET
SEQ.*)...............................................................................................................154

COUNT THIRTY-THREE VIOLATION OF FLORIDA'S UNFAIR &
DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201,
*ET SEQ.*) .......................................................................................................155

COUNT THIRTY-FOUR VIOLATION OF THE GEORGIA FAIR
BUSINESS PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET
SEQ.*)...............................................................................................................159

COUNT THIRTY-FIVE VIOLATION OF THE GEORGIA UNIFORM
DECEPTIVE TRADE PRACTICES ACT (GA. CODE ANN. § 10-1-
370, *ET SEQ.*) ..............................................................................................160

COUNT THIRTY-SIX VIOLATION OF THE HAWAII ACT § 480-2(A)
(HAW. REV. STAT. § 480, *ET SEQ.*) ........................................................160

COUNT THIRTY-SEVEN VIOLATION OF THE IDAHO CONSUMER
PROTECTION ACT (IDAHO CODE ANN. § 48-601, *ET SEQ.*).............162

COUNT THIRTY-EIGHT VIOLATION OF THE INDIANA DECEPTIVE
CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)............................163

COUNT THIRTY-NINE VIOLATION OF THE IOWA PRIVATE RIGHT
OF ACTION FOR CONSUMER FRAUDS ACT (IOWA CODE
§ 714H.1, *ET SEQ.*) .....................................................................................165

010700-11 977510 V1

COUNT FORTY VIOLATION OF THE KANSAS CONSUMER
PROTECTION ACT (KAN. STAT. ANN. § 50-623, *ET SEQ.*)................166

COUNT FORTY-ONE VIOLATION OF THE KENTUCKY CONSUMER
PROTECTION ACT (KY. REV. STAT. ANN. § 367.110, *ET SEQ.*).......167

COUNT FORTY-TWO VIOLATION OF THE LOUISIANA UNFAIR
TRADE PRACTICES  AND CONSUMER PROTECTION LAW
(LA. REV. STAT. ANN. § 51:1401, *ET SEQ.*) ...........................................168

COUNT FORTY-THREE VIOLATION OF THE MAINE UNFAIR
TRADE PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205-
A, *ET SEQ.*) ................................................................................................169

COUNT FORTY-FOUR VIOLATION OF THE MARYLAND
CONSUMER PROTECTION ACT (MD. CODE ANN., COM. LAW
§ 13-101, *ET SEQ.*)......................................................................................170

COUNT FORTY-FIVE VIOLATION OF THE MASSACHUSETTS
GENERAL LAW CHAPTER 93(A) (MASS. GEN. LAWS CH. 93A,
§ 1, *ET SEQ.*) ..............................................................................................171

COUNT FORTY-SIX VIOLATION OF THE MICHIGAN CONSUMER
PROTECTION ACT (MICH. COMP. LAWS § 445.903 *ET SEQ.*) .........171

COUNT FORTY-SEVEN VIOLATION OF THE MINNESOTA
PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT.
§ 325F.68, *ET SEQ.*)....................................................................................173

COUNT FORTY-EIGHT VIOLATION OF THE MINNESOTA
DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.43-
48, *ET SEQ.*) ..............................................................................................174

COUNT FORTY-NINE VIOLATION OF THE MISSISSIPPI CONSUMER
PROTECTION ACT (MISS. CODE ANN. § 75-24-1, *ET SEQ.*).............175

COUNT FIFTY VIOLATION OF THE MISSOURI MERCHANDISING
PRACTICES ACT (MO. REV. STAT. § 407.010, *ET SEQ.*) ...................176

COUNT FIFTY-ONE VIOLATION OF THE MONTANA UNFAIR
TRADE PRACTICES  AND CONSUMER PROTECTION ACT OF
1973 (MONT. CODE ANN. § 30-14-101, *ET SEQ.*) .................................177

010700-11 977510 V1

COUNT FIFTY-TWO VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (NEB. REV. STAT. § 59-1601, *ET SEQ.*) ...............178

COUNT FIFTY-THREE VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (NEV. REV. STAT. § 598.0903, *ET SEQ.*) ..................................................................................179

COUNT FIFTY-FOUR VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*) .................................................180

COUNT FIFTY-FIVE VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. STAT. ANN. § 56:8-1, *ET SEQ.*) ...............................181

COUNT FIFTY-SIX VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT (N.M. STAT. ANN. § 57-12-1, *ET SEQ.*) ....182

COUNT FIFTY-SEVEN VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW §349 (N.Y. GEN. BUS. LAW § 349) ...........................183

COUNT FIFTY-EIGHT VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT (N.D. CENT. CODE § 51-15-02)................184

COUNT FIFTY-NINE VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT (OKLA. STAT. TIT. 15, § 751, *ET SEQ.*)...............185

COUNT SIXTY VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. § 646.605, *ET SEQ.*) ....................188

COUNT SIXTY-ONE VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES  AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, *ET SEQ.*) ................................................................189

COUNT SIXTY-TWO VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES  AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1, *ET SEQ.*) ................................................190

COUNT SIXTY-THREE VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10, *ET SEQ.*) ..................................................................................191

010700-11 977510 V1

COUNT SIXTY-FOUR VIOLATION OF THE SOUTH DAKOTA
      DECEPTIVE TRADE PRACTICES  AND CONSUMER
      PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-6) ......................192

COUNT SIXTY-FIVE VIOLATIONS OF THE TEXAS DECEPTIVE
      TRADE PRACTICES AND CONSUMER PROTECTION ACT
      (TEX. BUS. & COM. CODE § 17.4, *ET SEQ.*)...........................................193

COUNT SIXTY-SIX VIOLATION OF THE UTAH CONSUMER SALE
      PRACTICES ACT (UTAH CODE ANN. § 13-11-1, *ET SEQ.*) ...............194

COUNT SIXTY-SEVEN VIOLATION OF THE VERMONT CONSUMER
      FRAUD ACT (VT. STAT. ANN. TIT. 9, § 2451, *ET SEQ.*) .....................195

COUNT SIXTY-EIGHT VIOLATION OF THE WASHINGTON
      CONSUMER PROTECTION ACT (WASH. REV. CODE ANN.
      § 19.86.010, *ET SEQ.*)..................................................................................196

COUNT SIXTY-NINE VIOLATION OF THE WEST VIRGINIA
      CONSUMER CREDIT  AND PROTECTION ACT (W. VA. CODE
      § 46A-1-101, *ET SEQ.*) ...............................................................................197

COUNT SEVENTY VIOLATION OF THE WISCONSIN DECEPTIVE
      TRADE PRACTICES ACT (WIS. STAT. § 110.18) ..................................197

COUNT SEVENTY-ONE VIOLATION OF THE WYOMING
      CONSUMER PROTECTION ACT (WYO. STAT. § 40-12-105, *ET
      SEQ.*).................................................................................................................198

PRAYER FOR RELIEF .......................................................................................199

DEMAND FOR JURY TRIAL ...........................................................................200

010700-11 977510 V1

Plaintiffs Josh Wozniak, Angel Castaneda, Raj Chauhan, Robert Desotelle, Samantha Ellis, Donald Lycan, and David Mathias (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), allege the following:

## I.    INTRODUCTION

1.    There are certain basic rules that all vehicle manufacturers must follow. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from defendant Ford Motor Company's ("Ford") breach of these rules.

2.    A modern automobile contains myriad complex and sophisticated parts and components, none of which could have even been imagined by vehicle manufacturers just 40 years ago. But some parts remain simple and much like they were as far back as the iconic Ford Model A. When competently designed and manufactured, these simple parts should never fail during the useful life of the vehicle. A perfect example of a simple part is the lug nut. It has for over 100 years been a steel nut that is used to connect the wheel of a vehicle to the wheel hub. Its purpose is simple: provide a safe and reliable way for a wheel to be firmly attached

- 1 -

to a hub that can, in the event of a flat tire or when needed for maintenance, be removed and later replaced.

3.     But the defective lug nuts on Ford's Fusion, Escape, Flex, Focus, F-150, and F-350 (the "Affected Vehicles"), and likely additional Ford vehicles, fail this simple task. Instead of a solid steel nut, Ford created and sells with its vehicles a lug nut that has a steel core with a chrome, aluminum, or stainless steel cap attached to improve the appearance of the visible part of the lug nut. With normal use and well within the useful life of the vehicle, and in many cases within the applicable warranty period, the caps swell and delaminate to the point where the lug nuts cannot be removed with the lug wrench provided by Ford. With a useless lug wrench, owners and lessees who get a flat tire are completely stranded—often on the shoulder of a fast-moving highway—and must have their vehicles towed to a repair facility to change the tire.

4.     Once at a repair facility, owners and lessees of Affected Vehicles have to pay labor costs to have the swollen and delaminated lug nuts removed, and must pay for replacement lug nuts that can cost over $30 per wheel.

5.     The defective nature of the Ford lug nuts is well known to Ford and its dealers. When the dealers observe swollen and delaminating lug nuts on customers' vehicles, or when an unfixable flat is towed in, special wrenches and tools are needed to remove the failed lug nuts, and owners and lessees are required

- 2 -

and advised to buy replacement lug nuts. Astonishingly, some dealers suggest that their customers buy non-Ford lug nuts because they know any replacement Ford lug nuts will similarly fail and become unusable.

6.      Below is a picture of the lug nuts removed from Plaintiff Desotelle's 2013 Ford Fusion. The delamination and swelling of the lug nuts is obvious.



7.      In the picture below, it is apparent that the lug wrench supplied to Plaintiff Desotelle by Ford is completely useless as it does not fit on the swollen and delaminated lug nuts, which rendered it impossible for Mr. Desotelle to remove and replace his wheel when he got a flat tire.

- 3 -



8.      Obviously, all vehicle buyers would expect that they would be able to safely change a flat tire during the life of the vehicle and they would expect that the lug wrench supplied with a vehicle could be used on the vehicle's lug nuts should a tire need to be changed. But in the case of at least Ford's Fusion, Escape, Flex, Focus, F-150, and F-350, those expectations are false. The defective nature of Ford's lug nuts renders the vehicles that they are used on dangerous and unfit for their ordinary purpose of providing safe and reliable transportation.

9.      No vehicle owner would expect to have to buy replacement lug nuts and especially not within the first several years of the vehicle's life. But Ford

- 4 -

makes them do exactly that. Ford does not replace for free its defective two-piece lug nuts, even when they fail during the new vehicle warranty period. Instead, Ford shifts its warranty obligations onto its customers, requiring Ford owners and lessees to spend hundreds of dollars for new lug nuts and the labor to install them.

10.     Plaintiffs bring this action individually and on behalf of all other current and former owners and lessees of Ford's Fusion, Escape, Flex, Focus, F-150, and F-350 that are equipped with Ford's defective two-piece lug nuts. Plaintiffs seek damages and other equitable relief.

## II.     JURISDICTION

11.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.     VENUE

12.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions and/or misrepresentations giving rise to Plaintiffs' claims occurred in this District. Defendant is headquartered in Dearborn, Michigan, within this District. Defendant sells and distributes its vehicles throughout the United States and within this District.

- 5 -

## IV.    PARTIES

**A.    Plaintiffs**

    **1.    Arizona Plaintiff**

       **a.    Josh Wozniak**

13.    Plaintiff Josh Wozniak is a citizen of the State of Arizona and resides in Peoria, Arizona.

14.    On December 9, 2015, Mr. Wozniak purchased his 2015 Ford F-150 from Peoria Ford in Peoria, Arizona. Based on Ford's active and persistent promotions touting the quality of its vehicles, he considered Ford a quality company with a strong reputation. Mr. Wozniak decided on the Ford F-150 because he believed it was a high quality vehicle.

15.    Unknown to Mr. Wozniak at the time he purchased the F-150, the F-150 was equipped with defective lug nuts, which will cause Mr. Wozniak out-of-pocket loss, attempted and future attempted repairs, and diminished value of the F-150. Ford knew about the defective lug nuts at the time of purchase but did not disclose the defects to Mr. Wozniak. So Mr. Wozniak purchased his F-150 on the reasonable but mistaken belief that it would be safe and reliable on public roadways and that the tires on the F-150 could be changed using the supplied lug wrench in the event of a flat tire.

16.    Mr. Wozniak recalls reviewing the Ford website for the F-150 in detail. Mr. Wozniak also spoke with Ford salespeople at Peoria Ford about the F-

150 and its excellent build quality, safety, and reliability. The sales representatives conveyed information about the F-150 that flowed directly from the same information Ford had provided to all dealerships and which Ford expected to be passed to consumers.

17.     None of the information reviewed by Mr. Wozniak contained any disclosure relating to any defects in the lug nuts used to attach the wheels to his vehicle. None of the salespeople at the dealership disclosed this information either. If Ford had disclosed to Mr. Wozniak that his F-150 suffered from defects that would prevent the full use of his F-150 and pose safety risks, then he would not have purchased his F-150 or would have paid less for it.

18.     Mr. Wozniak has not yet had to replace the lug nuts for his vehicle, but knows that they will need to be replaced within the year. He anticipates this will cost him around $120.

19.     Due to Ford's failure to disclose the defective nature of the lug nuts installed on Mr. Wozniak's Ford F-150, Mr. Wozniak was denied the benefit of the bargain at the time of sale. Mr. Wozniak has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

- 7 -

2.    **California Plaintiff**

 a. **Angel Castaneda**

20. Plaintiff Angel Castaneda is a citizen of the State of California and resides in Blythe, California.

21. On November 25, 2009, Mr. Castaneda purchased his 2010 Ford Flex from Fiesta Ford in Indio, California. Mr. Castaneda had previously owned two Ford vehicles. Based on this experience, and Ford's active and persistent promotions touting the quality of its vehicles, he considered Ford a quality company with a strong reputation. Mr. Castaneda decided on the Ford Flex because he believed it was a high quality vehicle that is safe and reliable.

22. Unknown to Mr. Castaneda at the time he purchased the Flex, the Flex was equipped with defective lug nuts, which may cause Mr. Castaneda out-of-pocket loss, attempted and future attempted repairs, and diminished value of the Flex. Ford knew about the defective lug nuts at the time of purchase but did not disclose the defects to Mr. Castaneda. So Mr. Castaneda purchased his Flex on the reasonable but mistaken belief that it would be safe and reliable on public roadways and that the tires on the Flex could be changed using the supplied lug wrench in the event of a flat tire.

23. Prior to purchasing the Flex, Mr. Castaneda spoke with Ford salespeople at Fiesta Ford about the Flex and its excellent build quality, safety, and

- 8 -

reliability. The sales representatives conveyed information about the Flex that flowed directly from the same information Ford had provided to all dealerships and which Ford expected to be passed to consumers.

24.     None of the information reviewed by Mr. Castaneda contained any disclosure relating to any defects in the lug nuts used to attach the wheels to his vehicle. None of the salespeople at Fiesta Ford disclosed this information either. If Ford had disclosed to Mr. Castaneda that his Flex suffered from defects that would prevent the full use of his Flex and pose safety risks, then he would not have purchased his Flex or would have paid less for it.

25.     Mr. Castaneda first learned of the defective lug nuts on his Flex when he purchased new tires from Discount Tires in Phoenix, Arizona, in August 2014. Mr. Castanada replaced the tires for his Flex again about a year ago at Discount Tires in Lake Havasu City, California, and the technician told him he would need to replace the lug nuts because they were swollen and delaminated.

26.     On January 22, 2015, Mr. Castaneda purchased his 2015 Ford F-350 from Larry Green Ford in Blythe, California. Mr. Castaneda decided on the Ford F-350 because he believed it was a high quality vehicle. Unknown to Mr. Castaneda at the time he purchased the F-350, the F-350 was equipped with defective lug nuts, which may cause Mr. Castaneda out-of-pocket loss, attempted and future attempted repairs, and diminished value of the F-350. Ford knew about

the defective lug nuts at the time of purchase but did not disclose the defects to

Mr. Castaneda. So Mr. Castaneda purchased his F-350 on the reasonable but

mistaken belief that it would be safe and reliable on public roadways and that the

tires on the F-350 could be changed using the supplied lug wrench in the event of a

flat tire.

27.    Prior to purchasing the F-350, Mr. Castaneda also spoke with Ford

salespeople at Larry Green Ford about the F-350 and its excellent build quality,

safety, and reliability. The sales representatives conveyed information about the F-

350 that flowed directly from the same information Ford had provided to all

dealerships and which Ford expected to be passed to consumers.

28.    None of the information reviewed by Mr. Castaneda contained any

disclosure relating to any defects in the lug nuts used to attach the wheels to his

vehicle. None of the salespeople at Larry Green Ford disclosed this information

either. If Ford had disclosed to Mr. Castaneda that his F-350 suffered from defects

that would prevent the full use of his F-350 and pose safety risks, then he would

not have purchased his F-350 or would have paid less for it.

29.    Due to Ford's failure to disclose the defective nature of the lug nuts

installed on Mr. Castaneda's Ford Flex and F-350, Mr. Castaneda was denied the

benefit of the bargain at the time of sale. Mr. Castaneda has also suffered

- 10 -

additional damage relating to the cost of repair needed to make the vehicles operate as a reasonable consumer would have expected.

**3.      Illinois Plaintiff**

**a.      Raj Chauhan**

30.      Plaintiff Raj Chauhan is a citizen of the State of Illinois and resides in Carol Stream, Illinois.

31.      On December 29, 2013, Mr. Chauhan purchased his 2014 Ford Fusion from Fair Oaks Ford Lincoln in Naperville, Illinois. Prior to purchasing the vehicle, Mr. Chauhan went on a road trip with a friend who owned a Fusion. Based on this experience, and Ford's active and persistent promotions touting the quality of its vehicles, Mr. Chauhan considered Ford a quality company with a strong reputation. Mr. Chauhan decided on the Ford Fusion because he believed it was a high quality vehicle that would provide good fuel efficiency.

32.      Unknown to Mr. Chauhan at the time he purchased the Fusion, the Fusion was equipped with defective lug nuts, which has caused Mr. Chauhan out-of-pocket loss, attempted and future attempted repairs, and diminished value of the Fusion. Ford knew about the defective lug nuts at the time of purchase but did not disclose the defects to Mr. Chauhan. So Mr. Chauhan purchased his Fusion on the reasonable but mistaken belief that it would be safe and reliable on public

- 11 -

roadways and that the tires on the Fusion could be changed using the supplied lug wrench in the event of a flat tire.

33.     Mr. Chauhan recalls reviewing the Ford website for the Fusion in detail and read reviews of the Ford Fusion online. Mr. Chauhan also spoke with Ford salespeople at Fair Oaks Ford Lincoln about the Fusion and its excellent build quality, safety, and reliability. The sales representatives conveyed information about the Fusion that flowed directly from the same information Ford had provided to all dealerships and which Ford expected to be passed to consumers.

34.     None of the information reviewed by Mr. Chauhan contained any disclosure relating to any defects in the lug nuts used to attach the wheels to his vehicle. None of the salespeople at the dealership disclosed this information either. If Ford had disclosed to Mr. Chauhan that his Fusion suffered from defects that would prevent the full use of his Fusion and pose safety risks, then he would not have purchased his Fusion or would have paid less for it.

35.     Mr. Chauhan first learned of the defective lug nuts on his Fusion approximately two years ago when he took his 2014 Ford Fusion to a local tire shop for a flat and they told him they had difficulty removing the lug nuts. Recently, Mr. Chauhan took his Fusion to Fair Oaks Ford Lincoln for an oil change and tire rotation. The Ford technician told Mr. Chauhan that he needed to replace all of the lug nuts because they were swollen and delaminated.

- 12 -

Mr. Chauhan replaced all the lug nuts used for all four wheels on his vehicle and paid out-of-pocket for them.

36.     Due to Ford's failure to disclose the defective nature of the lug nuts installed on Mr. Chauhan's Ford Fusion, Mr. Chauhan was denied the benefit of the bargain at the time of sale. Mr. Chauhan has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

### 4.     North Carolina Plaintiff

#### a.     Robert Desotelle

37.     Plaintiff Robert Desotelle is a citizen of the State of North Carolina and resides in Fletcher, North Carolina.

38.     On January 15, 2013, Mr. Desotelle purchased his 2013 Ford Fusion SE new from Asheville Ford in Asheville, North Carolina. Mr. Desotelle had previously owned a Ford Taurus for eight years and 350,000 miles. He was impressed with the quality of the Taurus, and after that car he bought a Ford Edge and a Ford Escape for his daughter to drive. Based on this experience, and Ford's active and persistent promotions touting the quality of its vehicles, he considered Ford a quality company with a strong reputation. Mr. Desotelle decided on the Fusion because he believed it was a high quality vehicle that would provide good fuel efficiency.

- 13 -

39.     Unknown to Mr. Desotelle at the time he purchased the Fusion, the Fusion was equipped with defective lug nuts, which has caused Mr. Desotelle out-of-pocket loss, attempted and future attempted repairs, and diminished value of the Fusion. Ford knew about the defective lug nuts at the time of purchase but did not disclose the defects to Mr. Desotelle. So Mr. Desotelle purchased his Fusion on the reasonable but mistaken belief that it would be safe and reliable on public roadways and that the tires on the Fusion could be changed using the supplied lug wrench in the event of a flat tire.

40.     Mr. Desotelle recalls reviewing the Ford website for the 2013 Fusion in detail. Mr. Desotelle also spoke with Ford salespeople at Asheville Ford about the Fusion and its excellent build quality, safety, and reliability. The sales representatives conveyed information about the Fusion that flowed directly from the same information Ford had provided to all dealerships and which Ford expected to be passed to consumers.

41.     None of the information reviewed by Mr. Desotelle contained any disclosure relating to any defects in the lug nuts used to attach the wheels to his vehicle. None of the salespeople at the dealership disclosed this information either. If Ford had disclosed to Mr. Desotelle that his Fusion suffered from defects that would prevent the full use of his Fusion and pose safety risks, then he would not have purchased his Fusion or would have paid less for it.

- 14 -

42.    Mr. Desotelle first learned of the defective lug nuts on his Fusion when he brought his vehicle in for service in January 2016. The Ford technician told Mr. Desotelle that he would need new lug nuts soon as the ones that were on his vehicle had become very difficult to remove. The technician explained that this was a common issue on many Ford models and showed Mr. Desotelle a box full of swollen and delaminated Ford lug nuts that had been removed from other Ford vehicles. The Ford service technician recommended that Mr. Desotelle not buy replacement Ford lug nuts as they are costly and will ultimately swell and need to be replaced again. The Ford technician recommended that Mr. Desotelle purchase one-piece lug nuts on Amazon.com. When Mr. Desotelle asked why Ford would continue to use a part that it knew was defective, he was told that Ford uses the two-piece capped lug nuts because the aluminum cap on the nut matches the aluminum surface of the wheel in appearance.

43.    The dealership told Mr. Desotelle that replacing the lug nuts would cost $7 per nut, or $140 for the 20 lug nuts used for all four wheels on his vehicle. The service technician did not tell Mr. Desotelle that his Ford-supplied lug nut wrench would not work on the lug nuts on his vehicle.

44.    On January 23, 2016, Mr. Desotelle left Ashville for Toledo, Ohio. He got a flat tire on I-75 in Tennessee about 20 miles south of the Kentucky line at about 7:00 a.m. Mr. Desotelle pulled over and went to put his spare tire on.

- 15 -

Mr. Desotelle put the jack on and tried the lug wrench that came with the vehicle and it would not fit on any of the lug nuts on the flat tire. He then contacted State Farm for Roadside Assistance. It took two hours for a tow truck to arrive. The tow truck driver tried all of his sockets and none of them fit the swollen lug nuts. The vehicle was then towed to Short-Redmond Ford in LaFollette, Tennessee.

45.     Mr. Desotelle arrived at the dealership at about 10:15 a.m. and waited until 11:30 a.m. for his vehicle to be repaired. This dealer also suggested that Mr. Desotelle buy after-market lug nuts in the future as the Ford lug nuts have the delamination and swelling problem and Ford has done nothing about it. But since Mr. Desotelle was stranded at the Ford dealership and had to continue his trip, he had no choice but to have new Ford lug nuts installed on his vehicle.

46.     Once at the dealership, the wheel with the flat was removed and the defective lug nuts were replaced. To repair just this one wheel, Mr. Desotelle was charged $58.28, which was $33.35 in parts, $17.80 in labor, $2.05 in shop supplies, and $4.92 in tax.

47.     Due to Ford's failure to disclose the defective nature of the lug nuts installed on Mr. Desotelle's Ford Fusion, he was denied the benefit of the bargain at the time of sale. Mr. Desotelle has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

010700-11 977510 V1

### 5.    Ohio Plaintiff

#### a.    Samantha Ellis

48.    Plaintiff Samantha Ellis is a citizen of the State of Ohio and resides in Junction, Ohio.

49.    On October 29, 2013, Ms. Ellis leased her 2014 Ford Fusion from Team Ford in Steubenville, Ohio. Ms. Ellis previously owned a Mercury Mariner Hybrid, a Ford Mustang, and a Ford Mustang GT. Based on this experience, and Ford's active and persistent promotions touting the quality of its vehicles, she considered Ford a quality company with a strong reputation. Ms. Ellis was impressed with Ford's lease program and decided to lease the Ford Fusion because she believed it was a high quality vehicle that would provide good fuel efficiency.

50.    Unknown to Ms. Ellis at the time she leased the Fusion, the Fusion was equipped with defective lug nuts, which has caused Ms. Ellis out-of-pocket loss, attempted and future attempted repairs, and diminished value of the Fusion. Ford knew about the defective lug nuts at the time of purchase but did not disclose the defects to Ms. Ellis. So Ms. Ellis purchased her Fusion on the reasonable but mistaken belief that it would be safe and reliable on public roadways and that the tires on the Fusion could be changed using the supplied lug wrench in the event of a flat tire.

- 17 -

51.     Ms. Ellis recalls reviewing the Ford website for the Fusion in detail. She also test drove a Chevy Malibu, Toyota Avalon, and Ford Fusion so that she could physically compare the three vehicles for herself.

52.     None of the information reviewed by Ms. Ellis contained any disclosure relating to any defects in the lug nuts used to attach the wheels to her vehicle. None of the salespeople at the dealership disclosed any information about the defective lug nuts and the impact they would have on her vehicle and the life of any tires she placed on her Fusion. If Ford had disclosed to Ms. Ellis that her Fusion suffered from defects that would prevent the full use of her Fusion and pose safety risks, then she would not have leased her Fusion or would have paid less for it.

53.     Ms. Ellis first learned of the defective lug nuts on her Fusion when she had a flat tire and her local tire shop told her they could not remove the lug nuts to change the tire. Because the tire shop was unable to remove the lug nuts, Ms. Ellis had to take her Fusion home where her boyfriend used a screw driver to pry the lug nuts off. About a month later, Ms. Ellis brought her Fusion to Monroe Muffler in Saint Clairsville, Ohio, for an oil change and to have her tires rotated. The service technician told Ms. Ellis that he was not able to rotate her tires because they were unable to remove the lug nuts.

- 18 -

54.     Ms. Ellis contacted the dealership for replacement lug nuts. The Ford service technician recommended that Ms. Ellis not buy replacement Ford lug nuts as they are costly and will ultimately swell and need to be replaced again. Instead, the Ford technician recommended that Ms. Ellis purchase lug nuts on Amazon.com. Ms. Ellis purchased 20 lug nuts on Amazon.com for approximately $32. Her boyfriend removed the defective lug nuts and replaced them. It took him over two hours to remove the defective lug nuts.

55.     Due to Ford's failure to disclose the defective nature of the lug nuts installed on Ms. Ellis's Ford Fusion, Ms. Ellis was denied the benefit of the bargain at the time of sale. Ms. Ellis has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

**6.  Tennessee Plaintiff**

**a.  Donald Lycan**

56.     Plaintiff Donald Lycan is a citizen of the State of Tennessee and resides in Oakland, Tennessee.

57.     On September 22, 2015, Mr. Lycan purchased his 2015 Ford F-150 new from Homer Skelton Ford, Inc. in Olive Branch, Mississippi. Mr. Lycan has previously owned two F-150s and two Expeditions. Based on this experience, and Ford's active and persistent promotions touting the quality of its vehicles, he

- 19 -

considered Ford a quality company with a strong reputation. Mr. Lycan decided on the F-150 because he believed it was a high quality vehicle. The vehicle is still covered by the manufacturer's warranty.

58.     Unknown to Mr. Lycan at the time he purchased his 2015 F-150, the vehicle was equipped with defective lug nuts, which has caused Mr. Lycan out-of-pocket loss, attempted and future attempted repairs, and diminished value of the F-150. Ford knew about the defective lug nuts at the time of purchase but did not disclose the defects to Mr. Lycan. So Mr. Lycan purchased his 2015 F-150 on the reasonable but mistaken belief that it would be safe and reliable on public roadways and that the tires on the F-150 could be changed and/or rotated using the supplied lug wrench in the event of a flat tire.

59.     Mr. Lycan recalls reviewing the Ford website for the 2015 F-150 in detail. He also spoke with Ford salespeople at Homer Skelton Ford, Inc. about the 2015 F-150 and its excellent build quality, safety, and reliability. The sales representatives conveyed information about the F-150 that flowed directly from the same information Ford had provided to all dealerships and which Ford expected to be passed to consumers.

60.     None of the information reviewed by Mr. Lycan contained any disclosure relating to any defects in the lug nuts used to attach the wheels to his vehicle. None of the salespeople at the dealership disclosed this information either.

- 20 -

If Ford had disclosed to Mr. Lycan that his 2015 F-150 suffered from defects that would prevent the full use of his vehicle and pose safety risks, then he would not have purchased his 2015 F-150 or would have paid less for it.

61.    Mr. Lycan first learned of the defective lug nuts on his F-150 in June 2017 when he attempted to change the wheels and tires and was unable to use any of his tools, including the wrench supplied by Ford, to remove the lug nuts. After he was finally able to remove them, Mr. Lycan took the lug nuts to Bolivar Ford in Bolivar, Tennessee. Mr. Lycan asked the dealership to replace the defective lug nuts and the dealership refused. Mr. Lycan also told the dealership that his Ford-supplied lug nut wrench would not work on the lug nuts on his vehicle. The Ford dealership told Mr. Lycan that the lug nuts were not covered under warranty because the problem with the lug nuts was not experienced at a Ford dealership.

62.    The dealership told Mr. Lycan that replacing the lug nuts would cost $6-$8 per nut, or $144-$192 for the 24 lug nuts used for all four wheels on his vehicle. Instead, Mr. Lycan purchased durable lug nuts made by Gorilla at a cost of $60 for 24 lug nuts and he performed the labor himself.

63.    In June 2017, Mr. Lycan contacted Ford Customer Care, told them the lug nuts were defective, and asked Ford to replace them under the warranty. Ford refused to replace the lug nuts.

010700-11 977510 V1

64.    Due to Ford's failure to disclose the defective nature of the lug nuts installed on Mr. Lycan's Ford F-150, Mr. Lycan was denied the benefit of the bargain at the time of sale. Mr. Lycan has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

### 7.    Virginia Plaintiff

#### a.    David Mathias

65.    Plaintiff David Mathias is a citizen of the State of Virginia and resides in Cross Junction, Virginia.

66.    On February 7, 2013, Mr. Mathias purchased his 2013 Ford Focus from Ted Britt Ford in Chantilly, Virginia. This was the third new Ford vehicle purchased by Mr. Mathias. Based on this experience, and Ford's active and persistent promotions touting the quality of its vehicles, he considered Ford a quality company with a strong reputation. Mr. Mathias has two relatives that were employees of Ford Motor Company and previously had good experiences with Ford Vehicles. Mr. Mathias decided on the Ford Focus because he believed it was a high quality vehicle that would provide good fuel efficiency.

67.    Unknown to Mr. Mathias at the time he purchased the Focus, the Focus was equipped with defective lug nuts, which has caused Mr. Mathias out-of-pocket loss, attempted and future attempted repairs, and diminished value of the

- 22 -

Focus. Ford knew about the defective lug nuts at the time of purchase but did not disclose the defects to Mr. Mathias. So Mr. Mathias purchased his Focus on the reasonable but mistaken belief that it would be safe and reliable on public roadways and that the tires on the Focus could be changed using the supplied lug wrench in the event of a flat tire.

68.     Mr. Mathias recalls reviewing the Ford website and message boards dedicated to the Ford Focus in detail. Mr. Mathias also spoke with Ford salespeople at Ted Britt Ford about the Focus and its excellent build quality, safety, and reliability. The vehicle was special ordered for Mr. Mathias with the exact options he requested. The sales representatives conveyed information about the Focus that flowed directly from the same information Ford had provided to all dealerships and which Ford expected to be passed to consumers.

69.     None of the information reviewed by Mr. Mathias contained any disclosure relating to any defects in the lug nuts used to attach the wheels to his vehicle. None of the salespeople at the dealership disclosed this information either. If Ford had disclosed to Mr. Mathias that his Focus suffered from defects that would prevent the full use of his Focus and pose safety risks, then he would not have purchased his Focus or would have paid less for it.

70.     Mr. Mathias first learned of the defective lug nuts on his Focus when he was replacing his snow tires back to the factory-equipped summer tires in

- 23 -

February 2016. It was impossible for Mr. Mathias to remove the lug nuts from the rear wheels without completely destroying the lug nut. Even hammering the correct size socket onto the lug nut was not effective in removing them.

71.     Because he was unable to remove the lug nuts, Mr. Mathias had to take his vehicle to his local Ford dealership, Malloy Ford of Winchester, Virginia, in February 2016. Once at the dealership, the defective lug nuts were replaced. Mr. Mathias was not charged for the removal and replacement of the lug nuts as they were covered under the maintenance package he purchased from Ford at the time he purchased the vehicle.

72.     After having to be without his primary method of transportation for one day due to defective lug nuts, Mr. Mathias purchased solid stainless steel lug nuts from the Lug Nut Guys online store at a cost of $20.18.

73.     Due to Ford's failure to disclose the defective nature of the lug nuts installed on Mr. Mathias' Ford Focus, Mr. Mathias was denied the benefit of the bargain at the time of sale. Mr. Mathias has also suffered additional damage relating to the cost of repair needed to make the vehicle operate as a reasonable consumer would have expected.

**B.     Defendant**

74.     Ford Motor Company is a corporation doing business in all 50 states and the District of Columbia, and is organized under the laws of the State of

Delaware, with its principal place of business in Dearborn, Michigan. At all times relevant to this action, Ford manufactured, sold, and warranted the Affected Vehicles throughout the United States. Ford and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective lug nuts on the Affected Vehicles. Ford also developed and disseminated the owner's manuals, supplements, and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles, and Ford provided these to its authorized dealers for the express purpose of having these dealers pass such materials to potential purchasers. Ford also created, designed, and disseminated information about the quality of the Affected Vehicles to various agents of various publications for the express purpose of having that information reach potential consumers.

## V.    FACTUAL ALLEGATIONS

### A.    The lug nut is a simple part with a simple purpose.

75.    The lug nut is not, and should not be, a complex component in an automobile. It threads on to the threaded studs that protrude from the wheel hub. Most vehicles have wheel hubs with four or five threaded studs, and thus take four or five lug nuts per wheel. Vehicles equipped with large wheels, like trucks, can have many more studs and lug nuts per wheel—sometimes more than 12 per wheel.

- 25 -

76.    From the beginning of the age of automobiles and continuing to this day, many—if not most— vehicles are equipped with simple steel wheels. To affix steel wheels to their hubs, manufacturers generally use simple one-piece steel lug nuts. Often, the entire wheel (including the lug nuts) or the center of the wheel (including the lug nuts) is covered by a plastic or metal hubcap or wheel cover to provide non-functional styling and aesthetic elements to the wheel assembly.

77.    But steel wheels add weight and are aesthetically less appealing than aluminum wheels or wheels made from other alloys. In the age of consumer demand for stylish and highly efficient automobiles, using lighter, more stylish alloy wheels reduces the rim weight of a wheel, which can substantially increase fuel efficiency. And lighter wheel materials can be aesthetically pleasing without having to use a separate wheel cover or hubcap.

78.    Yet a steel lug nut is not attractive in combination with an alloy wheel. It adds a black or dull component to the heart of an otherwise gleaming vehicle accent, so Ford, like other manufacturers, wants to have its lug nuts match its wheels in appearance. Ford could equip its vehicles with solid stainless steel one-piece lug nuts or one-piece lug nuts made from other materials that match its styling desires. The below photograph is of a one-piece stainless lug nut, readily available for purchase at dozens of online stores.

- 26 -



79.     But Ford chooses not to use one-piece lug nuts, because one-piece stainless steel or other alloy lug nuts cost materially more than the two-piece "capped" lug nuts. The picture below is of a Ford Fusion's capped lug nut—when new:



80.     When new, the capped lug nut is virtually identical in appearance to the one-piece stainless lug nut, especially since the steel core is not at all visible when the lug nut is snugged up to the wheel. But with time, which factors in temperature swings, moisture, and road vibration, the appearance and utility of the

- 27 -

capped lug nuts changes dramatically for the worse. The pictures below are the

swollen and delaminated lug nuts from Plaintiff Desotelle's 2013 Ford Fusion:



## B.    Ford marketed Affected Vehicles based on appearance and styling because it knew appearance and styling were material to prospective customers.

81.    Ford heavily marketed the Affected Vehicles as being attractive and

stylish, and it did so because it knew such representations were material to those in

the market it was attempting to attract. For example, the webpage of the current

Ford Fusion states: "We all drive. Some of us just look better doing it."[1] It then

states: "It's OK to stare."[2] And the webpage includes the following picture

highlighting the appearance of the allow wheels and polished lug nuts:[3]

---

[1] Exhibit 1, *Explore 2017 Fusion*, Ford, http://www.ford.com/cars/fusion/2017/ (last accessed Aug. 22, 2017).

[2] *Id.*

[3] *Id.*



82.    The webpage continues with additional pictures of the car styling, including the wheels and lug nuts, and states: "Striking in looks, equally impactful in function."[4]

83.    On the Features webpage for the 2017 Fusion, a photo of the "Available Wheels" shows the following options, every one of which is equipped with Ford's capped lug nuts, in pristine condition:[5]

---

[4] *Id.*

[5] Exhibit 2, *Explore 2017 Fusion Features*, Ford, http://www.ford.com/cars/fusion/2017/features/design/?intcmp=vhp-featcta-design (last accessed Aug. 22, 2017).

010700-11 977510 V1



84. The brochure for the Ford Fusion is likewise centered on the vehicle's appearance and styling. The second page of the brochure states: "FUSION STYLED TO STAND OUT."[6]

85. The third page of the Fusion brochure highlights the wheels available on Fusions as "19" premium Tarnished Dark-painted wheels," "17" Luster Nickel-painted aluminum wheels," or "18" machined face aluminum wheels with painted pockets."[7]

86. Similarly, online marketing and advertisements for the Ford F-150 highlight "17" silver-painted aluminum wheels" or "20" machined-aluminum

_____

[6] Exhibit 3, 2017 Ford Fusion brochure at p. 2, *available at* http://www.ford.com/services/assets/Brochure?make=Ford&model=Fusion&year=2017 (last accessed Aug. 22, 2017).

[7] *Id.* at p. 3.

- 30 -

wheels with Flash Gray-painted pockets"; each shown below, with the included Ford two-piece lug nuts:

 

**C.    The Affected Vehicles cannot be safely driven with swollen and delaminated lug nuts.**

### 1.    The nature of the defect and its safety consequences

87.    To any vehicle owner, the ability to change a flat tire, or have a roadside assistance service be able to do the same, is a material factor in the decision to purchase a vehicle. Likewise, regular maintenance requires tire rotation, which requires that the wheels be removed and replaced in different locations at regular intervals.

88.    Once the defective lug nuts on Affected Vehicles become swollen and delaminated, the lug wrench—also called a tire iron—supplied by Ford with its vehicles will not fit over the defective lug nuts, rendering the lug nuts impossible to remove. Moreover, because the swollen and delaminated lug nuts are not uniformly misshapen, tow vehicles and roadside assistance also do not generally have any lug wrench that can be used to loosen the defective lug nuts.

010700-11 977510 V1

89.     Because the defective lug nuts, once swollen and delaminated, cannot be loosened, a driver can be left stranded on the side of a road where they have had a flat tire, or otherwise need to change a wheel. This is a precarious and dangerous place to be as scores of drivers are killed every year when struck by oncoming traffic while stopped on a busy roadway. The defective lug nuts thus directly cause a substantial safety risk to owners and lessees of Affected Vehicles.

**2.     The economic consequences associated with the defective lug nuts**

90.     In addition to the increased safety risks associated with the defective lug nuts, when drivers are lucky enough not be injured or killed while stuck on the side of the road, they can be left stranded for hours waiting for a tow or flatbed truck to transport them to a repair facility that can remove the defective lug nuts.

91.     Once at a repair facility, owners and lessees of Affected Vehicles must pay for the labor to remove the defective lug nuts, and once removed, the lug nuts cannot be re-used, meaning owners and lessees must immediately buy replacement lug nuts from the repair facility or be without their vehicle.

92.     Repair and replacement of the defective lug nuts can cost owners and lessees of Affected Vehicles hundreds of dollars. For example, Plaintiff Desotelle paid $58.28 in repair and replacement costs for just one of the four wheels on his Ford Fusion.

010700-11 977510 V1

3. **Consumer complaints document years of frustration with Ford's defective two-piece lug nuts.**

93.    Ford Fusion, F-150, Escape, and other forums are replete with the frustrations of owners and lessees over the defective lug nuts—a widespread problem affecting multiple models and years.

94.    Consumer complaints about the defective two-piece lug nuts date back to 2010. One F-150 owner stated in 2010 that: "My ford [original] lug nuts are swelled and the wrench won't fit on. I guess they corroded under the stainless sleeve. Ford want's $8.58 a nut. Ford in [C]anada wants $15.00 a nut. No way. What nut should I look for at what auto parts? Anyone have this problem???"[8] On a forum for Ford F-150 trucks, a user posted in 2013: "I went for a rotation and the tire shop showed me I had some 'swollen' lug nuts and said this is COMMON! I need to get it to ford before warranty's up."[9]

---

[8] Exhibit 4, *Swollen nuts!!!!*, Ford-Trucks.com, https://www.ford-trucks.com/forums/954655-swollen-nuts.html (last accessed Aug. 22, 2017), at post # 1 (May 5, 2010).

[9] Exhibit 5, *Lug nut problems*, F150Forum.com, https://www.f150forum.com/f38/lug-nut-problems-219588/ (last accessed Aug. 22, 2017), at post # 4 (July 24, 2013).

95.    Consumers are also rightly critical of the lack of a Ford-provided fix and the cost to repair. For example, the website Repair Pal (repairpal.com) listed 42 comments on swollen lug nuts on Ford Fusions, including the following:[10]

> **2011 Ford Fusion 39,500 mi** . . . Took my car in for an oil change. Quick Lane (owned by Ford) just called and said the lug nuts were swollen and of course they recommended replacing them... at a cost of $10 to $12 each for a cost of $200 to $240 to replacement. I have owned cars over 40+ years and have never even heard of this kind of 'issue'. If it's due to Ford buying the cheapest parts they can find - probably sourced from over seas - Ford should be paying the repair/replacement costs... not the consumer. This is ridiculous to have this kind of a problem with a car and I'll make sure I check on lug nut issues on the next car (not Ford) that I buy

* * *

> **2012 Ford Fusion 23,000 mi** . . . Had a flat tire and found the tire iron in the truck wouldn't fit the lug nuts. Neither would my tire iron cross. After getting a tow truck, turns out the steel caps are covered by a tin or some other metal exterior and rust grows between the two making the exterior cap 'swell'. This according to the service technician at Ford. I'm scheduled to take the truck in to the dealer next week and have all the lug nuts replaced. Should be a recall...

* * *

> **2012 Ford Fusion 89,906 mi** . . . Took car in for an oil change and tire rotation for service manager came out told me that all my lug nuts were swollen they couldn't get him off without ruining them charge me $133 have you ever heard of this problem I will not buy another

---

[10] Exhibit 6, *Swollen Lug Nuts on Ford Fusion*, RepairPal.com, https://repairpal.com/swollen-lug-nuts-509 (last accessed Aug. 22, 2017).

- 34 -

Ford I will not take my car back to the dealership to be serviced

\* \* \*

**2012 Ford Fusion 59,395 mi** . . . Took my 2012 Ford Fusion into the dealership for an oil change and tire rotation, was told the swollen lug nuts we causing corrosion and need replaced. Was given a $280 price tag. I have been a car owner for over 35 Years and have never, ever heard of this. I suspect a design flaw or cheap parts. I cannot believe Ford would endanger it's customers with a part that holds the wheels on the car!!!!

\* \* \*

**2013 Ford Fusion 39,000 mi** . . . I thought Ford was trying to rip me off. Swollen lug nuts. In all the cars I've owned I've never had this ridiculous problem.

\* \* \*

**2011 Ford Fusion 55,000 mi** . . . swollen lug nuts on my ford fusion, just like others listed here; about $200 to replace, should be a recall...

\* \* \*

**2013 Ford Fusion 54,000 mi** . . . I went in to get new tires installed and was told that all of my lug nuts needed to be replaced because there was corrosion between the two parts of the lug nuts. I was also told that I needed to replace the lug nuts before they would rotate my tires. This was at Costco. When I had an oil change at Ford, they said nothing about this problem. And the lug nuts are $11 each. Ridiculous!

\* \* \*

**2012 Ford Fusion 44,350 mi** . . . took my car for oil change/tire rotation. told that the lug nuts were swollen and would need to be replaced as they were not able to

- 35 -

take them off without damaging them. Had lug nuts replaced with a better lug nut that doesn't have the aluminum cover. $75 . . . . Not a great impression of the parts on a car I've only owned 5 months!

\* \* \*

**2011 Ford Fusion** . . . I also just took my car in for oil change and tire rotation. Just got a call that all of my lug nuts (20) are swollen and need to be replaced at $12 each. That's $240 to replace a defective part? After checking, this seems to be another common problem only to the Fusions.

\* \* \*

**2012 Ford Fusion 56,447 mi** . . . Was told 7 of my lug nuts were swollen and my choices are to pay to replace or they are unable to rotate tires on my car. Not covered in the premium maintenance package i purchased of course. Seems like this is the issue about every other service appointment.

\* \* \*

**2013 Ford Fusion** . . . Took my 2013 Fusion to Dealer for an Oil Change. Service asked if I would like the tires rotated and I said yes. Got a call telling me all my lug nuts had "swollen" and it would cost $148.00 to fix. They said they could not put them back on so I could not drive off and compare other sources for the parts. Further, when I asked if there was a newer replacement part they said no they had not fixed the faulty part. I complained that it was unreasonable for Ford to expect me to buy parts that would fail again. Very frustrating.

\* \* \*

**2012 Ford Fusion 48,000 mi** . . . Took the car in for an oil change/tire rotation and was told that the lug nuts needed to be replaced as they were swollen and damaged. The only people that ever changed the tires were Ford

- 36 -

dealerships and I told them I thought this was unfair since I'm not the one that damaged them, however they repaired them and I had to pay the bill as they said they were not covered under my bumper to bumper extended warranty.

* * *

**2011 Ford Fusion 75,000 mi** . . . I was told that all of my lug nuts were swollen and that they did not have a wrench to fit them to get them off, so they could rotate and balance the tires. They said it was due to a poor design and they had just gotten swollen and could break off at any moment. They had to break them off to put the new ones on because they were stripped and no wrench could fit them. $250 later-because they could only find lug nuts directly from ford that would work.

* * *

**2011 Ford Fusion** . . . Round 2 replacing the lug nuts, meaning, this is my THIRD set of lug nuts. I replaced all of the lug nuts 30k miles ago, and foresee having this issue AGAIN in the future. Not sure how this is not a responsibility of Ford. There is clearly a recall, and they need to produce new lug nuts, for the given years of the Fusion which are experiencing this issue. Unfortunately, no matter what you do, you will end up having to replace them. If you try to use other lug nuts (that aren't made like crap) they will not work as it does not keep the hub cap on. Meaning, you HAVE to use the lug nuts, from Ford, that will swell again.

* * *

**2014 Ford Fusion 36,897 mi** . . . Warning light on the dash showed low tire pressure. I pulled over and found the driver's side rear tire nearly on a flat. I removed the tire and Jack assembly from the trunk to change it out. When I tried to loosen the lugs nuts, the tool would not

- 37 -

fit!! I called Ford roadside assistance 3 hours ago and I'm still waiting!!!

\* \* \*

**2011 Ford Fusion 55,000 mi** . . . Between my parents, my brother and I we have owned in excess of 50 cars- I have had General Motors vehicles that I have kept to 250,000 miles. I have never encountered swollen lug nuts until I owned this 2011 Ford Fusion. The Service Manager told me it was a "design defect". 20 lug nuts = $196.00. Labor to replace = $238.95. Total cost = $434.95. Was I ripped off? You tell me what you think?

\* \* \*

**2014 Ford Fusion 12,850 mi** . . . I went for an oil change and got the works package and they said I'd need new lug nuts because mine are swollen. Not cool for a BRAND NEW CAR

\* \* \*

**2014 Ford Fusion 37,000 mi** . . . Took my Ford Fusion Hybrid in to get new tires and was told they couldn't get the lugs nuts off due to them being swollen. I've never had this problem before and actually have never heard of this. I thought the tire place was just trying to get more money out of me.

\* \* \*

**2012 Ford Fusion 55,000 mi** . . . I took my car in for an oil change and was told that lugs were swollen and the tires could not be rotated and therefore the brakes could not be checked. If this has been a problem since 2006, don't you think Ford would have found a fix for it by now.

\* \* \*

- 38 -

**2012 Ford Fusion 59,990 mi** . . . Took our car to have the tires rotated and was told the lug nuts were swollen and would need to be destroyed to remove them. Of course, then they would need to be replaced at a cost of almost $200. After looking on the internet, I discovered that this is true. It seemed so ridiculous that I thought it was a scam. If these lug nuts are that poorly constructed and defective, Ford should replace them at no charge to the customer. We were a 100% Ford family but I will never buy another one. In my opinion, this is a manufacturing defect and should be covered by Ford not by me.

\* \* \*

**2014 Ford Fusion 35,428 mi** . . . Just went in for oil change and tire rotation . Service mgr said they will rotate my tires too. Thought it was kind of Ford to do this. Is this just so they can check the lugs without letting me know they are to inspect wheels for this problem. After car was done, service mgr told me to keep an eye on my lug nuts. He said the lugs have a sleave that is wearing out and I will have to replace it . I have never heard of a sleave on lug nuts.needing to be replaced. Car is a 2014 Ford Fusion SE Ecoboost . with 35428 miles. Looking at Work order and it says I declined repair on lugs. .Who needs to replace lugnuts at 35000 miles or even at 100,000 miles or at all??.

\* \* \*

**2012 Ford Fusion** . . . third time I had to pay to replace them, isn't thier a recall???!

\* \* \*

**2010 Ford Fusion 120,000 mi** . . . Swelled lug nuts. Has not been fixed.

\* \* \*

010700-11 977510 V1

**2014 Ford Fusion** . . . Was told by Ford rear brake pads needs replacing, something I usually do on my own. While trying to remove rear wheels, 3/4 socket would not fit lugs, neither would the tire iron in trunk! Ford said nothing about the lug nuts, yet only 1 in 5 would fit any of the sockets I own. Am ordering a new set of steel lugs and having them replaced!!! There should be recall for this issue, if I were to get a flat on the road, would not even be able to change the tire!!!!!!

\* \* \*

**2012 Ford Fusion 90,100 mi** . . . swollen lug nuts. Went to replace brake pads and couldn't even get socket on lug bolt. Tried a cross bar and no luck. Nothing would fit correctly. Asked a few local garages and auto store and they all said this is common and they need to be forced off with a special lug nut removal tool.Local Ford dealer wanted to charge at least $50.00 just to remove and said could be more if they have to be cut off or drilled out. Local garages said 5-8 bucks per lug nut removal. Really poor craftsmanship by Ford. Should be using steel lug nut instead of cheaper lug nut. Just another cost for the owner that shouldn't be.

\* \* \*

**2013 Ford Fusion 50,000 mi** . . . I take my car only to the Ford dealership for repairs and at 50,000 miles they said my lug nuts were swollen and I needed to replace them at $8/each. Since I researched what causes swollen lug nuts, I told the mechanic that this problem was created because of how they perform their service. I'm still going to have to pay but not they know I'm watching them.

\* \* \*

**2010 Ford Fusion 2,147,483,647 mi** . . . Lug nuts swollen, I replaced them, at 80,000 now they say they are swollen again and want me to pay again at 155,000.

- 40 -

\* \* \*

**2014 Ford Fusion 15,000 mi** . . . Can get flat off wheel frozen

\* \* \*

**2013 Ford Fusion 69,625 mi** . . . Dealer said lug nuts were swollen

\* \* \*

**2012 Ford Fusion** . . . Swollen lug nuts. Had to change.

\* \* \*

**2010 Ford Fusion 60,000 mi** . . . Went have new tires put on car and was told lug nuts had swollen and that could not get them off without breaking them. After all said and done $200 later i got car back with new tires and lugs.

96.     The forums are not limited to swollen lug nut complaints on Ford

Fusions. For example, the following was posted by a former Ford-Certified

Technician about his 2015 Ford Fiesta: "Went with McGard one piece lug nuts.

This has been a problem since the mid 2000's when I worked at Ford. Crappy

cheap design."[11]

---

[11] Exhibit 7, *Swollen Lug Nuts*, FiestaSTForum.com, http://www.fiestastforum.com/forum/threads/12520-Swollen-Lug-Nuts (last accessed Aug. 22, 2017), at post # 9 (Feb. 7, 2017).

- 41 -

97.     On a forum for 2014 Ford Escape, a user from Rocky River, Ohio,

posted:[12]

> Had a flat a few months ago. AAA had major trouble
> getting the lug nuts off as I now recall. Took car to dealer
> for routine service today. Dealer said lug nuts were
> swollen and needed replacing. That sounded like the
> punch line to a bad joke. Bad joke on the consumer.
> Googling found dozens of reports, mostly to Ford
> vehicles because they put a cheap cap on the lug nuts that
> allows water to seep under and rust/corrosion causing the
> cap to swell. Only way to remove sometimes is to destroy
> the nut. People complained as well that standard tire iron
> won't work with the swollen nut, creating a roadside
> safety hazard.
>
> I realized that my 2010 Ford Fusion had the same
> problem. Will report that separately.

98.     Another Ford Escape owner, from Tampa, Florida, posted:[13]

> Took the Escape to dealer for oil change and tire rotation,
> 41234 miles. Every service since new has been a Ford
> dealer. They found the lug nuts (all20) to be "swollen.
> Service rep said it is due to the two dissimilar metals the
> lug nuts are made of. He and the service manage both
> indicated it has happened many times in their experience.
> They charged $8 each, so $160 plus tax to replace all.
> Even though we have the "extended warranty" there is no
> coverage from Ford. Th vehicle has never been in snow
> or ice, no salted roads. Contacted Ford customer care and
> they opened a case and referred me back to dealer.

---

[12] Exhibit 8, *Dealer Found Lug Nuts "Swollen"*, CarComplaints.com,
https://www.carcomplaints.com/Ford/Escape/2014/wheels_hubs/dealer_found_lug
_nuts_swollen.shtml (last accessed Aug. 22, 2017), at cmt. 2 (Jan.16, 2017).

[13] *Id.* at cmt. 1 (Sept. 16, 2016).

Update from Sep 16, 2016[:] The new lug nuts are exactly the same as the old ones. Guess they'll do the same thing in 40,000 miles. Dealer recognizes the problem but Ford stonewalls.

99.   On another forum, an Escape owner posted:[14]

**Swollen Lug Nuts ... Really!?**

So my Esc a pay was purchased and ONLY serviced by the same dealer for 50,000 plus miles ... today he says I have swollen lug nuts ... really ???

The dealer will be more than happy to replace them for $130.00 with the same exact ones. Now why in the world would I do that if the ones that Ford provided were swollen... This must not be a new issue ... of course they are claiming its not their fault and its not a defective part but wear and tear. Yeah right ....

The real issue is Ford is knowingly providing lug nuts with cases that when subject to impact wrench torque are breaking the cases and distorting them causing the issue but no its not a defect in the part ... right my you know what.

So I bought a new set at AutoZone took my Esc a Pay to discount tires where they removed my swollen lug nuts and put on decent quality lug nuts, had to work for a while to get the defective Ford parts off and then guess what ?

Those great people at Discount Tires did not charge me anything!!!

Believe me this is my LAST FORD VEHICLE EVER!

---

[14] Exhibit 9, *Swollen Lug Nuts ... Really!?*, FordEscape.org, http://www.fordescape.org/forum/wheels-tires-brakes-suspension/50993-swollen-lug-nuts-really.html (last accessed Aug. 22, 2017), at post # 1 (Sept. 28, 2015).

- 43 -

100.    In response to the above post, another Escape owner wrote:[15]

> I feel your pain. Couple of threads about it on this forum.
> Its pretty sad. My neighbor approached me yesterday
> saying his were toast and if I would order some new lug
> nuts for him. He also inquired about a better tire iron than
> the toy that Ford provides us. Of course standard issue
> tire iron won't fit over distorted lug nuts, so I don't know
> why they even bother with a spare tire.

101.    Similar complaints have also appeared on forums for Ford F-150

trucks, such as the following:[16]

> I've replaced both sets of lug nuts on my Fusion and
> F150. The nuts Ford uses are absolute junk. How is a
> chrome tin cover supposed to hold up over the life of the
> machine. Do yourself a favor, and buy a set of
> aftermarket lugnuts. They are solid steel, dipped in
> chrome or whatever finish you like. Never have the
> opportunity to have lug nut issues again.

---

[15] *Id.* at post # 2 (Sept. 28, 2015).

[16] Exhibit 10, *"Swollen Lug Nuts"*, F150Forum.com,
https://www.f150forum.com/f118/swollen-lug-nuts-365302/ (last accessed Aug.
22, 2017), at post # 10 (Dec. 1, 2016).

102.    Another F-150 owner posted the following and included the following

picture:[17]

> I have a 2011 f150. Just had my tires rotated and the
> service tech told me that I have 3 lugs nuts with chrome
> cover cracking on them. He said that this is caused by the
> lug nuts getting hot and the chrome swelling. Has
> anybody else had this problem.



103.    In response to the above post, another F-150 owner wrote: "The lugs

suck, pure and simple."[18]

104.    On another F-150 forum post, an owner posted:[19]

> I need your opinion.
>
> I have a 2012 that only gets serviced at the dealer. Every
> 8000 km it gets an oil change and along with that they
> rotate the tires. I have an extended warranty and the

---

[17] Exhibit 11, *Lug Nut Issues*, F150Forum.com, https://www.f150forum.com/ f38/lug-nut-issues-356615/ (last accessed Aug. 22, 2017), at post # 1 (Aug. 30, 2016).

[18] *Id.* at post # 8 (Aug. 30, 2016).

[19] Exhibit 12, *Lug nut warranty*, F150Forum.com, https://www.f150forum.com/ f38/lug-nut-warranty-354381/ (last accessed Aug. 22, 2017), at post # 1 (Aug. 9, 2016).

- 45 -

premium service package, until 2018, so it's nice not to worry about anything breaking.

So here's my dilemma. The other day I had to remove a tire but could not get the socket on the wheel lug. The OEM tire iron wouldn't work either. The lug nuts were all swollen, rounded off, etc. With some help, ended up beating the iron on each nut to remove. This left me stranded on the road and if not for some auto background, I would have been hooped.

Dropped by the dealer, and they tell me when the lug nuts get oversized, they just use an oversized socket to tighten them down. The guy comes out with his wrench and two sockets. When the 21mm doesn't fit, I use this bigger one. They know the nuts are no good but re-install them anyways. Why not replace them, or at the least tell the customer?

I understand these nuts are garbage, but why would the dealer do that? Most people would be stranded because their tire iron would no longer fit.

I feel it's their BS work ethic and demand new wheel nuts. Am I wrong? What would you do?

105.   In response to the above post, another F-150 owner wrote: "yes they are junk but no there really isn't anything you can do. Lug nuts are only covered under base new vehicle warranty. It's mainly because that dealer didn't care."[20]

**D.    Ford has been aware of the defective nature of their lug nuts for years, yet has done nothing.**

106.   As the above postings make clear, for at least 10 years legion Ford customers have been stranded by Ford's defective lug nuts and/or been faced with

---

[20] *Id.* at post # 2 (Aug. 9, 2016).

buying replacement lug nuts. There can be no question that Ford and its dealer network know, and have known for years, that Ford's defective lug nuts systematically fail, become unusable, and require replacement.

107.  Consumers have also submitted numerous complaints to NHTSA, a resource that Ford regularly monitors. Ford necessarily has knowledge of defects reported to NHTSA, especially when there are dozens and dozens across multiple models, as is the case with Ford's defective two-piece lug nuts.

108.  NHTSA complaints include the following from as early as 2010 to 2017. As is clear from these NHTSA complaints, Ford also purposefully requires its customers to bear the costs of repairing and replacing its defective lug nuts:

> Date Complaint Filed: 07/12/2017 Date of Incident: 07/12/2017 Component(s): WHEELS NHTSA ID Number: 11004912 Consumer Location: PEORIA, AZ
>
> Manufacturer: Ford Motor Company
>
> Vehicle Identification No. (VIN): 1FADP3J20EL...
>
> SUMMARY:
>
> LUG NUTS ARE UNABLE TO BE REMOVED WITH LUG NUT WRENCH. FORD DEALER SAYS THE LUG NUTS ARE DEFECTIVE AND NEED TO BE REPLACED DUE TO 'SWELLING'. FORD CORPORATE SAYS THESE ARE WEAR AND TEAR ITEM AND WILL NOT REPLACE. THIS IS A CRITICAL SAFETY ITEM AS THE TIRES ARE UNABLE TO BE REMOVED OR CHANGED TO A SPARE TIRE AFTER A FLAT TIRE OCCURS.

* * *

Date Complaint Filed: 06/21/2017 Date of Incident:
06/16/2017 Component(s): WHEELS NHTSA ID
Number: 11000389 Consumer Location:
BARRINGTON, IL

 SUMMARY:

TL* THE CONTACT OWNS A 2014 FORD FUSION.
THE CONTACT TOOK THE VEHICLE TO
WICKSTROM FORD (LOCATED AT 600 W.
NORTHWEST HWY, BARRINGTON, IL 60010) TO
HAVE THE TIRES BALANCED AND ROTATED.
THE CONTACT WAS INFORMED THAT THE LUG
NUTS HAD EXPANDED. THE CONTACT WAS
INFORMED THAT TO REMOVE THE LUG NUTS
AND PERFORM THE REQUESTED SERVICE, THE
LUG NUTS HAD TO BE DRILLED AND ALL LUG
NUTS WOULD NEED TO BE REPLACED. THE
CONTACT DECLINED TO HAVE THE VEHICLE
SERVICED. THE MANUFACTURER WAS
NOTIFIED OF THE ISSUE. THE APPROXIMATE
FAILURE MILEAGE WAS 45,000.

* * *

Date Complaint Filed: 06/01/2017 Date of Incident:
06/01/2017 Component(s): WHEELS NHTSA ID
Number: 10992741 Consumer Location: SOUTH
RANGE, WI

 Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FTFW1ETXEK...

SUMMARY:

TL* THE CONTACT OWNS A 2014 FORD F-150.
THE CONTACT STATED THAT THE VEHICLE WAS
TAKEN TO THE DEALER FOR ROUTINE
MAINTENANCE WHERE IT WAS DETERMINED
THAT THE LUG NUTS WERE PREMATURELY
CRACKED ON ALL FOUR WHEELS. THE DEALER

- 48 -

(BENNA FORD ROUSH SUPERIOR, 3022 TOWER
AVE, SUPERIOR, WI 54880, (715) 394-8669)
INSPECTED THE LUG NUTS AND INDICATED
THAT THEY NEEDED TO BE REPLACED. THE
MANUFACTURER WAS NOTIFIED OF THE
FAILURE TO DETERMINE A RECOMMENDED
SOLUTION. THE FAILURE MILEAGE WAS NOT
AVAILABLE.

\* \* \*

Date Complaint Filed: 05/23/2017 Date of Incident:
05/20/2017 Component(s): WHEELS NHTSA ID
Number: 10991160 Consumer Location: EDISON, NJ

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0D93DR...

SUMMARY:

HAVE HAD TO HAVE THE LUG NUTS REPLACED
TWICE. THE MOST RECENT REPLACEMENT WAS
WITH 32,000 MILES ON THEM. WAS TOLD BY
DEALER THAT THE LUG NUTS WERE
"SWOLLEN". THIS SWELLING RESULTS IN THE
LUG NUTS NOT BEING ABLE TO BE REMOVED
WITH A STANDARD WRENCH. IF THIS OCCURS
WHEN DRIVER HAS A FLAT TIRE, THEY MAY
NOT BE ABLE TO REMOVE THE TIRE TO
CHANGE IT AND WOULD RESULT IN THE CAR
BEING TOWED TO A REPAIR SHOP JUST TO
CHANGE A TIRE. MY CAR IS UNDER WARRANTY,
YET THE DEALER CHARTED ME TO REPLACE
THE LUG NUTS. HAVE RESEARCHED "SWOLLEN
LUG NUTS" AND THIS SEEMS TO BE A PROBLEM
WITH FORDS. THE SWOLLEN LUG NUTS WERE
DISCOVERED DURING A ROUTINE OIL CHANGE

\* \* \*

010700-11 977510 V1

Date Complaint Filed: 05/23/2017 Date of Incident: 05/18/2017 Component(s): WHEELS NHTSA ID Number: 10991152 Consumer Location: CINCINNATI, OH

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FAHP0HA3BR...

SUMMARY:

THE LUG NUTS ON THE FORD FUSION ARE KNOWN TO SWELL TO GREATER THAN THEIR ORIGINAL SIZE. WHEN THESE LUG NUTS SWELL, THE LUG NUT WRENCH WILL NO LONGER FIT, SO THEY MUST BE DRILLED OR EXTRACTED, AND HAVE THE POTENTIAL TO FRACTURE WHEN DRIVING. I HAVE REPLACED THE LUG NUTS TWICE, SO I AM ON MY THIRD SET. IF I WERE TO HAVE A FLAT TIRE, I WAS TOLD IT WOULD HAVE TO BE TOWED AS THE WRENCH WOULD NOT FIT THE LUG NUTS. "THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION AND FORD HAVE ISSUED A RECALL ALERT FOR 2010-2011 MODEL YEAR FORD FUSION AND MERCURY MILAN SEDANS. THE VEHICLES MAY HAVE FAULTY WHEEL STUDS THAT MAY FRACTURE AND POSSIBLY CAUSE THE WHEELS TO SEPARATE FROM THE CARS, INCREASING THE LIKELIHOOD OF A COLLISION." RECALL #: 11V574000 I WAS NEVER ALERTED OF THIS RECALL FROM FORD, AND I HAVE ALSO HAD MY VEHICLE SERVICED FOR THIS EXACT PROBLEM AT A FORD DEALERSHIP. I HAVE RECEIVED OTHER RECALLS VIA MAIL, AND ALSO CONTINUALLY CHECK MY VIN ON THE FORD WEBSITE. I NOW HAVE PAID FOR THIS TWICE.

* * *

Date Complaint Filed: 05/22/2017 Date of Incident: 05/20/2017 Component(s): WHEELS NHTSA ID Number: 10991021 Consumer Location: PALOS HEIGHTS, IL

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0LUXER...

SUMMARY:

TL* THE CONTACT OWNS A 2014 FORD FUSION. WHILE THE VEHICLE WAS AT THE DEALER FOR MAINTENANCE, IT WAS DISCOVERED THAT THE WHEEL LUG NUTS WERE FAULTY AND HAD EXPANDED AND ENLARGED. THE WRENCH PROVIDED BY THE MANUFACTURER WOULD NO LONGER FIT OVER THE LUG NUTS TO TIGHTEN AND SECURE THE WHEELS TO THE VEHICLE. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 45,000.

\* \* \*

Date Complaint Filed: 05/17/2017 Date of Incident: 05/08/2017 Component(s): WHEELS NHTSA ID Number: 10986273 Consumer Location: INDEPENDENCE, MO

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FAHP3F2XCL...

SUMMARY:

THE LUG NUTS ARE SWELLING AND SEPARATING. BECAUSE THEY ARE TWO PART CHROME COVERED. FOR THIS CAR, THE LUGNUTS ARE CUSTOM. IF THEY ARE PLACED

- 51 -

BY STANDARD LUG NUTS, THEN THE WHEEL
COVER CANNOT STAY ON. THE TWO PART
CHROME LUG NUT IS NOT CARRIED AS A STOCK
ITEM IN A DEALERSHIP. TIRES CANNOT BE
REMOVED BY STANDARD LUG WRENCH,
BECAUSE THE LUGNUT IS NOT A STANDARD
SIZE. THE LUG NUT MUST BE CUT OFF.
THEREFORE IF A TIRE BECOMES FLAT ON THE
ROAD, IT MUST BE TOWED INTO A DEALERSHIP
AND NOT FIXED AT ANY OTHER PLACE. I WAS
TOLD THAT IT COULD TAKE OVER A WEEK TO
GET A LUG NUT IN WITH A GREATLY
INCREASED PRICE OF OVER $20 INSTEAD OF A
STANDARD LUG NUT COST OF $4. RECEIVED
THE FOLLOWING FROM THE DEALERSHIP GARY
CROSSLEY: DEAR THOMAS, DURING YOUR
RECENT VISIT, WE RECOMMENDED THE
FOLLOWING IMPORTANT SERVICE(S):† • TIRES
REQUIRE IMMEDIATE REPLACEMENT. AT QUICK
LANE AT GARY CROSSLEY FORD, OUR
FACTORY-TRAINED TECHNICIANS CAN
PROVIDE THIS SERVICE WHILE YOU WAIT. AND
THERE'S NO APPOINTMENT NECESSARY —
SIMPLY EXCELLENT SERVICE AT YOUR
CONVENIENCE. STOP IN TODAY! SINCERELY,
YOUR QUICK LANE SERVICE TEAM

\* \* \*

Date Complaint Filed: 04/27/2017 Date of Incident:
04/24/2017 Component(s): UNKNOWN OR OTHER
NHTSA ID Number: 10981006 Consumer Location:
Unknown

 Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FTFW1CT3CF...

SUMMARY:

MY FORD DEALER TOLD ME MY ALL OF MY LUG NUTS NEED TO BE REPLACED, BECAUSE THEY ARE WORN OUT AND DANGEROUS! MY DEALER SAID THE OLD LUGS CAN NOT BE REMOVED SO THEY CAN ROTATE MY TIRES. MY TRUCK IS ONLY 5 YEARS OLD. I NEED A RECALL ORDER!

* * *

Date Complaint Filed: 03/29/2017 Date of Incident: 03/29/2017 Component(s): WHEELS NHTSA ID Number: 10969399 Consumer Location: OGDEN, UT

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FADP3F26DL...

SUMMARY:

TL* THE CONTACT OWNS A 2013 FORD FOCUS. WHEN ONE OF THE FRONT TIRES BECAME FLAT, THE CONTACT NOTICED THAT THE FRONT WHEEL LUG NUTS WERE SWOLLEN AND UNABLE TO BE REMOVED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 56,000.

* * *

Date Complaint Filed: 02/21/2017 Date of Incident: 02/16/2017 Component(s): WHEELS NHTSA ID Number: 10956033 Consumer Location: TOWER, MN

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FMCU9G98EU...

SUMMARY:

TL* THE CONTACT OWNS A 2014 FORD ESCAPE. THE CONTACT STATED THAT WHILE THE

- 53 -

VEHICLE WAS AT THE DEALER FOR A TIRE ROTATION, THE TECHNICIAN ADVISED THAT THE LUG NUTS FOR ALL FOUR TIRES NEEDED TO BE REPLACED. THE CONTACT MENTIONED THAT THE LUG NUTS FOR ALL FOUR TIRES WERE PREVIOUSLY REPLACED. THE VEHICLE WAS NOT REPAIRED FOR THE RECENT FAILURE. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 94,000.

\* \* \*

Date Complaint Filed: 02/10/2017 Date of Incident: 01/31/2017 Component(s): WHEELS NHTSA ID Number: 10953807 Consumer Location: PALM BAY, FL

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): Not Available

SUMMARY:

THIS IS A KNOW ISSUE THAT FORD HAS FAIL TO RESOLVE.. CHROME PLATED LUGS NUTS ARE BECOMING SWOLLEN AND THE ISSUED LUG WRENCH WILL NOT WORK ON THE LUGS.. THE LOCAL SERVICE DEPART STATED THE FORD REFUSED TO CORRECT THE PROBLEM.. IF THE VEHICLE IF OUT OF WARRANTY, THE CONSUMER WILL BE FORCED TO HAVE THE VEHICLE TOWED UNTIL THE RIGHT SIZE LUG WRENCH CAN BE FITTED.. THIS IS A SAFETY ISSUE AND A UNWARRANTED UNKNOWN COST TO CONSUMERS DUE TO A KNOWN DEFECT.. JUST A RANDOM SEARCH OF THE INTERNET FOR SWOLLEN LUG NUTS AND YOU WILL SEE ALL THE COMPLAINTS.. CAN YOU IMAGE SOMEBODY WITH A NEW VEHICLE ON THE SIDE OF THE ROAD ATTEMPTING TO CHANGE A TIRE

AND THE ISSUED LUG WRENCH WILL NOT WORK.. MY LUGS WERE REPLACE BY THE DEALER ON JAN 31ST, 2016 HERE IS AN ONLINE FORD FORUM. HTTP://WWW.F150FORUM.COM/F118/SWOLLEN-LUG-NUTS-365302/ AGAIN, THIS HAS BEEN A ISSUE FOR MANY YEARS AND I AM SURE NUMEROUS CONSUMERS HAD BEEN CONFRONTED WITH THIS.. A SIMPLE ONLINE RESEARCH WILL SHOW THOUSANDS OF COMPLAINTS.. THE FUNNY PART, THEY PUT THEY SAME LUG NUTS BACK ON MY VEHICLE AFTER THE REPAIR.

* * *

Date Complaint Filed: 02/05/2017 Date of Incident: 02/03/2017 Component(s): WHEELS NHTSA ID Number: 10949630 Consumer Location: MARIETTA, GA

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FMCU9G99GU...

SUMMARY:

GOT A CERTIFIED PREOWNED 2016 AWD FORD ESCAPE WITH ORIGINAL MANUFACTURER JACK AND LUG WRENCH. GOT A FLAT ON DRIVING ON A WELL MAINTAINED GRAVEL ROAD GOING 20 MPH. THERE WAS LESS THEN 2000 MILES ON THE NEW KELLY AS 235/55 R17 WHEELS (NO ROAD HAZARD! JUST GRAVEL). TMPS SYSTEM WORKED, PULLED OVER RIGHT AWAY AND WATCHED THE TIRE DEFLATE IN FRONT OF MY EYES! GOT JACK AND DONUT OUT. LUG WRENCH DOES NOT FIT LUG NUTS. COULDN'T CHANGE THE TIRE W/O ASSISTANCE. THIS HAS BEEN REPORTED ON 2014 VEHICLES SO FORD IS AWARE. BE CAREFUL AND CHECK BEFORE YOU

ALSO GET TRAPPED ON THE SIDE OF THE ROAD.
I AM NOT SURE IF THE PROBLEM IS THE
WRENCH OR THE NUTS...BUT PLAN ON
WORKING THE PROBLEM OUT WITH THE
DEALER!

* * *

Date Complaint Filed: 01/23/2017 Date of Incident:
01/23/2017 Component(s): WHEELS NHTSA ID
Number: 10947256 Consumer Location: FLETCHER,
NC

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0HR9DR...

SUMMARY:

THE ALUMINIUM LUG NUT CAPS SWELL SO THE
LUG WRENCH SUPPLIED WITH THE CAR CAN
NOT REMOVE THE LUG NUTS. TOW TRUCK
COULD NOT REMOVE THEM SO CAR HAD TO BE
TOWED TO DEALER, SHORT-REDMOND 1916
JACKSBORO PK. LAFOLLETTE, TN 37766, (800)
810-9088, WWW.SHORT-REDMONDFORD.COM.
THE DEALER SAID THIS IS A COMMON PROBLEM
WITH THE FUSION LUG NUTS AND OTHER LUG
NUTS OF THE SAME TYPE. THE DEALER GOT
THE LUG NUTS OFF, BUT THEY HAD TO BE
REPLACED AT A COST OF $52/TIRE. MY DEALER
IN ASHEVILLE, NC ALSO ADVISED MY TO
REPLACE THE LUG NUTS THE NEXT TIME I HAD
MY TIRES ROTATED, BUT SAID NOT TO BUY
THEM FROM FORD. THERE ARE SOLID
STEEL/CHROME AFTER MARKET LUG NUTS
THAT ARE BETTER THEN THE ALUMINIUM
CAPPED LUG NUTS THAT FORD USES. THIS IS
CLEARLY AN ENGINEERING ISSUE. IT DID NOT
ALLOW ME TO CHANGE A TIRE ON THE SIDE OF
THE ROAD WITH THE EQUIPMNET SUPPLIED

- 56 -

WITH THE CAR. I HAD TO WAIT OVER AND
HOUR ON THE SIDE OF AN INTERSTATE
HIGHWAY FOR A TOW TRUCK WHICH IS ALSO
UNSAFE. I DO HAVE THE LUG NUTS AS WELL AS
RECIEPT FROM FOR TO REMOVE AND REPLACE
THE LUG NUTS. THE ALUMINIUM LUG CAPS ARE
VERY DEFORMED SINCE THEY HAD TO
HAMMER A SOCKET ONTO THEM TO GET THEM
OFF.

* * *

Date Complaint Filed: 01/16/2017 Date of Incident:
01/16/2017 Component(s): WHEELS NHTSA ID
Number: 10945587 Consumer Location: ROCKY
RIVER, OH

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FMCU0JX9EU...

SUMMARY:

AAA OPERATOR REPORTED THAT LUG NUT WAS
SWOLLEN; COULDN'T REMOVE WITH
STANDARD EQUIPMENT. DEALER TODAY SAID
ALL LUG NUTS NEEDED REPLACING AS THEY
WERE "SWOLLEN" DUE TO CORROSION
UNDERNEATH THE CAP. THIS IS A SAFETY
HAZARD AS THE SUPPLIED TIRE IRON CAN'T
REMOVE THEM. SOMETIMES THEY MUST BE
SAWED OFF TO REPLACE. APPARENTLY, SAME
HAPPENED WITH MY 2010 FORD FUSION. MANY
SIMILAR REPORTS ON THE INTERNET.

* * *

Date Complaint Filed: 12/29/2016 Date of Incident:
12/29/2016 Component(s): WHEELS NHTSA ID
Number: 10938550 Consumer Location: CLAIRTON,
PA

- 57 -

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0HR9DR...

SUMMARY:

TL* THE CONTACT OWNS A 2013 FORD FUSION
THE CONTACT STATED THAT THE VEHICLE WAS
DRIVEN TO THE DEALER TO HAVE ALL FOUR
TIRES ROTATED. IT WAS EXTREMELY
DIFFICULT FOR THE MECHANIC TO REMOVE
THE LUG NUTS; THEREFORE, ALL TWENTY LUG
NUTS WERE REPLACED. THE MANUFACTURER
WAS NOTIFIED. THE APPROXIMATE FAILURE
MILEAGE WAS 60,000. UPDATED 03/07/17*LJ

\* \* \*

Date Complaint Filed: 12/07/2016 Date of Incident:
11/28/2016 Component(s): WHEELS NHTSA ID
Number: 10933768 Consumer Location: BLUFFTON,
SC

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0H77DR...

SUMMARY:

ACCORDING TO THE TECHNICIAN FROM AAA
ROADSIDE ASSISTANCE AND THE TECHNICIAN
FROM GOODYEAR AUTO SERVICE, MY LUNG
NUTS NEED REPLACED. REPORTEDLY, THE LUG
NUTS HAVE A METAL COVERING CAUSING
THEM TO SWELL. THE TIRE IRON DOES NOT FIT
PROPERLY, MAKING IT DIFFICULT TO REMOVE
OR TIGHTEN THE NUTS. UNLESS THE NUTS ARE
REPLACED, IT MAY BE IMPOSSIBLE TO REMOVE
OR SAFELY SECURE A TIRE IN AN EMERGENCY.
I CONTACTED FORD CUSTOMER RELATIONSHIP
CENTER ABOUT THE PROBLEM. THEY WILL NOT
ADDRESS THE PROBLEM, SINCE I AM OUTSIDE

- 58 -

THE WARRANTY PERIOD. THIS IS A SAFETY ISSUE. IF SOMEONE HAS A FLAT TIRE, THEY MAY END UP BEING STRANDED OR GET INJURED BECAUSE A TIRE IS NOT SECURELY MOUNTED.

* * *

Date Complaint Filed: 12/03/2016 Date of Incident: 11/30/2016 Component(s): WHEELS NHTSA ID Number: 10929740 Consumer Location: HOBE SOUND, FL

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0LU0DR...

SUMMARY:

APPARENTLY THE LUGS NUTS ASSOCIATED WITH THE 2013 FORD FUSION HYBRID CORRODE AND IT IS NOT POSSIBLE TO CHANGE A TIRE (OR ROTATE THEM DURING AN INSPECTION). I WAS TOLD THAT THE CORROSION OCCURS IN A COUPLE OF HAPPEN YEARS AND THEREFORE, I MUST BUY NEW LUG NUTS AT $200 PLUS AND DRIVE WITH A FLAT TIRE. SO I BUY A NEW CAR AND OR SPEND $200 DOLLAR EVERY A COUPLE OF YEARS. I WAS TOLD A LOT OF CUSTOMERS HAVE COMPLAINED.

* * *

Date Complaint Filed: 09/27/2016 Date of Incident: 08/15/2016 Component(s): WHEELS NHTSA ID Number: 10909991 Consumer Location: WHITEWATER, WI

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0RU7ER...

SUMMARY:

- 59 -

I WAS AT MY DEALERSHIP TO HAVE MY TIRES
ROTATED AND THEY STATED THAT THEY HAD
DIFFICULTY GETTING MY LUG NUTS OFF. THEY
STATED THAT MY LUG NUTS "WERE SWULLEN".
I HAVE BEEN DRIVING FOR OVER 50 YEARS AND
NEVER HEARD OF THIS BEFORE. THEY SAID
THAT I NEED TO BUY NEW ONES AT A COST OF
$75-$100. I WAS VERY UPSET WITH THIS AND
LEFT. I LOOKED THIS PROBLEM UP ON THE
INTERNET AND SEE THAT HUNDREDS OF
PEOPLE HAVE HAD THE SAME PROBLEM. IT
SEEMS THAT FORD HAD A CHEAPER LUG NUT
PRODUCED WITH THE NUT BEING COVERED
WITH A CHEAPER MATERIAL USED TO MAKE
THE CAP THAT COVERS THE NUT. MOISTURE
GETS IN BETWEEN THE TWO METALS CAUSING
CONDENSATION AND " SWELLING". I NOW
HAVE COVERS ACTUALLY FALLING OFF THE
NUT. MY QUESTION IS: WHY, IF THERE ARE SO
MANY PROBLEMS THAT HAVE BEEN REPORTED,
WHY HASN'T THE PROBLEM BEEN RESOLVED/
RECALLED? WHY HASN'T THE NHTSA GOTTEN
INVOLVED? WE DO PAY TAXES FOR GOV.
AGENCIES TO OVERSEE SAFETY ISSUES SUCH
AS THIS. OR BETTER YET, WHY HASN'T FORD
STEPPED UP AND TAKEN CARE OF THIS
PROBLEM? I AM THINKING OF BUYING A CHEVY
NOW. THEY DON'T HAVE "SWULLEN" LUG
NUTS.

* * *

Date Complaint Filed: 06/20/2016 Date of Incident:
06/09/2016 Component(s): WHEELS NHTSA ID
Number: 10875378 Consumer Location: MAITLAND,
FL

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): Not Available

SUMMARY:

TL* THE CONTACT OWNS A 2013 FORD FUSION. WHILE AT THE DEALER FOR ROUTINE MAINTENANCE, THE VEHICLE WAS DIAGNOSED WITH SWOLLEN LUG NUTS. THE FAILURE COULD CAUSE SEPARATION OF THE ENTIRE WHEEL FROM THE VEHICLE AND RESULT IN DAMAGE TO THE VEHICLE OR A CRASH. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 62,500.

* * *

Date Complaint Filed: 06/06/2016 Date of Incident: 05/03/2016 Component(s): WHEELS NHTSA ID Number: 10872665 Consumer Location: LEESBURG, VA

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FA6P0H77DR...

SUMMARY:

I TOOK MY 2013 FORD FUSION IN FOR THE REGULAR SERVICE AT THE DEALERSHIP WHERE I PURCHASED THE VEHICLE. AFTER SERVICE WAS COMPLETED (OIL CHANGE AND TIRE ROTATION), I WAS NOTIFIED THAT EACH WHEEL HAS "SWOLLEN LUG NUTS;" ALL LUG NUTS WERE SWOLLEN. FROM WHAT I UNDERSTAND, THIS MEANS THAT MY LUG NUTS NO LONGER FIT TO THE SAME SIZE AS CONDITIONED BY THE ORIGINAL MANUFACTURER. YESTERDAY, I TOOK MY VEHICLE IN TO RECEIVE A TIRE PATCH AND ALIGNMENT. THE IMAGES PROVIDED SHOW THE CONDITION OF THE LUG NUTS AFTER THE TIRE WAS PATCHED AND VEHICLE WAS

- 61 -

ALIGNED. THIS SWOLLEN LUG NUT IS A
SERIOUS ISSUE AND DESERVES YOUR
IMMEDIATE ATTENTION. THANK YOU. *TR

* * *

Date Complaint Filed: 04/04/2016 Date of Incident:
04/01/2016 Component(s): WHEELS NHTSA ID
Number: 10853383 Consumer Location: JOLIET, IL

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): Not Available

SUMMARY:

TL* THE CONTACT OWNS A 2014 FORD ESCAPE.
THE CONTACT WAS UNABLE TO REMOVE THE
LUG NUTS FROM THE VEHICLE. THE VEHICLE
WAS TAKEN TO A DEALER WHERE IT WAS
DIAGNOSED THAT THE LUG NUTS WERE
SWOLLEN AND NEEDED TO BE REPLACED. THE
VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE
FAILURE. THE VIN WAS UNKNOWN. THE
APPROXIMATE FAILURE MILEAGE WAS 47,000.

* * *

Date Complaint Filed: 03/17/2016 Date of Incident:
03/17/2016 Component(s): WHEELS NHTSA ID
Number: 10850277 Consumer Location:
ALBUQUERQUE, NM

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FMCU0GX1EU...

SUMMARY:

GOT A FLAT AS I DROVE INTO DRIVEWAY.
FIGURED ILL JUST PUT THE DONUT SPARE ON
AND GET THE FLAT FIXED IN THE AM. THE LUG

- 62 -

WRENCH THAT COMES WITH THE VEHICLE, FACTORY (IM SINGLE OWNER) DOES NOT FIT LUG NUTS. REALLY FORD? 100 YEARS IN THE BUSINESS IS THIS IS WHAT YOU COME UP WITH? POOR HENRY WOULD HAVE A FIT.

* * *

Date Complaint Filed: 02/15/2016 Date of Incident: 02/15/2016 Component(s): WHEELS NHTSA ID Number: 10826131 Consumer Location: CORTLAND, IL

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FAHP0HA7BR...

SUMMARY:

LUG NUTS CORRODE AND YOU CANNOT GET THE LUG WRENCH ON THEM TO REMOVE TIRE. THIS IS A KNOWN ISSUE ACCORDING TO SEVERAL FORD TECHS. I'VE ALREADY HAD TO REPLACE ONE SET OF LUG NUTS DUE TO THIS ISSUE AND NOW I AM BEING TOLD I NEED TO REPLACE THEM AGAIN.

* * *

Date Complaint Filed: 02/10/2016 Date of Incident: 02/08/2016 Component(s): WHEELS NHTSA ID Number: 10825426 Consumer Location: HOWELL, MI

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FTFX1ETXBF...

SUMMARY:

LUG NUTS ON VEHICLE EXPAND SPLIT AND CANNOT BE REMOVED FROM WHEEL. VARIOUS MECHANICS AT COSTCO AND FORD DEALERSHIPS STATE THAT THIS IS A KNOWN

- 63 -

PROBLEM. THE REPLACEMENT OF THE LUG NUTS COST $165.00 FOR TO REPLACE ON THE FOUR TIRES. AFTER REPLACING THE LUG NUTS BY AN AUTHORIZED FORD DEALER I WAS TOLD THIS COULD HAPPEN AGAIN. THE PROBLEM WAS DISCOVERED WHEN I TRIED TO ROTATE THE TIRES. WHEN I PAID FOR THE REPLACEMENT AND ASKE3D FOR THE OLD PARTS I WAS TOLD THEY HAD ALREADY BEEN DISPOSED OF.

* * *

Date Complaint Filed: 01/08/2016 Date of Incident: 12/08/2013 Component(s): WHEELS NHTSA ID Number: 10818910 Consumer Location: FOWLERVILLE, MI

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FAHP0HA6CR...

SUMMARY:

TL* THE CONTACT OWNS A 2012 FORD FUSION. AFTER THE VEHICLE WAS TAKEN TO BE SERVICED, THE TECHNICIAN STATED THAT THE LUG NUTS WERE SWOLLEN AND NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED THREE YEARS LATER. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND STATED THAT THE VIN WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 11V574000 (WHEELS). THE FAILURE MILEAGE WAS 40,000.

* * *

Date Complaint Filed: 08/05/2015 Date of Incident: 07/22/2015 Component(s): WHEELS NHTSA ID Number: 10746490 Consumer Location: Unknown

- 64 -

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FMCU0GX4EU...

SUMMARY:

TL* THE CONTACT OWNS A 2014 FORD ESCAPE. THE CONTACT STATED THAT WHILE GETTING THE VEHICLE SERVICED, THE TECHNICIAN COULD NOT FIND A LUG NUT WRENCH TO FIT THE LUG NUTS ON THE VEHICLE. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE LUG NUTS WERE ENLARGED AND NEEDED TO BE REPLACED. THE LUG NUTS WERE REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 58,650.

* * *

Date Complaint Filed: 06/12/2014 Date of Incident: 06/12/2014 Component(s): WHEELS NHTSA ID Number: 10597869 Consumer Location: BATAVIA, OH

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): Not Available

SUMMARY:

TOOK MY FUSION IN FOR OIL CHANGE AND TIRE ROTATION. TECHNICIAN NOTIFIED ME THEY CANNOT ROTATE TIRES WITHOUT DAMAGING LUG NUTS. FORD USED SLEEVED LUG NUTS (CHROME SLEEVE OVER STEEL LUG NUT) SO WHEN THE LUG NUT CORRODES UNDERNEATH THE SLEEVE EITHER FALLS OFF (REDUCING THE DIAMETER OF THE NUT SO THE WRENCH ROUNDS OFF THE LUG NUT) OR IT SWELLS (INCREASING THE DIAMETER OF THE LUG NUT SO THE WRENCH WILL NOT PROPERLY FIT ONTO THE LUG NUT). THIS IS A SERIOUS

- 65 -

SAFETY ISSUE. HOW DO YOU PROPERLY ROTATE YOUR TIRES AT THE RECOMMENDED INTERVALS IF THE FACTORY LUG WRENCH WILL NOT FIT THE LUG NUTS? AND IF YOU HAD A FLAT IN A REMOTE AREA HOW COULD YOU CHANGE YOUR TIRE AND DRIVE TO SAFETY? WHEN I CALLED FORD MOTOR CO. THEY TELL ME THIS IS NOT COVERED UNDER ANY WARRANTY OR RECALL SO THEY WILL NOT REMEDY THE SITUATION. VERY DISAPPOINTING THAT FORD WOULD PUT THEIR CUSTOMERS AT RISK AND NOT STAND BEHIND THEIR PRODUCT FOR SUCH A BASIC YET CRUCIAL COMPONENT OF THE VEHICLE. *TR

* * *

Date Complaint Filed: 09/26/2013 Date of Incident: 09/25/2013 Component(s): WHEELS NHTSA ID Number: 10545450 Consumer Location: WHITEHOUSE, OH

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): Not Available

SUMMARY:

TL* THE CONTACT OWNS A 2010 FORD FUSION. THE CONTACT STATED THAT WHILE THE VEHICLE WAS AT THE DEALER FOR A BRAKE INSPECTION, SHE WAS ADVISED THAT THE WHEELS LUG NUTS WERE CORRODED. IN ADDITION, THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER 11V574000 (WHEELS). THE VEHICLE WAS REPAIRED AND THE LUG NUTS WERE REPLACED. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS 59,880.

* * *

- 66 -

Date Complaint Filed: 06/28/2013 Date of Incident: 10/15/2012 Component(s): WHEELS NHTSA ID Number: 10522196 Consumer Location: WURTSBORO, NY

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 3FAHP0HA3AR...

SUMMARY:

TL* THE CONTACT OWNS A 2010 FORD FUSION. THE CONTACT STATED THAT THE LUG NUTS HAD BECOME BENT AND OUT OF SHAPE. THE CONTACT CHANGED FROM SUMMER TO WINTER TIRES AND ALL OF THE LUG NUTS WERE FOUND TO BE WARPED. THE CONTACT SPOKE TO THE MANUFACTURER REGARDING NHTSA CAMPAIGN ID NUMBER: 11V574000 (WHEELS) AND WAS TOLD THAT THE VEHICLE WAS NOT INCLUDED IN THE RECALL CAMPAIGN. THE CONTACT COULD NOT TIGHTEN THE LUG NUTS BECAUSE THE LUG NUTS WERE BENT, CRACKED AND NO LONGER FITTING THE LUG WRENCH THAT WAS SUPPLIED IN THE VEHICLE BY THE MANUFACTURER. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS UNKNOWN AND CURRENT MILEAGE WAS 42,000. *TR

* * *

Date Complaint Filed: 06/17/2013 Date of Incident: 06/12/2013 Component(s): WHEELS NHTSA ID Number: 10520143 Consumer Location: SOUTH LYON, MI

Manufacturer: Ford Motor Company

Vehicle Identification No. (VIN): 1FAHP3K22CL...

- 67 -

SUMMARY:

TL* THE CONTACT OWNS A 2012 FORD FOCUS.
THE CONTACT STATED WHEN THE DEALER
REPAIRED THE FLAT TIRE THEY CONFIRMED
THAT THE LUG NUTS NEEDED TO BE REPLACED
DUE TO A MANUFACTURERS DEFECT. THE
MANUFACTURER WAS NOT NOTIFIED OF THE
DEFECT. THE APPROXIMATE FAILURE MILEAGE
WAS 78,000. *TR

**E.    Despite express warranties, Ford has not fixed the problems with the defective lug nuts.**

**1.    Ford provided an express warranty with vehicles equipped with defective lug nuts that promised to fix both design and manufacturing defects.**

109.    In connection with the sale of each one of the Affected Vehicles, Ford

provides an express limited warranty. In those warranties, Ford promises to repair

any defect or malfunction that arises during a defined period of time. These

warranties are provided by Ford to the Affected Vehicle owners and lessees in

writing and regardless of the state of purchase.

110.    In its New Vehicle Limited Warranty and in advertisements,

brochures, press kits, and other statements in the media, Ford expressly warranted

that it would repair or replace defects in material or workmanship free of charge if

they became apparent during the warranty period. Ford also expressly warranted

that it would remedy any defects in the design and manufacturing processes that

- 68 -

result in vehicle part malfunction or failure during the warranty period. The

Warranty provided with Plaintiff Desotelle's 2013 Ford Fusion states:[21]

> Your NEW VEHICLE LIMITED WARRANTY gives you specific legal rights. You may have other rights that vary from state to state. Under your New Vehicle Limited Warranty if:
>
> - your Ford vehicle is properly operated and maintained, and
>
> - was taken to a Ford dealership for a warranted repair during the warranty period,
>
> then authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship.
>
> This warranty does not mean that each Ford vehicle is defect free. Defects may be unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs. For this reason, Ford provides the New Vehicle Limited Warranty in order to remedy any such defects that result in vehicle part malfunction or failure during the warranty period.

111. Each Plaintiff was provided a warranty and it was the basis of their

purchase of an Affected Vehicle.

---

[21] Exhibit 13, 2013 Model Year Ford Warranty Guide at pp. 8-9, available at http://www.fordservicecontent.com/Ford_Content/catalog/owner_guides/13frdwa3e.pdf (last accessed Aug. 22, 2017).

010700-11 977510 V1

112.   With regard to Affected Vehicles, the duration of the New Vehicle Limited Warranty for bumper-to-bumper protection is three years or 36,000 miles, whichever comes first. The Warranty Start Date is "the day you take delivery of your new vehicle or the day it is first put into service (for example, as a dealer demonstrator), whichever occurs first."[22] These terms are substantially identical for all Affected Vehicles.

113.   All Plaintiffs and members of the Class experienced defects in their lug nuts within the warranty period. The very nature of the defect is that over time, and starting from when the vehicles are first put into service, the lug nuts are exposed to temperature and moisture changes, which ultimately cause the swelling and delamination at issue. The process may not result in complete failure requiring immediate replacement during every owner's and lessee's warranty period, but there can be no reasonable doubt that the degenerative process will have begun, and thus the defect will have manifested, within the warranty period.

114.   However, despite the existence of the express warranties provided to Plaintiffs and Class members, Ford has failed to honor the terms of the warranties by failing to "without charge, repair, replace, or adjust all parts on your vehicle that

---

[22] *Id.* at p. 2.

malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship."[23]

115.   Plaintiffs and at least dozens, if not hundreds or thousands, of owners and lessees of Affected Vehicles have contacted Ford, a Ford-authorized dealership, or a subsidiary providing notice of their concerns and requesting follow-up to resolve the defective two-piece lug nuts. As is evident from the online complaints and NHTSA submissions, Ford has declined to provide replacement lug nuts and continues to this day to use defective two-piece lug nuts on the Affected Vehicles.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule tolling

116.   Class members had no way of knowing about Ford's deception with respect to the defective two-piece lug nuts. To be sure, Ford continues to market the Affected Vehicles as safe and free from defects such as the defective two-piece lug nuts.

117.   Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Ford was concealing the conduct complained

---

[23] *Id.* at p. 9.

of herein and misrepresenting Ford's true position with respect to the defective

two-piece lug nuts.

118.   Plaintiffs and the other Class members did not discover, and did not

know of, facts that would have caused a reasonable person to suspect that the

Affected Vehicles contained defects as alleged herein; nor would a reasonable and

diligent investigation have disclosed that Ford had concealed that the defective

two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be

removed to fix a flat tire, creating a dangerous hazard not only to the drivers but

also to nearby vehicles. Nor in any event would such an investigation on the part of

Plaintiffs and other Class members have disclosed that Ford valued profits over

truthful marketing and ensuring that the Affected Vehicles function safely.

119.   For these reasons, all applicable statutes of limitation have been tolled

by operation of the discovery rule with respect to claims as to the Affected

Vehicles.

## B.     Fraudulent concealment tolling

120.   All applicable statutes of limitation have also been tolled by Ford's

knowing and active fraudulent concealment and denial of the facts alleged herein

throughout the period relevant to this action.

121.   Instead of disclosing that the Affected Vehicles contained defective

two-piece lug nuts and that these defects created a safety hazard, Ford falsely

- 72 -

represented that the Affected Vehicles were safe and free from defects, and that it was a reputable manufacturer whose representations could be trusted.

## C.  Estoppel

122.   Ford was under a continuous duty to disclose to Plaintiffs and the other Class members the truth about the defective two-piece lug nuts.

123.   Ford knowingly, affirmatively, and actively concealed or recklessly disregarded important facts about the defective two-piece lug nuts and that Plaintiffs and the other Class members would be required to purchase replacement lug nuts at regular intervals.

124.   Based on the foregoing, Ford is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CLASS ALLEGATIONS

125.   Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes.[24] For each of the following Classes, "Affected Vehicle" means a Ford Fusion, Escape, Flex, Focus, F-150, or F-350 that was equipped by Ford with two-piece lug nuts. Upon further investigation and discovery in this case, the definition of Affected Vehicle may be

---

[24] Collectively, the "Class," unless otherwise noted.

expanded to include additional Ford models equipped by Ford with two-piece lug nuts.

### Nationwide Class

All persons or entities in the United States who are current or former owners or lessees of an Affected Vehicle (the "Nationwide Class").

### Alabama Class

All persons or entities in the State of Alabama who purchased or leased an Affected Vehicle (the "Alabama Class").

### Alaska Class

All persons or entities in the State of Alaska who purchased or leased an Affected Vehicle (the "Alaska Class").

### Arizona Class

All persons or entities in the State of Arizona who purchased or leased an Affected Vehicle (the "Arizona Class").

### Arkansas Class

All persons or entities in the State of Arkansas who purchased or leased an Affected Vehicle in the (the "Arkansas Class").

### California Class

All persons or entities in the State of California who purchased or leased an Affected Vehicle (the "California Class").

### Colorado Class

All persons or entities in the State of Colorado who purchased or leased an Affected Vehicle (the "Colorado Class").

### Connecticut Class

All persons or entities in the State of Connecticut who purchased or leased an Affected Vehicle (the "Connecticut Class").

- 74 -

**Delaware Class**

All persons or entities in the State of Delaware who purchased or leased an Affected Vehicle (the "Delaware Class").

**Florida Class**

All persons or entities in the State of Florida who purchased or leased an Affected Vehicle (the "Florida Class").

**Georgia Class**

All persons or entities in the State of Georgia who purchased or leased an Affected Vehicle (the "Georgia Class").

**Hawaii Class**

All persons or entities in the State of Hawaii who purchased or leased an Affected Vehicle (the "Hawaii Class").

**Idaho Class**

All persons or entities in the State of Idaho who purchased or leased an Affected Vehicle (the "Idaho Class").

**Illinois Class**

All persons or entities in the State of Illinois who purchased or leased an Affected Vehicle (the "Illinois Class").

**Indiana Class**

All persons or entities in the State of Indiana who purchased or leased an Affected Vehicle (the "Indiana Class").

**Iowa Class**

All persons or entities in the State of Iowa who purchased or leased an Affected Vehicle (the "Iowa Class").

**Kansas Class**

All persons or entities in the State of Kansas who purchased or leased an Affected Vehicle (the "Kansas Class").

010700-11 977510 V1

**Kentucky Class**

All persons or entities in the State of Kentucky who purchased or leased an Affected Vehicle (the "Kentucky Class").

**Louisiana Class**

All persons or entities in the State of Louisiana who purchased or leased an Affected Vehicle (the "Louisiana Class").

**Maine Class**

All persons or entities in the State of Maine who purchased or leased an Affected Vehicle (the "Maine Class").

**Maryland Class**

All persons or entities in the State of Maryland who purchased or leased an Affected Vehicle (the "Maryland Class").

**Massachusetts Class**

All persons or entities in the State of Massachusetts who purchased or leased an Affected Vehicle (the "Massachusetts Class").

**Michigan Class**

All persons or entities in the State of Michigan who purchased or leased an Affected Vehicle (the "Michigan Class").

**Minnesota Class**

All persons or entities in the State of Minnesota who purchased or leased an Affected Vehicle (the "Minnesota Class").

**Mississippi Class**

All persons or entities in the State of Mississippi who purchased or leased an Affected Vehicle (the "Mississippi Class").

**Missouri Class**

All persons or entities in the State of Missouri who purchased or leased an Affected Vehicle (the "Missouri Class").

010700-11 977510 V1

## Montana Class

All persons or entities in the State of Montana who purchased or leased an Affected Vehicle (the "Montana Class").

## Nebraska Class

All persons or entities in the State of Nebraska who purchased or leased an Affected Vehicle (the "Nebraska Class").

## Nevada Class

All persons or entities in the State of Nevada who purchased or leased an Affected Vehicle (the "Nevada Class").

## New Hampshire Class

All persons or entities in the State of New Hampshire who purchased or leased an Affected Vehicle (the "New Hampshire Class").

## New Jersey Class

All persons or entities in the State of New Jersey who purchased or leased an Affected Vehicle (the "New Jersey Class").

## New Mexico Class

All persons or entities in the State of New Mexico who purchased or leased an Affected Vehicle (the "New Mexico Class").

## New York Class

All persons or entities in the State of New York who purchased or leased an Affected Vehicle (the "New York Class").

## North Carolina Class

All persons or entities in the State of North Carolina who purchased or leased an Affected Vehicle (the "North Carolina Class").

## North Dakota Class

All persons or entities in the State of North Dakota who purchased or leased an Affected Vehicle (the "North Dakota Class").

010700-11 977510 V1

## Ohio Class

All persons or entities in the State of Ohio who purchased or leased an Affected Vehicle (the "Ohio Class").

## Oklahoma Class

All persons or entities in the State of Oklahoma who purchased or leased an Affected Vehicle (the "Oklahoma Class").

## Oregon Class

All persons or entities in the State of Oregon who purchased or leased an Affected Vehicle (the "Oregon Class").

## Pennsylvania Class

All persons or entities in the State of Pennsylvania who purchased or leased an Affected Vehicle (the "Pennsylvania Class").

## Rhode Island Class

All persons or entities in the State of Rhode Island who purchased or leased an Affected Vehicle (the "Rhode Island Class").

## South Carolina Class

All persons or entities in the State of South Carolina who purchased or leased an Affected Vehicle (the "South Carolina Class").

## South Dakota Class

All persons or entities in the State of South Dakota who purchased or leased an Affected Vehicle (the "South Dakota Class").

## Tennessee Class

All persons or entities in the State of Tennessee who purchased or leased an Affected Vehicle (the "Tennessee Class").

## Texas Class

All persons or entities in the State of Texas who purchased or leased an Affected Vehicle (the "Texas Class").

010700-11 977510 V1

### Utah Class

All persons or entities in the State of Utah who purchased or leased an Affected Vehicle (the "Utah Class").

### Vermont Class

All persons or entities in the State of Vermont who purchased or leased an Affected Vehicle (the "Vermont Class").

### Virginia Class

All persons or entities in the State of Virginia who purchased or leased an Affected Vehicle (the "Virginia Class").

### Washington Class

All persons or entities in the State of Washington who purchased or leased an Affected Vehicle (the "Washington Class").

### West Virginia Class

All persons or entities in the State of West Virginia who purchased or leased an Affected Vehicle (the "West Virginia Class").

### Wisconsin Class

All persons or entities in the State of Wisconsin who purchased or leased an Affected Vehicle (the "Wisconsin Class").

### Wyoming Class

All persons or entities in the State of Wyoming who purchased or leased an Affected Vehicle (the "Wyoming Class").

126. Excluded from the Class are individuals who have personal injury claims resulting from the failure of the defective two-piece lug nuts on an Affected Vehicle. Also excluded from the Class are Ford and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class;

governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

127.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

128.    This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

129.    <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Ford's own sales reports indicate that from 2012 to 2015, over 1.1 million Fusions, over 3 million F-150s, and over 1.1 million Escapes were sold in the United States. Each such vehicle may be an Affected Vehicle. The precise number of Class members is unknown to Plaintiffs, but may be ascertained from Ford's books and records, which certainly will indicate the precise model years and models that were equipped with the defective two-piece lug nuts at issue in this case. Class members may be notified of the pendency of

this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, Internet postings, and/or published notice.

130.    <u>Commonality and Predominance</u>: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)    Whether Ford engaged in the conduct alleged herein;

b)    Whether Ford designed, advertised, marketed, distributed, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c)    Whether the Affected Vehicles contain defective two-piece lug nuts;

d)    Whether such defective two-piece lug nuts cause the Affected Vehicles to malfunction;

e)    Whether Ford knew about the defective two-piece lug nuts and, if so, how long Ford has known of the defects;

f)    Whether Ford designed, manufactured, marketed, and distributed Affected Vehicles with defective two-piece lug nuts;

g)    Whether Ford's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h)    Whether Ford knew or should have known that the defects existed with regard to the Affected Vehicles;

i)    Whether Ford knew or reasonably should have known of the defective two-piece lug nuts in the Affected Vehicles before it sold them to Class members;

- 81 -

j)      Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles as a result of the defective two-piece lug nuts;

k)      Whether Plaintiffs and the other Class members are entitled to equitable relief; and

l)      Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

131.    <u>Typicality</u>: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Ford's wrongful conduct as described above.

132.    <u>Adequacy</u>: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

133.    <u>Declaratory and Injunctive Relief</u>: Federal Rule of Civil Procedure 23(b)(2): Ford has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

010700-11 977510 V1

134.  <u>Superiority</u>: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford, so it would be impracticable for Class members to individually seek redress for Ford's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.  CLAIMS FOR RELIEF

**A.    Claims brought on behalf of the Nationwide Class**

### COUNT ONE

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301 *ET SEQ.*)

135.  Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

136.   Plaintiffs bring this Count individually and on behalf of the Nationwide Class.

137.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

138.   Ford is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4), (5).

139.   The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

140.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

141.   Ford's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

142.   Ford breached these warranties as described in more detail above. Affected Vehicles are equipped with defective two-piece lug nuts. The Affected Vehicles share a common design defect in that the defective two-piece lug nuts fail to operate safely, contrary to buyer expectations and Ford's representations.

143.   Plaintiffs and the other Nationwide Class members have had sufficient direct dealings with either Ford or its agents to establish privity of contract between Ford on one hand and Plaintiffs and each of the other Class members on

- 84 -

the other hand. Ford-authorized dealerships, divisions, and technical support organizations operating under contract to Ford are agents of Ford. Nonetheless, privity is not required here because Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Ford and its dealers. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

144.   Affording Ford a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Plaintiffs have already done so and Ford has failed to cure the defects within a reasonable amount of time. As explained above, Ford refuses to replace its defective lug nuts and instead requires Plaintiffs and Nationwide Class members to pay for new lug nuts and costs associated with removing and replacing defective lug nuts, which is a violation of Ford's promise to repair and replace without charge. At the time of sale of each Affected Vehicle, Ford knew, should have known, or was reckless in not knowing, of its omissions and/or misrepresentations concerning the defective two-piece lug nuts, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that

Plaintiffs resort to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

145.   Plaintiffs and the other Nationwide Class members would suffer economic hardship if they returned their Affected Vehicles but did not receive the return of all payments made by them. Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Nationwide Class members have not re-accepted their Affected Vehicles by retaining them.

146.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

147.   Plaintiffs, individually and on behalf of the other Nationwide Class members, seek all damages permitted by law, including diminution in value of the Affected Vehicles, loss of the benefit of the bargain, and/or their own out-of-pocket replacement costs for the defective two-piece lug nuts in an amount to be proven at trial.

**B.    State law claims**

## COUNT TWO

## VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
## (ARIZ. REV. STAT. § 44-1521 *ET SEQ.*)

148.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

149.    Plaintiff Josh Wozniak ("Plaintiff" for purposes of all Arizona Class Counts) brings this claim on behalf of the Arizona Class.

150.    The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

151.    Ford, Plaintiff, and Class members are "persons" within the meaning of Ariz. Rev. Stat. § 44-1521(6).

152.    Each Affected Vehicle at issue is "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

153.    Ford's conduct, as set forth above, occurred in the conduct of trade or commerce.

- 87 -

154.    Pursuant to the Arizona CFA, Plaintiff seeks monetary relief against Ford in an amount to be determined at trial. Plaintiff also seeks punitive damages because Ford engaged in aggravated and outrageous conduct with an evil mind.

155.    Plaintiff also seeks an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT THREE

## FRAUD BY CONCEALMENT
## (BASED ON ARIZONA LAW)

156.    Plaintiff hereby incorporates by reference all the allegations contained in the preceding paragraphs of this complaint.

157.    Plaintiff brings this claim on behalf of the Arizona Class.

158.    Ford intentionally concealed that the defective two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be removed to fix a flat tire, creating a dangerous hazard not only to the drivers but also to nearby vehicles. Ford concealed these facts from consumers.

159.    Ford further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each vehicle and on its website, that the Affected Vehicles had no significant defects and were safe.

160.    Ford knew that these representations were false when made.

- 88 -

161.   The Affected Vehicles purchased by Plaintiff and the Arizona Class members contained defective two-piece lug nuts.

162.   Ford had a duty to disclose that the Affected Vehicles contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the Arizona Class members relied on Ford's material representations.

163.   As alleged herein, at all relevant times, Ford has held out the Affected Vehicles to be free from defects such as the defective two-piece lug nuts. Ford touted and continues to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and other Arizona Class members would be required to purchase replacement lug nuts at regular intervals. This made Ford's other disclosures about the Affected Vehicles deceptive.

164.   The truth about the defective two-piece lug nuts was known only to Ford; Plaintiff and the Arizona Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and the Arizona Class members.

165.   Plaintiff and the Arizona Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false, misleading, or incomplete. As consumers, Plaintiff and the Arizona Class members did not, and could not, unravel Ford's deception on their own. Rather,

- 89 -

Ford intended to deceive Plaintiff and the Arizona Class members by concealing the true facts about the defective two-piece lug nuts.

166.   Ford's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Affected Vehicles that played a significant role in the value of the vehicles and forced Plaintiff and the Arizona Class members to purchase replacement lug nuts to ensure proper safety.

167.   Ford had a duty to disclose the defects inherent in the defective two-piece lug nuts with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive and/or superior knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or the other Arizona Class members.

168.   Ford also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Affected Vehicles without telling consumers that the defective two-piece lug nuts would affect the safety, quality, and performance of the vehicle.

169.   Ford's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the Affected Vehicles as set forth herein. These omitted and concealed

- 90 -

facts were material because they directly impact the value of the Affected Vehicles purchased by Plaintiff and the Arizona Class members.

170.    Ford has still not made full and adequate disclosures and continues to defraud Plaintiff and the Arizona Class members by concealing material information regarding the defects in the Affected Vehicles.

171.    Plaintiff and the Arizona Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Arizona Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or other Arizona Class members.

172.    Because of the concealment and/or suppression of facts, Plaintiff and the Arizona Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Ford's concealment of the true quality of the Affected Vehicles. Had Plaintiff and the Arizona Class members been aware of the defects in the Affected Vehicles, and the company's disregard for the truth, Plaintiff and the Arizona Class members would have paid less for their vehicles or would not have purchased them at all.

173.    The value of Plaintiff's and the other Arizona Class members'
vehicles has diminished as a result of Ford's fraudulent concealment of the
defective two-piece lug nuts on the Affected Vehicles, which has made any
reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone
pay what otherwise would have been fair market value for the vehicles.

174.    Accordingly, Ford is liable to Plaintiff and the Arizona Class
members for damages in an amount to be proven at trial.

175.    Ford's acts were done wantonly, maliciously, oppressively,
deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and
other Arizona Class members' rights and the representations that Ford made to
them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive
damages in an amount sufficient to deter such conduct in the future, which amount
is to be determined according to proof.

## COUNT FOUR

### UNJUST ENRICHMENT
### (BASED ON ARIZONA LAW)

176.    Plaintiff incorporates by reference all preceding allegations as though
fully set forth herein.

177.    Plaintiff brings this claim on behalf of the Arizona Class.

178.    Ford has benefitted from and been enriched by the conduct alleged
herein. Ford has generated substantial revenue from the unlawful conduct

- 92 -

described herein. Ford has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Arizona Class members.

179.   Ford has voluntarily accepted and retained this benefit.

180.   The circumstances, as described herein, are such that it would be inequitable for Ford to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Arizona Class members.

181.   Plaintiff and the other Arizona Class members are entitled to the amount of Ford's ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT FIVE

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

182.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

183.   Plaintiff Angel Castaneda ("Plaintiff" for purposes of all California Class Counts) brings this claim on behalf of the California Class.

184.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

- 93 -

185.    Ford's conduct, as described herein, was and is in violation of the

UCL. Ford's conduct violates the UCL in at least the following ways:

      i.     By knowingly and intentionally concealing from Plaintiff and the California Class members that the Affected Vehicles suffer from defects while obtaining money from Plaintiff and California Class members;

      ii.    By marketing Affected Vehicles as being safe and stylish;

      iii.   By failing to disclose that the Affected Vehicles are defective as it is equipped with defective two-piece lug nuts that swell and delaminate to the point that they cannot be removed with the lug wrench supplied with them, thereby creating a safety hazard on public roadways;

      iv.   By refusing or otherwise failing to repair and/or replace defective two-piece lug nuts;

      v.    By violating federal laws, including the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; and

      vi.   By violating other California laws, including Cal. Civ. Code §§ 1709, 1710, and 1750 *et seq.*, and Cal. Com. Code § 2313.

186.    Ford's omissions and/or misrepresentations alleged herein caused

Plaintiff and the California Class members to make their purchases or leases of

their Affected Vehicles. Absent those omissions and/or misrepresentations,

Plaintiff and the California Class members would not have purchased these

Affected Vehicles, or would not have purchased these Affected Vehicles at the

prices they paid.

187.    Accordingly, Plaintiff and the California Class members have suffered injury in fact, including lost money or property, as a result of Ford's misrepresentations and omissions.

188.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Ford under Cal. Bus. & Prof. Code § 17200.

189.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Ford from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the California Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## COUNT SIX

### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)

190.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

191.    Plaintiff brings this claim on behalf of the California Class.

192.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, proscribes "unfair methods of competition and unfair or

deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

193.   The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

194.   Plaintiff and the California Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other California Class members, and Ford are "persons" as defined in Cal. Civ. Code § 1761(c).

195.   In purchasing or leasing the Affected Vehicles, Plaintiff and the California Class members were deceived by Ford's failure to disclose that the defective two-piece lug nuts are defective as they swell and delaminate such that they cannot be removed with the supplied lug wrench, thereby creating a safety hazard on public roadways.

196.   Ford's conduct, as described hereinabove, was and is in violation of the CLRA. Ford's conduct violates at least Cal. Civ. Code § 1770(a)(16) (representing that goods have been supplied in accordance with a previous representation when they have not).

197.   Plaintiff and the California Class members have suffered injury in fact and actual damages resulting from Ford's material omissions and/or misrepresentations because they paid an inflated purchase or lease price for the Affected Vehicles.

- 96 -

198.   Ford knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the Affected Vehicles and that the Affected Vehicles were not suitable for their intended use.

199.   The facts concealed and omitted by Ford to Plaintiff and the California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price. Had Plaintiff and the California Class members known about the defective nature of the Affected Vehicles, they would not have purchased the Affected Vehicles or would not have paid the prices they did.

200.   While Plaintiffs do not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiffs will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

## COUNT SEVEN

## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
## (CAL. BUS. & PROF. CODE § 17500 ET SEQ.)

201.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

202.   Plaintiff brings this claim on behalf of the California Class.

- 97 -

203.   Cal. Bus. & Prof. Code § 17500 states: "It is unlawful for any …
corporation … with intent directly or indirectly to dispose of real or personal
property … to induce the public to enter into any obligation relating thereto, to
make or disseminate or cause to be made or disseminated … from this state before
the public in any state, in any newspaper or other publication, or any advertising
device, … or in any other manner or means whatever, including over the Internet,
any statement … which is untrue or misleading, and which is known, or which by
the exercise of reasonable care should be known, to be untrue or misleading."

204.   Ford has violated Cal. Bus. & Prof. Code § 17500 because the
omissions and/or misrepresentations regarding the safety, reliability, and
functionality of its Affected Vehicles as set forth in this complaint were material
and likely to deceive a reasonable consumer.

205.   Plaintiff and the California Class members have suffered an injury in
fact, including the loss of money or property, as a result of Ford's unfair, unlawful,
and/or deceptive practices. In purchasing or leasing their Affected Vehicles,
Plaintiff and the California Class members relied on the omissions and/or
misrepresentations of Ford with respect to the safety and reliability of the Affected
Vehicles. Ford's representations turned out not to be true because the Affected
Vehicles are defective as they are equipped with defective two-piece lug nuts that
swell and delaminate and cannot be removed with the supplied lug wrench thereby

creating a safety hazard on public roadways. Had Plaintiff and the California Class

members known this, they would not have purchased their Affected Vehicles

and/or paid as much for them. Accordingly, Plaintiff and the California Class

members overpaid for their Affected Vehicles and did not receive the benefit of

their bargain.

206.   All of the wrongful conduct alleged herein occurred, and continues to

occur, in the conduct of Ford's business. Ford's wrongful conduct is part of a

pattern or generalized course of conduct that is still perpetuated and repeated, both

in the State of California and nationwide.

207.   Plaintiff, individually and on behalf of the other California Class

members, requests that this Court enter such orders or judgments as may be

necessary to enjoin Ford from continuing its unfair, unlawful, and/or deceptive

practices and to restore to Plaintiff and the California Class members any money

Ford acquired by unfair competition, including restitution and/or restitutionary

disgorgement, and for such other relief set forth below.

**COUNT EIGHT**

**FRAUD BY CONCEALMENT**
**(BASED ON CALIFORNIA LAW)**

208.   Plaintiff incorporates by reference all preceding allegations as though

fully set forth herein.

209.   Plaintiff brings this Count on behalf of the California Class.

- 99 -

210.   Ford intentionally concealed that the defective two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be removed to fix a flat tire, creating a dangerous hazard not only to the drivers but also to nearby vehicles. Ford concealed these facts from consumers.

211.   Ford further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each vehicle and on its website, that the Affected Vehicles had no significant defects and were safe.

212.   Ford knew that these representations were false when made.

213.   The Affected Vehicles purchased by Plaintiff and the California Class members contained defective two-piece lug nuts.

214.   Ford had a duty to disclose that the Affected Vehicles contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the California Class members relied on Ford's material representations.

215.   As alleged herein, at all relevant times, Ford has held out the Affected Vehicles to be free from defects such as the defective two-piece lug nuts. Ford touted and continues to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and other California Class members would be required to purchase

- 100 -

replacement lug nuts at regular intervals. This made Ford's other disclosures about the Affected Vehicles deceptive.

216.   The truth about the defective two-piece lug nuts was known only to Ford; Plaintiff and the California Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and the California Class members.

217.   Plaintiff and the California Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false, misleading, or incomplete. As consumers, Plaintiff and the California Class members did not, and could not, unravel Ford's deception on their own. Rather, Ford intended to deceive Plaintiff and the California Class members by concealing the true facts about the defective two-piece lug nuts.

218.   Ford's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Affected Vehicles that played a significant role in the value of the vehicles and forced Plaintiff and the California Class members to purchase replacement lug nuts to ensure proper safety.

219.   Ford had a duty to disclose the defects inherent in the defective two-piece lug nuts with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive

and/or superior knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or the other California Class members.

220.    Ford also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Affected Vehicles, without telling consumers that the defective two-piece lug nuts would affect the safety, quality, and performance of the vehicle.

221.    Ford's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the Affected Vehicles as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased by Plaintiff and the California Class members.

222.    Ford has still not made full and adequate disclosures and continues to defraud Plaintiff and the California Class members by concealing material information regarding the defects in the Affected Vehicles.

223.    Plaintiff and the California Class members were unaware of the omitted material facts referenced herein and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's

and the other California Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or other California Class members.

224. Because of the concealment and/or suppression of facts, Plaintiff and the California Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Ford's concealment of the true quality of the Affected Vehicles. Had Plaintiff and the California Class members been aware of the defects in the Affected Vehicles, and the company's disregard for the truth, Plaintiff and the California Class members would have paid less for their vehicles or would not have purchased them at all.

225. The value of Plaintiff's and the other California Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the defective two-piece lug nuts on the Affected Vehicles, which has made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

226. Accordingly, Ford is liable to Plaintiffs and the California Class members for damages in an amount to be proven at trial.

227. Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other California Class members' rights and the representations that Ford made to

- 103 -

them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive

damages in an amount sufficient to deter such conduct in the future, which amount

is to be determined according to proof.

## COUNT NINE

## UNJUST ENRICHMENT
## (BASED ON CALIFORNIA LAW)

228.  Plaintiff incorporates by reference all preceding allegations as though

fully set forth herein.

229.  Plaintiff brings this Count on behalf of the California Class.

230.  Ford has benefitted from and been enriched by the conduct alleged

herein. Ford has generated substantial revenue from the unlawful conduct

described herein. Ford has knowledge and appreciation of this benefit, which was

conferred upon it by and at the expense of Plaintiff and the California Class

members.

231.  Ford has voluntarily accepted and retained this benefit.

232.  The circumstances, as described herein, are such that it would be

inequitable for Ford to retain the ill-gotten benefit without paying the value thereof

to Plaintiff and the California Class members.

233.  Plaintiff and the California Class members are entitled to the amount

of Ford's ill-gotten gains, including interest, resulting from its unlawful, unjust,

unfair, and inequitable conduct as alleged herein.

010700-11 977510 V1

## COUNT TEN

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *ET SEQ.* AND 720 ILCS 295/1A)

234.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

235.    Plaintiff Raj Chauhan ("Plaintiff" for purposes of all Illinois Class Counts) brings this claim on behalf of the Illinois Class.

236.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

237.    Ford is a "person" as that term is defined in 815 ILCS 505/1(c).

238.    Plaintiff and Illinois Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

010700-11 977510 V1

239.    Pursuant to 815 ILCS 505/10a(a), Plaintiff seeks monetary relief against Ford in the amount of actual damages as well as punitive damages because Ford acted with fraud and/or malice and/or was grossly negligent.

240.    Plaintiff also seeks an order enjoining Ford's unfair and/or deceptive acts or practices, attorneys' fees, and any other just and proper relief available under 815 ILCS 505/1 *et seq.*

## COUNT ELEVEN

### FRAUD BY CONCEALMENT
### (BASED ON ILLINOIS LAW)

241.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

242.    Plaintiff brings this claim on behalf of the Illinois Class.

243.    Ford intentionally concealed that the defective two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be removed to fix a flat tire, creating a dangerous hazard not only to the drivers but also to nearby vehicles. Ford concealed these facts from consumers.

244.    Ford further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each vehicle and on its website, that the Affected Vehicles had no significant defects and were safe.

245.    Ford knew that these representations were false when made.

246.   The Affected Vehicles purchased by Plaintiff and the Illinois Class members contained defective two-piece lug nuts.

247.   Ford had a duty to disclose that the Affected Vehicles contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the Illinois Class members relied on Ford's material representations.

248.   As alleged herein, at all relevant times, Ford has held out the Affected Vehicles to be free from defects such as the defective two-piece lug nuts. Ford touted and continues to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and other Illinois Class members would be required to purchase replacement lug nuts at regular intervals. This made Ford's other disclosures about the Affected Vehicles deceptive.

249.   The truth about the defective two-piece lug nuts was known only to Ford; Plaintiff and the Illinois Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and the Illinois Class members.

250.   Plaintiff and the Illinois Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false, misleading, or incomplete. As consumers, Plaintiff and the Illinois Class members did not, and could not, unravel Ford's deception on their own. Rather, Ford

intended to deceive Plaintiff and the Illinois Class members by concealing the true facts about the defective two-piece lug nuts.

251.    Ford's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Affected Vehicles that played a significant role in the value of the vehicles and forced Plaintiff and the Illinois Class members to purchase replacement lug nuts to ensure proper safety.

252.    Ford had a duty to disclose the defects inherent in the defective two-piece lug nuts with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive and/or superior knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or the other Illinois Class members.

253.    Ford also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Affected Vehicles, without telling consumers that the defective two-piece lug nuts would affect the safety, quality, and performance of the vehicle.

254.    Ford's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the Affected Vehicles as set forth herein. These omitted and concealed

facts were material because they directly impact the value of the Affected Vehicles purchased by Plaintiff and the Illinois Class members.

255.   Ford has still not made full and adequate disclosures and continues to defraud Plaintiff and the Illinois Class members by concealing material information regarding the defects in the Affected Vehicles.

256.   Plaintiff and the Illinois Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Illinois Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or other Illinois Class members.

257.   Because of the concealment and/or suppression of facts, Plaintiff and the Illinois Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Ford's concealment of the true quality of the Affected Vehicles. Had Plaintiff and the Illinois Class members been aware of the defects in the Affected Vehicles, and the company's disregard for the truth, Plaintiff and the Illinois Class members would have paid less for their vehicles or would not have purchased them at all.

258.    The value of Plaintiff's and the other Illinois Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the defective two-piece lug nuts on the Affected Vehicles, which has made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

259.    Accordingly, Ford is liable to Plaintiff and the Illinois Class members for damages in an amount to be proven at trial.

260.    Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Illinois Class members' rights and the representations that Ford made to them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT TWELVE

### BREACH OF EXPRESS WARRANTY
### (810 ILCS 5/2-313)

261.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

262.    Plaintiff brings this claim on behalf of the Illinois Class.

263.    Plaintiff was at all relevant times a "buyer" as defined by 810 ILCS 5/1-201(9).

264.    Ford was at all relevant times a "merchant" as defined by 810 ILCS 5/2-104.

265.    The Affected Vehicles are and were at all relevant times "goods" as defined by 810 ILCS 5/2-105.

266.    As a merchant, Ford had certain obligations under 810 ILCS 5/2-313 to conform the Affected Vehicles to the express warranties.

267.    When Plaintiff and the Illinois Class members purchased their Affected Vehicles, Ford expressly warranted in writing that the Affected Vehicles were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain. As set forth herein, Ford expressly warranted that it would (1) repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period, and (2) remedy any defects in the design and manufacturing processes that result in vehicle part malfunction or failure during the warranty period. Also, as set forth herein, Ford breached its warranty obligations by selling inherently defective Affected Vehicles and refusing to repair the defects or replace the defective parts.

268.    The defects at issue in this litigation were present at the time of sale to Plaintiff and members of the Illinois Class.

269.    Ford breached the Limited Warranty to repair and adjust defects in materials and workmanship of any part supplied by Ford as Ford has refused to replace the defective two-piece lug nuts.

270.    Furthermore, the Limited Warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the Illinois Class members whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

271.    Pursuant to the express warranties, Ford was obligated to pay for or reimburse Plaintiff and the Illinois Class members for costs incurred in purchasing replacement lug nuts and other costs associated with bringing their Affected Vehicles to the dealership for repair efforts. Ford was also obligated to repair the defects.

272.    Accordingly, recovery by the Plaintiff and the Illinois Class members is not limited to the Limited Warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Illinois Class members seek all remedies as allowed by law.

273.    Also, as alleged in more detail herein, at the time that Ford warranted and sold the Affected Vehicles, and while knowing that the Affected Vehicles did not conform to Ford's Limited Warranty and were inherently defective, Ford

wrongfully and fraudulently concealed material facts regarding the Affected Vehicles. Plaintiff and the Illinois Class members were therefore induced to purchase the Affected Vehicles under false and/or fraudulent pretenses.

274.   Ford and its agent dealers have failed and refused to conform the Affected Vehicles to the express warranties, and Ford's conduct has voided any attempt on its part to disclaim liability for its actions.

275.   Moreover, many of the damages flowing from the Affected Vehicles cannot be resolved through the limited remedy of "replacement or adjustments" as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Illinois Class members' remedies would be insufficient to make Plaintiff and the Illinois Class members whole.

276.   Ford received timely notice regarding the problems at issue in this litigation (indeed Ford knew of the defects prior to offering the Affected Vehicles for sale or lease). Ford was also provided notice of these issues through the receipt of numerous complaints regarding the defective two-piece lug nuts. Ford has received, on information and belief, many complaints from Illinois Class members advising Ford of the defects at issue in this litigation.

010700-11 977510 V1

277.   Plaintiff has performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Ford or by operation of law in light of Ford's unconscionable conduct.

278.   Plaintiff has had sufficient dealings with either Ford or its agents (dealerships and/or Ford Performance) to establish privity of contract. Privity is not required in this case because Plaintiff and the Illinois Class members are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's express warranties and these warranties were advertised to Plaintiff and the Illinois Class members as the ultimate consumers. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

279.   As a direct and proximate result of Ford's breach of express warranty, Plaintiff and the Illinois Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value and benefit of the bargain damages.

## COUNT THIRTEEN

## UNJUST ENRICHMENT
## (BASED ON ILLINOIS LAW)

280.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

281.    Plaintiff brings this claim on behalf of the Illinois Class.

282.    Ford has benefitted from and been enriched by the conduct alleged herein. Ford has generated substantial revenue from the unlawful conduct described herein. Ford has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Illinois Class members.

283.    Ford has voluntarily accepted and retained this benefit.

284.    The circumstances, as described herein, are such that it would be inequitable for Ford to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Illinois Class members.

285.    Plaintiff and the Illinois Class members are entitled to the amount of Ford's ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair, and inequitable conduct as alleged herein.

010700-11 977510 V1

## COUNT FOURTEEN

### VIOLATION OF THE NORTH CAROLINA
### UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT
### (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)

286.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

287.    Plaintiff Robert Desotelle ("Plaintiff" for purposes of all North Carolina Class Counts) brings this claim on behalf of the North Carolina Class.

288.    North Carolina's Unfair and Deceptive Acts and Practices Act (the "North Carolina Act") broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). The North Carolina Act provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the North Carolina Act. N.C. Gen. Stat. § 75-16.

289.    Ford engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

290.    Ford's conduct proximately caused injuries to Plaintiff and the other North Carolina Class members.

291.    Plaintiff and the other North Carolina Class members were injured as a result of Ford's conduct in that Plaintiff and the other North Carolina Class members overpaid for their Affected Vehicles and did not receive the benefit of

their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Ford's misrepresentations and omissions.

292.   Plaintiff and the other North Carolina Class members seek an order for treble their actual damages, an order enjoining Ford's unlawful acts, costs of court, attorney's fees, and any other just and proper relief available under the North Carolina Act. N.C. Gen. Stat. § 75-16.

**COUNT FIFTEEN**

**FRAUD BY CONCEALMENT**
**(BASED ON NORTH CAROLINA LAW)**

293.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

294.   Plaintiff brings this claim on behalf of the North Carolina Class.

295.   Ford intentionally concealed that the defective two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be removed to fix a flat tire, creating a dangerous hazard not only to the drivers but also to nearby vehicles. Ford concealed these facts from consumers.

296.   Ford further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each vehicle and on its website, that the Affected Vehicles had no significant defects and were safe.

- 117 -

297.   Ford knew that these representations were false when made.

298.   The Affected Vehicles purchased by Plaintiff and the North Carolina Class members contained defective two-piece lug nuts.

299.   Ford had a duty to disclose that the Affected Vehicles contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the North Carolina Class members relied on Ford's material representations.

300.   As alleged herein, at all relevant times, Ford has held out the Affected Vehicles to be free from defects such as the defective two-piece lug nuts. Ford touted and continues to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and other North Carolina Class members would be required to purchase replacement lug nuts at regular intervals. This made Ford's other disclosures about the Affected Vehicles deceptive.

301.   The truth about the defective two-piece lug nuts was known only to Ford; Plaintiff and the North Carolina Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and the North Carolina Class members.

302.   Plaintiff and the North Carolina Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false, misleading, or incomplete. As consumers, Plaintiff and the North

Carolina Class members did not, and could not, unravel Ford's deception on their own. Rather, Ford intended to deceive Plaintiff and the North Carolina Class members by concealing the true facts about the defective two-piece lug nuts.

303.   Ford's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Affected Vehicles that played a significant role in the value of the vehicles and forced Plaintiff and the North Carolina Class members to purchase replacement lug nuts to ensure proper safety.

304.   Ford had a duty to disclose the defects inherent in the defective two-piece lug nuts with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive and/or superior knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or the other North Carolina Class members.

305.   Ford also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Affected Vehicles, without telling consumers that the defective two-piece lug nuts would affect the safety, quality, and performance of the vehicle.

306.   Ford's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the

defects in the Affected Vehicles as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased by Plaintiff and the North Carolina Class members.

307.    Ford has still not made full and adequate disclosures and continues to defraud Plaintiff and the North Carolina Class members by concealing material information regarding the defects in the Affected Vehicles.

308.    Plaintiff and the North Carolina Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other North Carolina Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or other North Carolina Class members.

309.    Because of the concealment and/or suppression of facts, Plaintiff and the North Carolina Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Ford's concealment of the true quality of the Affected Vehicles. Had Plaintiff and the North Carolina Class members been aware of the defects in the Affected Vehicles, and the company's

disregard for the truth, Plaintiff and the North Carolina Class members would have paid less for their vehicles or would not have purchased them at all.

310.    The value of Plaintiff's and the other North Carolina Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the defective two-piece lug nuts on the Affected Vehicles, which has made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

311.    Accordingly, Ford is liable to Plaintiff and the North Carolina Class members for damages in an amount to be proven at trial.

312.    Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other North Carolina Class members' rights and the representations that Ford made to them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT SIXTEEN

### UNJUST ENRICHMENT
### (BASED ON NORTH CAROLINA LAW)

313.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

314.    Plaintiff brings this claim on behalf of the North Carolina Class.

315.    Ford has benefitted from and been enriched by the conduct alleged herein. Ford has generated substantial revenue from the unlawful conduct described herein. Ford has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Class members.

316.    Ford has voluntarily accepted and retained this benefit.

317.    The circumstances, as described herein, are such that it would be inequitable for Ford to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Class members.

318.    Plaintiff and the other Class members are entitled to the amount of Ford's ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT SEVENTEEN

## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT (OHIO REV. CODE ANN. § 1345.01 *ET SEQ.*)

319.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

320.    Plaintiff Samantha Ellis ("Plaintiff" for purposes of all Ohio Class Counts) brings this Count on behalf of the Ohio Class.

321.    The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02 ("OCSPA"), broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the

broad prohibition, the Act prohibits suppliers from representing that "a specific price advantage exists, if it does not." Ohio Rev. Code Ann. § 1345.02.

322.   The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Ford in this Complaint, including but not limited to the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the OCSPA. These cases include, but are not limited to, the following:

  a. *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

  b. *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

  c. *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

  d. *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

  e. *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

  f. *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF #10002347);

  g. *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586);

  h. *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

      i.     *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

      j.     *Khouri v. Don Lewis* (OPIF #100001995);

      k.     *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

      l.     *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

      m.     *Brown v. Spears* (OPIF #10000403).

323.  Ford is a "supplier" as that term is defined in Ohio Rev. Code Ann. § 1345.01(C).

324.  Plaintiff and the Ohio Class members are "consumers" as that term is defined in Ohio Rev. Code Ann. § 1345.01(D), and their purchase of an Affected Vehicle is a "consumer transaction" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

325.  As a result of the foregoing wrongful conduct, Plaintiff and the Ohio Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Ford's deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees, pursuant to Ohio Rev. Code Ann. § 1345.09 *et seq.*

010700-11 977510 V1

## COUNT EIGHTEEN

## FRAUD BY CONCEALMENT
## (BASED ON OHIO LAW)

326.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

327.   Plaintiff brings this claim on behalf of the Ohio Class.

328.   Ford intentionally concealed that the defective two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be removed to fix a flat tire, creating a dangerous hazard not only to the drivers but also to nearby vehicles. Ford concealed these facts from consumers.

329.   Ford further affirmatively misrepresented to Plaintiff and the Ohio Class members in advertising and other forms of communication, including standard and uniform material provided with each vehicle and on its website, that the Affected Vehicles had no significant defects and were safe.

330.   Ford knew that these representations were false when made.

331.   The Affected Vehicles purchased by Plaintiff and the Ohio Class members contained a defective two-piece lug nuts.

332.   Ford had a duty to disclose that the Affected Vehicles contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the Ohio Class members relied on Ford's material representations.

333.   As alleged herein, at all relevant times, Ford has held out the Affected Vehicles to be free from defects such as the defective two-piece lug nuts. Ford touted and continues to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and Ohio Class members would be required to purchase replacement lug nuts at regular intervals. This made Ford's other disclosures about the Affected Vehicles deceptive.

334.   The truth about the defective two-piece lug nuts was known only to Ford; Plaintiff and the Ohio Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and the Ohio Class members.

335.   Plaintiff and the Ohio Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false, misleading, or incomplete. As consumers, Plaintiff and the Ohio Class members did not, and could not, unravel Ford's deception on their own. Rather, Ford intended to deceive Plaintiff and the Ohio Class members by concealing the true facts about the defective two-piece lug nuts.

336.   Ford's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Affected Vehicles that played a significant role in the value of the vehicles and forced

Plaintiff and the Ohio Class members to purchase replacement lug nuts to ensure proper safety.

337.   Ford had a duty to disclose the defects inherent in the defective two-piece lug nuts with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive and/or superior knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or the Ohio Class members.

338.   Ford also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Affected Vehicles, without telling consumers that the defective two-piece lug nuts would affect the safety, quality, and performance of the vehicle.

339.   Ford's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the Affected Vehicles as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased by Plaintiff and the Ohio Class members.

340.   Ford has still not made full and adequate disclosures and continues to defraud Plaintiff and the Ohio Class members by concealing material information regarding the defects in the Affected Vehicles.

- 127 -

341.   Plaintiff and the Ohio Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the Ohio Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or Ohio Class members.

342.   Because of the concealment and/or suppression of facts, Plaintiff and the Ohio Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Ford's concealment of the true quality of the Affected Vehicles. Had Plaintiff and the Ohio Class members been aware of the defects in the Affected Vehicles, and the company's disregard for the truth, Plaintiff and the Ohio Class members would have paid less for their vehicles or would not have purchased them at all.

343.   The value of Plaintiff's and the Ohio Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the defective two-piece lug nuts on the Affected Vehicles, which has made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

344.    Accordingly, Ford is liable to Plaintiff and the Ohio Class members for damages in an amount to be proven at trial.

345.    Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Ohio Class members' rights and the representations that Ford made to them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT NINETEEN

## UNJUST ENRICHMENT
## (BASED ON OHIO LAW)

346.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

347.    Plaintiff brings this Count on behalf of the Ohio Class.

348.    Ford has benefitted from and been enriched by the conduct alleged herein. Ford has generated substantial revenue from the unlawful conduct described herein. Ford has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Ohio Class members.

349.    Ford has voluntarily accepted and retained this benefit.

350.   The circumstances, as described herein, are such that it would be inequitable for Ford to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Class members.

351.   Plaintiff and the other Ohio Class members are entitled to the amount of Ford's ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## COUNT TWENTY

## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET SEQ.*)

352.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

353.   Plaintiff Donald Lycan ("Plaintiff" for purposes of all Tennessee Class Counts) brings this Count on behalf of the Tennessee Class.

354.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade… if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." Tenn. Code Ann. § 47-18-104.

355.    Plaintiff and Tennessee Class members are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

356.    Ford is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

357.    Ford's conduct complained of herein affected "trade," "commerce," or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

358.    Plaintiff and the Tennessee Class suffered ascertainable loss caused by Ford's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and Tennessee Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

359.    As a direct and proximate result of Ford's violations of the Tennessee CPA, Plaintiff and the Tennessee Class have suffered injury-in-fact and/or actual damage.

360.    Pursuant to Tenn. Code Ann. § 47-18-109(a), Plaintiff seeks monetary relief against Ford measured as actual damages in an amount to be determined at trial, treble damages as a result of Ford's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

## COUNT TWENTY-ONE

### FRAUD BY CONCEALMENT
### (BASED ON TENNESSEE LAW)

361.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

362.   Plaintiff brings this claim on behalf of the Tennessee Class.

363.   Ford intentionally concealed that the defective two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be removed to fix a flat tire, creating a dangerous hazard not only to the drivers but also to nearby vehicles. Ford concealed these facts from consumers.

364.   Ford further affirmatively misrepresented to Plaintiff and the Tennessee Class members in advertising and other forms of communication, including standard and uniform material provided with each vehicle and on its website, that the Affected Vehicles had no significant defects and were safe.

365.   Ford knew that these representations were false when made.

366.   The Affected Vehicles purchased by Plaintiff and the Tennessee Class members contained defective two-piece lug nuts.

367.   Ford had a duty to disclose that the Affected Vehicles contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the Tennessee Class members relied on Ford's material representations.

010700-11 977510 V1

368.    As alleged herein, at all relevant times, Ford has held out the Affected Vehicles to be free from defects such as the defective two-piece lug nuts. Ford touted and continues to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect and that Plaintiff and Tennessee Class members would be required to buy replacement lug nuts at regular intervals. This made Ford's other disclosures about the Affected Vehicles deceptive.

369.    The truth about the defective two-piece lug nuts was known only to Ford; Plaintiff and the Tennessee Class members did not know of these facts and Ford actively concealed these facts from Plaintiff and the Tennessee Class members.

370.    Plaintiff and the Tennessee Class members reasonably relied upon Ford's deception. They had no way of knowing that Ford's representations were false, misleading, or incomplete. As consumers, Plaintiff and the Tennessee Class members did not, and could not, unravel Ford's deception on their own. Rather, Ford intended to deceive Plaintiff and the Tennessee Class members by concealing the true facts about the defective two-piece lug nuts.

371.    Ford's false representations and omissions and/or misrepresentations were material to consumers because they concerned qualities of the Affected Vehicles that played a significant role in the value of the vehicles and forced

- 133 -

Plaintiff and the Tennessee Class members to purchase replacement lug nuts to ensure proper safety.

372.    Ford had a duty to disclose the defects inherent in the defective two-piece lug nuts with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive and/or superior knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or the Tennessee Class members.

373.    Ford also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Affected Vehicles, without telling consumers that the defective two-piece lug nuts would affect the safety, quality, and performance of the vehicle.

374.    Ford's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the Affected Vehicles as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased by Plaintiff and the Tennessee Class members.

375.    Ford has still not made full and adequate disclosures and continues to defraud Plaintiff and the Tennessee Class members by concealing material information regarding the defects in the Affected Vehicles.

010700-11 977510 V1

376.   Plaintiff and the Tennessee Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the Tennessee Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or Tennessee Class members.

377.   Because of the concealment and/or suppression of facts, Plaintiff and the Tennessee Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Ford's concealment of the true quality of the Affected Vehicles. Had Plaintiff and the Tennessee Class members been aware of the defects in the Affected Vehicles, and the company's disregard for the truth, Plaintiff and the Tennessee Class members who purchased an Affected Vehicle would have paid less for their vehicles or would not have purchased them at all.

378.   The value of Plaintiff's and the Tennessee Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the defective two-piece lug nuts, which has made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

- 135 -

379.   Accordingly, Ford is liable to Plaintiff and the Tennessee Class members for damages in an amount to be proven at trial.

380.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Tennessee Class members' rights and the representations that Ford made to them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT TWENTY-TWO

## BREACH OF EXPRESS WARRANTY
## (TENN. CODE ANN. § 47-2-313)

381.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

382.   Plaintiff brings this claim on behalf of the Tennessee Class.

383.   Plaintiff and Tennessee Class members were at all relevant times "buyers" as defined by Tenn. Code Ann. § 47-1-201(9).

384.   Ford was at all relevant times a "merchant" as defined by Tenn. Code Ann. § 47-2-104.

385.   The Affected Vehicles are and were at all relevant times "goods" as defined by Tenn. Code Ann. § 47-2-105.

386.    As an express warrantor and manufacturer and merchant, Ford had certain obligations under Tenn. Code Ann. § 47-2-313 to conform the Affected Vehicles to the express warranties.

387.    When Plaintiff and the Tennessee Class members purchased their Affected Vehicles, Ford expressly warranted in writing that the Affected Vehicles were covered by a Limited Warranty and that the Limited Warranty formed the basis of the bargain. As set forth herein, Ford expressly warranted that it would (1) repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period, and (2) remedy any defects in the design and manufacturing processes that result in vehicle part malfunction or failure during the warranty period. Also, as set forth herein, Ford breached its warranty obligations by selling inherently defective Affected Vehicles and refusing to repair the defects or replace the defective parts.

388.    The defects at issue in this litigation were present at the time of sale to Plaintiff and members of the Tennessee Class.

389.    Ford breached the Limited Warranty to repair and adjust defects in materials and workmanship of any part supplied by Ford, as Ford has refused to replace the defective two-piece lug nuts.

390.    Furthermore, the Limited Warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is

insufficient to make the Plaintiff and the Tennessee Class members whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time.

391.   Pursuant to the express warranties, Ford was obligated to pay for or reimburse Plaintiff and the Tennessee Class members for costs incurred in purchasing replacement lug nuts and other costs associated with bringing their Affected Vehicles to the dealership for repair efforts. Ford was also obligated to repair the defects.

392.   Accordingly, recovery by Plaintiff and the Tennessee Class members is not limited to the Limited Warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff and the Tennessee Class members seek all remedies as allowed by law.

393.   Also, as alleged in more detail herein, at the time that Ford warranted and sold the Affected Vehicles, and while knowing that the Affected Vehicles did not conform to Ford's Limited Warranty and were inherently defective, Ford wrongfully and fraudulently concealed material facts regarding the Affected Vehicles. Plaintiff and the Tennessee Class members were therefore induced to purchase the Affected Vehicles under false and/or fraudulent pretenses.

394.   Ford and its agent dealers have failed and refused to conform the Affected Vehicles to the express warranties, and Ford's conduct has voided any attempt on its part to disclaim liability for its actions.

395.   Moreover, many of the damages flowing from the Affected Vehicles cannot be resolved through the limited remedy of "replacement or adjustments" as those incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the Tennessee Class members' remedies would be insufficient to make Plaintiff and the Tennessee Class members whole.

396.   Ford received timely notice regarding the problems at issue in this litigation (indeed Ford knew of the defects prior to offering the Affected Vehicles for sale or lease). Ford was also provided notice of these issues through the receipt of numerous complaints regarding the defective two-piece lug nuts. Ford has received, on information and belief, many complaints from Tennessee Class members advising them of the defects at issue in this litigation.

397.   Plaintiff and the Tennessee Class members have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Ford or by operation of law in light of Ford's unconscionable conduct.

398.   Plaintiff and Tennessee Class members have had sufficient dealings with either Ford or its agents (dealerships and/or Ford Performance) to establish privity of contract. Privity is not required in this case because Plaintiff and the Tennessee Class members are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's express warranties and these warranties were advertised to Plaintiff and the Tennessee Class members as the ultimate consumers. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

399.   As a direct and proximate result of Ford's breach of express warranty, Plaintiff and the Tennessee Class members have been damaged in an amount to be determined at trial, including but not limited to diminution of value and benefit of the bargain damages.

## COUNT TWENTY-THREE

### UNJUST ENRICHMENT
### (BASED ON TENNESSEE LAW)

400.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

401.   Plaintiff brings this claim on behalf of the Tennessee Class.

402.    Ford has benefitted from and been enriched by the conduct alleged

herein. Ford has generated substantial revenue from the unlawful conduct

described herein. Ford has knowledge and appreciation of this benefit, which was

conferred upon it by and at the expense of Plaintiff and the Tennessee Class

members.

403.    Ford has voluntarily accepted and retained this benefit.

404.    The circumstances, as described herein, are such that it would be

inequitable for Ford to retain the ill-gotten benefit without paying the value thereof

to Plaintiff and the Tennessee Class members.

405.    Plaintiff and the Tennessee Class members are entitled to the amount

of Ford's ill-gotten gains, including interest, resulting from its unlawful, unjust,

unfair, and inequitable conduct as alleged herein.

## COUNT TWENTY-FOUR

## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. §§ 59.1-196 *ET SEQ.*)

406.    Plaintiffs hereby incorporate by reference the allegations contained in

the preceding paragraphs of this complaint.

407.    Plaintiff David Mathias ("Plaintiff" for purposes of all Virginia Class

Counts) brings this claim on behalf of the Virginia Class.

408.    The Virginia Consumer Protection Act lists prohibited "practices"

which include: "[m]aking false or misleading statements of fact concerning the

- 141 -

reasons for, existence of, or amounts of price reductions"; and "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200.

409.    Ford is a "supplier" under Va. Code Ann. § 59.1-198.

410.    Ford's advertisements of the Affected Vehicles were "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

411.    Pursuant to Va. Code Ann. § 59.1-204, Plaintiff and the Viriginia Class members seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each plaintiff. Because Ford's conduct was committed willfully and knowingly, Plaintiff and Virginia Class members are entitled to recover, for each plaintiff, the greater of (a) three times actual damages or (b) $1,000.

412.    Plaintiff and Virginia Class members also seek an order enjoining Ford's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under Va. Code Ann. § 59.1-204 *et seq.*

## COUNT TWENTY-FIVE

## FRAUD BY CONCEALMENT
## (BASED ON VIRGINIA LAW)

413.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

414.   Plaintiff brings this claim on behalf of the Virginia Class.

415.   Ford intentionally concealed that the defective two-piece lug nuts render Affected Vehicles unsafe because the wheels cannot be removed to fix a flat tire, creating a dangerous hazard not only to the drivers but also to nearby vehicles. Ford concealed these facts from consumers.

416.   Ford further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each vehicle and on its website, that the Affected Vehicles had no significant defects and were safe.

417.   Ford knew that these representations were false when made.

418.   The Affected Vehicles purchased by Plaintiff and the Virginia Class members contained defective two-piece lug nuts.

419.   Ford had a duty to disclose that the Affected Vehicles contained defects as alleged herein and that these defects created a safety hazard. Plaintiff and the Virginia Class members relied on Ford's material representations.

- 143 -

420.    As alleged herein, at all relevant times, Ford has held out the Affected

Vehicles to be free from defects such as the defective two-piece lug nuts. Ford

touted and continues to tout the many benefits and advantages of the Affected

Vehicles, but nonetheless failed to disclose important facts related to the defect and

that Plaintiffs and Virginia Class members would be required to buy replacement

lug nuts at regular intervals. This made Ford's other disclosures about the Affected

Vehicles deceptive.

421.    The truth about the defective two-piece lug nuts was known only to

Ford; Plaintiffs and the Virginia Class members did not know of these facts and

Ford actively concealed these facts from Plaintiff and the Virginia Class members.

422.    Plaintiff and the Virginia Class members reasonably relied upon

Ford's deception. They had no way of knowing that Ford's representations were

false, misleading, or incomplete. As consumers, Plaintiff and the Virginia Class

members did not, and could not, unravel Ford's deception on their own. Rather,

Ford intended to deceive Plaintiff and the Virginia Class members by concealing

the true facts about the defective two-piece lug nuts.

423.    Ford's false representations and omissions and/or misrepresentations

were material to consumers because they concerned qualities of the Affected

Vehicles that played a significant role in the value of the vehicles and forced

Plaintiff and the Virginia Class members to purchase replacement lug nuts to ensure proper safety.

424.   Ford had a duty to disclose the defects inherent in the defective two-piece lug nuts with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Ford, because Ford had exclusive and/or superior knowledge as to such facts, and because Ford knew these facts were not known to or reasonably discoverable by Plaintiff or the Virginia Class members.

425.   Ford also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with the Affected Vehicles, without telling consumers that the defective two-piece lug nuts would affect the safety, quality, and performance of the vehicle.

426.   Ford's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defects in the Affected Vehicles as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased by Plaintiff and the Virginia Class members.

427.   Ford has still not made full and adequate disclosures and continues to defraud Plaintiff and the Virginia Class members by concealing material information regarding the defects in the Affected Vehicles.

- 145 -

428.   Plaintiff and the Virginia Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the Virginia Class members' actions were justified. Ford was in exclusive and/or superior control of the material facts, and such facts were not generally known to the public, Plaintiff, or Virginia Class members.

429.   Because of the concealment and/or suppression of facts, Plaintiff and the Virginia Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Ford's concealment of the true quality of the Affected Vehicles. Had Plaintiff and the Virginia Class members been aware of the defects in the Affected Vehicles, and the company's disregard for the truth, Plaintiff and the Virginia Class members who purchased an Affected Vehicle would have paid less for their vehicles or would not have purchased them at all.

430.   The value of Plaintiff's and the Virginia Class members' vehicles has diminished as a result of Ford's fraudulent concealment of the defective two-piece lug nuts, which has made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

431.   Accordingly, Ford is liable to Plaintiff and the Virginia Class members for damages in an amount to be proven at trial.

432.   Ford's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Virginia Class members' rights and the representations that Ford made to them, in order to enrich Ford. Ford's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT TWENTY-SIX

### UNJUST ENRICHMENT
### (BASED ON VIRGINIA LAW)

433.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

434.   Plaintiff brings this Count on behalf of the Virginia Class.

435.   Ford has benefitted from and been enriched by the conduct alleged herein. Ford has generated substantial revenue from the unlawful conduct described herein. Ford has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Virginia Class members.

436.   Ford has voluntarily accepted and retained this benefit.

437.    The circumstances, as described herein, are such that it would be inequitable for Ford to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Virginia Class members.

438.    Plaintiff and the other Virginia Class members are entitled to the amount of Ford's ill-gotten gains, including interest, resulting from its unlawful, unjust, unfair, and inequitable conduct as alleged herein.

## IX.    STATUTORY CLAIMS

439.    Plaintiffs assert statutory consumer protection claims on behalf of consumers in other states as follows:

### COUNT TWENTY-SEVEN

### VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT (ALA. CODE § 8-19-1, *ET SEQ.*)

440.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

441.    Plaintiffs intend to assert a claim under the Alabama Deceptive Trade Practices Act ("Alabama DTPA") which proscribes: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable,

false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5. Plaintiffs will make a demand in satisfaction of Ala. Code § 8-19-10(e), and may amend this Complaint to assert claims under the DTPA once the required 15 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the DTPA.

## COUNT TWENTY-EIGHT

## VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (ALASKA STAT. ANN. § 45.50.471, *ET SEQ.*)

442. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

443. Plaintiffs intend to assert a claim under the Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA") which proscribes unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or

- 149 -

services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. Ann. § 45.50.471. Plaintiffs will make a demand in satisfaction of Alaska Stat. § 45.50.535, and may amend this Complaint to assert claims under the CPA once the required notice period has elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CPA.

## COUNT TWENTY-NINE

## VIOLATION OF THE ARKANSAS
## DECEPTIVE TRADE PRACTICES ACT
## (ARK. CODE ANN. § 4-88-101, *ET SEQ.*)

444. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

445. Plaintiffs bring this claim on behalf of the Arkansas Class.

446. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") prohibits "[d]eceptive and unconscionable trade practices," which include but are not limited to "[e]ngaging in any . . . unconscionable false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The

Arkansas DTPA also prohibits, in connection with the sale or advertisement of any goods, "(1) the act, use, or employment by any person of any deception, fraud, or pretense; or (2) the concealment, suppression, or omission of any material fact with intent that other rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

447.   Ford, Plaintiffs, and Class members are "persons" within the meaning of Ark. Code Ann. § 4-88-102(5).

448.   The Affected Vehicles at issue constitute "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

449.   Plaintiffs seek monetary relief against Ford in an amount to be determined at trial. Plaintiffs also seek punitive damages because Ford acted wantonly in causing Plaintiffs' and Class members' injuries, or with such a conscious indifference to the consequences that malice may be inferred.

450.   Plaintiffs also seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arkansas DTPA.

## COUNT THIRTY

### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
### (COLO. REV. STAT. § 6-1-101, *ET SEQ.*)

451.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

010700-11 977510 V1

452.   Plaintiffs bring this claim on behalf of the Colorado Class.

453.   The Colorado Consumer Protection Act ("Colorado CPA") prohibits deceptive practices in the course of a person's business, including but not limited to "mak[ing] false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions"; and "fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. § 6-1-105.

454.   Ford is a "person" under Colo. Rev. Stat. § 6-1-102(6).

455.   Plaintiffs and Class members are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a).

456.   Ford's conduct, as set forth above, occurred in the conduct of trade or commerce.

457.   Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff or Class member.

010700-11 977510 V1

458.   Plaintiffs also seek an order enjoining Ford's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the Colorado CPA.

## COUNT THIRTY-ONE

### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110A, *ET SEQ.*)

459.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

460.   Plaintiffs bring this claim on behalf of the Connecticut Class.

461.   The Connecticut Unfair Trade Practices Act provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

462.   Ford is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3).

463.   Ford's challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

464.   Plaintiffs and Class members are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

- 153 -

465.   Ford acted with reckless indifference to another's rights, or wanton or intentional violation of another's rights, and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights and safety of others. Therefore, punitive damages are warranted.

## COUNT THIRTY-TWO

## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT (DEL. CODE ANN. TIT. 6, § 2513, *ET SEQ.*)

466.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

467.   Plaintiffs bring this claim on behalf of the Delaware Class.

468.   The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or nor any person has in fact been misled, deceived, or damaged thereby." Del. Code Ann. tit. 6, § 2513(a).

469.   Ford is a "person" within the meaning of Del. Code Ann. tit. 6, § 2511(7).

470.   Ford's actions, as set forth above, occurred in the conduct of trade or commerce.

- 154 -

471.   Plaintiffs seek damages under the Delaware CFA for injury resulting from the direct and natural consequences of Ford's unlawful conduct. *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1980). Plaintiffs also seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

472.   Ford engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

## COUNT THIRTY-THREE

### VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201, *ET SEQ.*)

473.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

474.   Plaintiffs bring this claim on behalf of the Florida Class.

475.   The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

476.   Plaintiffs and Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

- 155 -

477.   Ford engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

478.   In the course of business, Ford willfully failed to disclose and actively concealed the two-piece lug nut defects discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Ford also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission in connection with the sale of Affected Vehicles.

479.   By failing to disclose that the two-piece lug nuts were defective, and by presenting Ford as a reputable manufacturer that valued safety and stood behind their Affected Vehicles after they were sold, Ford engaged in deceptive business practices in violation of the FUDTPA.

480.   Ford's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the other Class members, about the true performance of the Affected Vehicles, the devaluing of safety and performance at Ford, and the true value of the Affected Vehicles.

481.   Ford intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiffs and the Class.

482.   Ford knew or should have known that their conduct violated the FUDTPA.

483.   As alleged above, Ford made material statements about the safety and performance of the Affected Vehicles and the Ford brand that were either false or misleading.

484.   Ford owed Plaintiffs a duty to disclose the true safety, performance, and reliability of the Affected Vehicles, because Ford:

> a.   Possessed exclusive knowledge that they were selling and distributing Affected Vehicles throughout the United States that did not perform as advertised;
>
> b.   Intentionally concealed the foregoing from Plaintiffs and the Florida Class; and/or
>
> c.   Made incomplete representations about the safety and performance of the Affected Vehicles generally, and the two-piece lug nut defects in particular, while purposefully withholding material facts from Plaintiffs and the Florida Class that contradicted these representations.

485.   Because Ford fraudulently concealed the two-piece lug nut defects, Plaintiffs were deprived of the benefit of the bargain and the value of the Affected Vehicles has greatly diminished. In light of the stigma attached to those Affected Vehicles by Ford's conduct, they are now worth significantly less than they otherwise would be.

486.  Ford's omissions and/or misrepresentations about the two-piece lug nut defects of the Affected Vehicles are material to Plaintiffs and the Class.

487.  Plaintiffs and Class members suffered ascertainable loss caused by Ford's misrepresentations and their concealment of and failure to disclose material information. Plaintiffs and Class members who purchased Affected Vehicles either would have paid less for their Affected Vehicles or would not have purchased them at all but for Ford's violations of the FUDTPA.

488.  Ford had an ongoing duty to all Ford customers to refrain from unfair and deceptive practices under the FUDTPA. All owners and lessees of Affected Vehicles suffered ascertainable loss in the form of diminished value of their Affected Vehicles as a result of Ford's deceptive and unfair acts and practices made in the course of Ford's business.

489.  Ford's violations present a continuing risk to Plaintiffs as well as to the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

490.  As a direct and proximate result of Ford's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

491.  Plaintiffs and Class members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

492.    Plaintiffs also seek an order enjoining Ford's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under the FUDTPA.

## COUNT THIRTY-FOUR

## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT (GA. CODE ANN. § 10-1-390, *ET SEQ.*)

493.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

494.    Plaintiffs intend to assert a claim under the Georgia Fair Business Practices Act ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code. Ann. § 10-1-393(b). Plaintiffs will make a demand in satisfaction of Ga. Code. Ann. § 10-1-399, and may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

## COUNT THIRTY-FIVE

## VIOLATION OF THE GEORGIA UNIFORM
## DECEPTIVE TRADE PRACTICES ACT
## (GA. CODE ANN. § 10-1-370, *ET SEQ.*)

495.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

496.   Plaintiffs bring this claim on behalf of the Georgia Class.

497.   Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA") prohibits "deceptive trade practices," which include "[m]ak[ing] false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" or "any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

498.   Ford, Plaintiffs, and Class members are "persons" within the meaning of Ga. Code Ann. § 10-1-371(5).

499.   Plaintiffs seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under Ga. Code Ann. § 10-1-373.

## COUNT THIRTY-SIX

## VIOLATION OF THE HAWAII ACT § 480-2(A)
## (HAW. REV. STAT. § 480, *ET SEQ.*)

500.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

- 160 -

501.   Plaintiffs bring this Count on behalf of the Hawaii Class.

502.   Haw. Rev. Stat. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

503.   Ford is a "person" under Haw. Rev. Stat. § 480-1.

504.   Plaintiffs and Class members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased the vehicle at issue.

505.   Pursuant to Haw. Rev. Stat. § 480-13, Plaintiffs seek monetary relief against Ford measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

506.   Under Haw. Rev. Stat. § 480-13.5, Plaintiffs seek an additional award against Ford of up to $10,000 for each violation directed at a Hawaii elder. Ford knew or should have known that its conduct was directed to one or more Plaintiffs who are elders. Ford's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder. Plaintiffs who are elders are substantially more vulnerable to Ford's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered a substantial physical, emotional, or economic damage resulting from Ford's conduct.

## COUNT THIRTY-SEVEN

## VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT
### (IDAHO CODE ANN. § 48-601, *ET SEQ.*)

507.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

508.   Plaintiffs bring this claim on behalf of the Idaho Class.

509.   The Idaho Consumer Protection Act ("Idaho CPA") prohibits deceptive business practices, including but not limited to "(11) [m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "(17) [e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer"; or "(18) engaging in any unconscionable method, act or practice in the conduct of trade or commerce." Idaho Code Ann. § 48-603.

510.   Ford is a "person" under Idaho Code Ann. § 48-602(1).

511.   Ford's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code Ann. § 48-602(2).

512.   Pursuant to Idaho Code § 48-608, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Plaintiff.

010700-11 977510 V1

513.    Plaintiffs also seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

514.    Plaintiffs also seek punitive damages against Ford because Ford's conduct evidences an extreme deviation from reasonable standards. Ford flagrantly, maliciously, and fraudulently misrepresented the actual capability of the Affected Vehicles' safety under normal driving conditions, as these vehicles were not safe to operate as promised. Ford also concealed that the wheels on the Affected Vehicles would not be removable by the operator in the event of a flat tire. Ford manipulated consumers and jeopardized the safety of drivers and those around them, all for the sake of increasing revenue through higher prices. Ford's egregious conduct warrants punitive damages.

## COUNT THIRTY-EIGHT

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)

515.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

516.    Plaintiff intends to assert a claim under Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") which prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics,

accessories, uses, or benefits that they do not have, or that a person has a

sponsorship, approval, status, affiliation, or connection it does not have; (2) That

such subject of a consumer transaction is of a particular standard, quality, grade,

style or model, if it is not and if the supplier knows or should reasonably know that

it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such

consumer transaction that the supplier does not have, and which the supplier knows

or should reasonably know that the supplier does not have; … (b) Any

representations on or within a product or its packaging or in advertising or

promotional materials which would constitute a deceptive act shall be the

deceptive act both of the supplier who places such a representation thereon or

therein, or who authored such materials, and such suppliers who shall state orally

or in writing that such representation is true if such other supplier shall know or

have reason to know that such representation was false." Plaintiffs will make a

demand in satisfaction of Ind. Code § 24-5-0.5-5(a)(2), and may amend this

Complaint to assert claims under the Indiana DCSA once the required six months

have elapsed. This paragraph is included for purposes of notice only and is not

intended to actually assert a claim under the Indiana DCSA.

010700-11 977510 V1

## COUNT THIRTY-NINE

## VIOLATION OF THE IOWA PRIVATE RIGHT
## OF ACTION FOR CONSUMER FRAUDS ACT
## (IOWA CODE § 714H.1, *ET SEQ.*)

517.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

518.    Plaintiffs bring this claim on behalf of the Iowa Class.

519.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3.

520.    Ford is a "person" under Iowa Code § 714H.2(7).

521.    Plaintiffs and Class members are "consumers" as defined by Iowa Code § 714H.2(3), who purchased Affected Vehicles.

522.    Pursuant to Iowa Code § 714H.5, Plaintiffs seek an order enjoining Ford's unfair and/or deceptive acts or practices; actual damages; and statutory damages up to three times the amount of actual damages awarded as a result of

Ford's willful and wanton disregard for the rights and safety of others; attorneys' fees; and other such equitable relief as the court deems necessary to protect the public from further violations of the Iowa CFA.

## COUNT FORTY

## VIOLATION OF THE KANSAS CONSUMER PROTECTION ACT
### (KAN. STAT. ANN. § 50-623, *ET SEQ.*)

523.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

524.  Plaintiffs bring this claim on behalf of the Kansas Class.

525.  The Kansas Consumer Protection Act states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a). Deceptive acts or practices include, but are not limited to, "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact"; "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact"; "making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions," "whether or not any consumer has in fact been misled." Kan. Stat. Ann. § 50-626.

526.  Plaintiffs and Class members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased Affected Vehicles.

527.    The sale of Affected Vehicles to Plaintiffs was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

528.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiffs seek monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for each plaintiff.

529.    Plaintiffs also seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623 *et seq.*

## COUNT FORTY-ONE

## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. ANN. § 367.110, *ET SEQ.*)

530.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

531.    Plaintiffs bring this claim on behalf of the Kentucky Class.

532.    The Kentucky Consumer Protection Act makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." Ky. Rev. Stat. Ann. § 367.170(1).

533.    Ford, Plaintiffs, and Class members are "persons" within the meaning of Ky. Rev. Stat. Ann. § 367.110(1).

010700-11 977510 V1

534.    Ford engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110(2).

535.    Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs seek to recover actual damages in an amount to be determined at trial; an order enjoining Ford's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT FORTY-TWO

## VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. REV. STAT. ANN. § 51:1401, *ET SEQ.*)

536.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

537.    Plaintiffs bring this claim on behalf of the Louisiana Class.

538.    The Louisiana Unfair Trade Practices and Consumer Protection Law (Louisiana CPL) makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A).

539.    Ford, Plaintiffs, and Class members are "persons" within the meaning of La. Rev. Stat. Ann. § 51:1402(8).

540.    Plaintiffs and Class members are "consumers" within the meaning of La. Rev. Stat. Ann. § 51:1402(1).

541.    Ford engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. Ann. § 51:1402(9).

542.    Pursuant to La. Rev. Stat. Ann. § 51:1409, Plaintiffs seek to recover actual damages in an amount to be determined at trial; treble damages for knowing violations of the Louisiana CPL; an order enjoining Ford's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat. Ann. § 51:1409.

## COUNT FORTY-THREE

## VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
## (ME. REV. STAT. ANN. TIT. 5, § 205-A, *ET SEQ.*)

543.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

544.    Plaintiffs intend to assert a claim under the Maine Unfair Trade Practices Act ("Maine UTPA") which makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." Me. Rev. Stat. Ann. tit. 5, § 207. Plaintiffs will make a demand in satisfaction of Me. Rev. Stat. Ann. tit. 5, § 213(A), and may amend this Complaint to assert claims under the Maine UTPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Maine UTPA.

## COUNT FORTY-FOUR

## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE ANN., COM. LAW § 13-101, *ET SEQ.*)

545.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

546.   Plaintiffs bring this claim on behalf of the Maryland Class.

547.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good, including "failure to state a material fact if the failure deceives or tends to deceive"; "false or misleading representation[s] of fact which concern[] . . . [t]he reason of or the existence or amount of a price reduction"; and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same," Md. Code Ann., Com. Law § 13-301, regardless of whether the consumer is actually deceived or damaged, Md. Code Ann., Com. Law § 13-302.

548.   Ford, Plaintiffs, and Class members are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

549.   Pursuant to Md. Code Ann., Com. Law § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

- 170 -

## COUNT FORTY-FIVE

## VIOLATION OF THE MASSACHUSETTS
## GENERAL LAW CHAPTER 93(A)
## (MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.*)

550.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

551.   Plaintiff intends to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93A, § 2(1). Plaintiffs will make a demand in satisfaction of Mass. Gen. Laws Ch. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

## COUNT FORTY-SIX

## VIOLATION OF THE MICHIGAN
## CONSUMER PROTECTION ACT
## (MICH. COMP. LAWS § 445.903 *ET SEQ.*)

552.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

553.   Plaintiffs bring this Count on behalf of the Michigan Class.

554.    The Michigan Consumer Protection Act prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "charging the consumer a price that is grossly in excess of the price at which similar property or services are sold"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; or "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

555.    Plaintiffs and Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

556.    Ford is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

557.    Plaintiffs seek injunctive relief to enjoin Ford from continuing its unfair and deceptive acts; monetary relief against Ford measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages

in the amount of $250 for each plaintiff; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

558.    Plaintiffs also seek punitive damages because Ford carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Ford misrepresented the safety of the Affected Vehicles. Ford also concealed that the wheels on Affected Vehicles would not be removable by the operator in the event of a flat tire. Ford manipulated consumers and jeopardized the safety of drivers and those around them, all for the sake of increasing revenue through higher prices. Ford's egregious conduct warrants punitive damages.

## COUNT FORTY-SEVEN

### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68, *ET SEQ.*)

559.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

560.    Plaintiffs bring this claim on behalf of the Minnesota Class.

561.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any

- 173 -

merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1).

562.   Each Affected Vehicle constitutes "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

563.   Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

564.   Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Ford's acts show deliberate disregard for the rights or safety of others.

## COUNT FORTY-EIGHT

### VIOLATION OF THE MINNESOTA
### DECEPTIVE TRADE PRACTICES ACT
### (MINN. STAT. § 325D.43-48, *ET SEQ.*)

565.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

566.   Plaintiffs bring this claim on behalf of the Minnesota Class.

567.   The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts

of price reductions" or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." Minn. Stat. § 325D.44.

568.   Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

569.   Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Ford's acts show deliberate disregard for the rights or safety of others.

**COUNT FORTY-NINE**

**VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT (MISS. CODE ANN. § 75-24-1, *ET SEQ.*)**

570.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

571.   Plaintiffs bring this claim on behalf of the Mississippi Class.

572.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code Ann. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "[m]isrepresentations of fact concerning the reasons for, existence of, or amounts of price reductions." Miss. Code Ann. § 75-24-5(2).

573.   Plaintiffs seek actual damages in an amount to be determined at trial and any other just and proper relief available under the Mississippi CPA.

010700-11 977510 V1

## COUNT FIFTY

## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (MO. REV. STAT. § 407.010, *ET SEQ.*)

574.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

575.    Plaintiffs bring this claim on behalf of the Missouri Class.

576.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

577.    Ford, Plaintiffs, and Class members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

578.    Ford engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

579.    Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Ford's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT FIFTY-ONE

## VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. § 30-14-101, *ET SEQ.*)

580.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

581.   Plaintiffs bring this claim on behalf of the Montana Class.

582.   The Montana Unfair Trade Practices and Consumer Protection Act makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103.

583.   Ford, Plaintiffs, and Class members are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

584.   Plaintiffs and Class members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

585.   The sale of each Affected Vehicle at issue occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Ford committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

586.   Because Ford's unlawful methods, acts, and practices have caused Plaintiffs to suffer an ascertainable loss of money and property, Plaintiffs seek

- 177 -

from Ford: the greater of actual damages or $500; discretionary treble damages;

and reasonable attorneys' fees.

587.   Plaintiffs additionally seek an order enjoining Ford's unfair, unlawful,

and/or deceptive practices, and any other relief the Court considers necessary or

proper, under Mont. Code Ann. § 30-14-133.

## COUNT FIFTY-TWO

## VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
### (NEB. REV. STAT. § 59-1601, *ET SEQ.*)

588.   Plaintiffs hereby incorporate by reference the allegations contained in

the preceding paragraphs of this complaint.

589.   Plaintiffs bring this claim on behalf of the Nebraska Class.

590.   The Nebraska Consumer Protection Act ("Nebraska CPA") prohibits

"unfair or deceptive acts or practices in the conduct of any trade or commerce."

Neb. Rev. Stat. § 59-1602.

591.   Ford, Plaintiffs, and Class members are "person[s]" under Neb. Rev.

Stat. § 59-1601(1).

592.   Ford's actions as set forth herein occurred in the conduct of trade or

commerce as defined under Neb. Rev. Stat. § 59-1601(2).

593.   Because Ford's conduct caused injury to Plaintiffs' property through

violations of the Nebraska CPA, Plaintiffs seek recovery of actual damages, as

well as enhanced damages up to $1,000, an order enjoining Ford's unfair or

- 178 -

deceptive acts and practices, costs of court, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

## COUNT FIFTY-THREE

## VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (NEV. REV. STAT. § 598.0903, *ET SEQ.*)

594.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

595.   Plaintiffs bring this claim on behalf of the Nevada Class.

596.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA") prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person: "[m]akes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions"; "[k]nowingly makes any other false representation in a transaction"; "[f]ails to disclose a material fact in connection with the sale or lease of goods or services"; or "[m]akes an assertion of scientific, clinical or quantifiable fact in an advertisement which would cause a reasonable person to believe that the assertion is true, unless, at the time the assertion is made, the person making it has possession of factually objective scientific, clinical or quantifiable evidence which substantiates the assertion." Nev. Rev. Stat. §§ 598.0915–598.0925.

010700-11 977510 V1

597.    Accordingly, Plaintiffs seek their actual damages, punitive damages, an order enjoining Ford's deceptive acts or practices, costs of court, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA. Nev. Rev. Stat. § 41.600.

## COUNT FIFTY-FOUR

### VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT (N.H. REV. STAT. ANN. § 358-A:1, *ET SEQ.*)

598.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

599.    Plaintiffs bring this claim on behalf of the New Hampshire Class.

600.    The New Hampshire Consumer Protection Act ("New Hampshire CPA") prohibits a person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or practice," including, "but . . . not limited to" "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." N.H. Rev. Stat. Ann. § 358-A:2.

601.    Ford, Plaintiffs, and Class members are "persons" under N.H. Rev. Stat. Ann. § 358-A:1.

602.    Ford's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. Ann. § 358-A:1.

010700-11 977510 V1

603.   Because Ford's willful conduct caused injury to Plaintiffs' property through violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000, whichever is greater; treble damages; costs and reasonable attorneys' fees; an order enjoining Ford's unfair and/or deceptive acts and practices; and any other just and proper relief under N.H. Rev. Stat. Ann. § 358-A:10.

## COUNT FIFTY-FIVE

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)

604.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

605.   Plaintiffs bring this claim on behalf of the New Jersey Class.

606.   The New Jersey Consumer Fraud Act makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J. Stat. Ann. § 56:8-2.

- 181 -

607.   Ford, Plaintiffs, and Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

608.   Ford engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

609.   Plaintiffs are entitled to recover legal and/or equitable relief, including an order enjoining Ford's unlawful conduct, treble damages, costs, and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

**COUNT FIFTY-SIX**

**VIOLATION OF THE NEW MEXICO**
**UNFAIR TRADE PRACTICES ACT**
**(N.M. STAT. ANN. § 57-12-1, *ET SEQ.*)**

610.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

611.   Plaintiffs bring this claim on behalf of the New Mexico Class.

612.   The New Mexico Unfair Trade Practices Act makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including,

- 182 -

but not limited to, "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).

613.    Ford, Plaintiffs, and Class members are "person[s]" under N.M. Stat. Ann. § 57-12-2.

614.    Ford's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

615.    Because Ford's unconscionable, willful conduct caused actual harm to Plaintiffs, Plaintiffs seek recovery of actual damages or $100, whichever is greater; discretionary treble damages; punitive damages; and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

## COUNT FIFTY-SEVEN

### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW §349 (N.Y. GEN. BUS. LAW § 349)

616.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

617.    Plaintiffs bring this claim on behalf of the New York Class.

618.    The New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

619.   Plaintiffs and Class members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

620.   Ford is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

621.   Ford's deceptive acts and practices, which were intended to mislead consumers who purchased Affected Vehicles, was conduct directed at consumers.

622.   Because Ford's willful and knowing conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages or $50, whichever is greater; discretionary treble damages up to $1,000; punitive damages; reasonable attorneys' fees and costs; an order enjoining Ford's deceptive conduct; and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## COUNT FIFTY-EIGHT

## VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT (N.D. CENT. CODE § 51-15-02)

623.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

624.   Plaintiffs bring this claim on behalf of the North Dakota Class.

625.   The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent

that others rely thereon in connection with the sale or advertisement of any merchandise . . . ." N.D. Cent. Code § 51-15-02.

626.   Ford, Plaintiffs, and Class members are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

627.   Ford engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

628.   Ford knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Ford is liable to Plaintiffs for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiffs further seek an order enjoining Ford's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

## COUNT FIFTY-NINE

## VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT (OKLA. STAT. TIT. 15, § 751, *ET SEQ.*)

629.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

630.   Plaintiffs bring this claim on behalf of the Oklahoma Class.

631.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") declares unlawful, *inter alia*, the following acts or practices when committed in the course of business: making a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the

detriment of that person"; "any practice which offends established public policy or
if the practice is immoral, unethical, oppressive, unscrupulous or substantially
injurious to consumers"; and making "false or misleading statements of fact,
knowingly or with reason to know, concerning the price of the subject of a
consumer transaction or the reason for, existence of, or amounts of price
reduction." Okla. Stat. tit. 15, §§ 752-753.

632.   Plaintiffs and Class members are "persons" under Okla. Stat. tit. 15,
§ 752.

633.   Ford is a "person," "corporation," or "association" within the meaning
of Okla. Stat. tit. 15, § 15-751(1).

634.   Each sale of an Affected Vehicle to Plaintiffs was a "consumer
transaction" within the meaning of Okla. Stat. tit. 15, § 752, and Ford's actions as
set forth herein occurred in the conduct of trade or commerce.

635.   Plaintiffs further allege that Ford's malicious and deliberate conduct
warrants an assessment of punitive damages because Ford carried out despicable
conduct with willful and conscious disregard of the rights and safety of others,
subjecting Plaintiffs to cruel and unjust hardship as a result. Ford misrepresented
the safety of the Affected Vehicles. Ford also concealed that the wheels on
Affected Vehicles would not be removable by the operator in the event of a flat
tire. Ford manipulated consumers and jeopardized the safety of drivers and those

- 186 -

around them, all for the sake of increasing revenue through higher prices. Ford's egregious conduct warrants punitive damages.

636.   Ford's conduct as alleged herein was unconscionable because (1) Ford, knowingly or had reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transaction was entered into, Ford knew or had reason to know that the price the consumers were charged grossly exceeded the price at which similar products were readily obtainable in similar transactions by like consumers; and (3) Ford knew or had reason to know that the transaction Ford induced the consumers to enter into was excessively one-sided in favor of Ford.

637.   Because Ford's unconscionable conduct caused injury to Plaintiffs, Plaintiffs seek recovery of actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees, under Okla. Stat. tit. 15, § 761.1. Plaintiffs further seek an order enjoining Ford's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

## COUNT SIXTY

## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (OR. REV. STAT. § 646.605, *ET SEQ.*)

638.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

639.    Plaintiffs bring this claim on behalf of the Oregon Class.

640.    The Oregon Unfair Trade Practices Act prohibits a person from, in the course of the person's business, doing any of the following: "[m]ak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions"; "[m]ak[ing] false or misleading representations of fact concerning the offering price or, or the person's cost for . . . goods"; or "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1).

641.    Ford is a person within the meaning of Or. Rev. Stat. § 646.605(4).

642.    The Affected Vehicles at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

643.    Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). Plaintiffs are also entitled to punitive damages because Ford engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

- 188 -

## COUNT SIXTY-ONE

## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
(73 P.S. § 201-1, *ET SEQ.*)

644.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

645.    Plaintiffs bring this claim on behalf of the Pennsylvania Class.

646.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law (Pennsylvania CPL) prohibits unfair or deceptive acts or practices, including: "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4).

647.    Ford, Plaintiffs, and Class members are "persons" within the meaning of 73 P.S. § 201-2(2).

648.    Plaintiffs purchased an Affected Vehicle primarily for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2.

649.    All of the acts complained of herein were perpetrated by Ford in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

650.    Ford is liable to Plaintiffs for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiffs

- 189 -

are also entitled to an award of punitive damages given that Ford's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT SIXTY-TWO

## VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1, *ET SEQ.*)

651.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

652.   Plaintiffs bring this claim on behalf of the Rhode Island Class.

653.   Rhode Island's Unfair Trade Practices and Consumer Protection Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions"; "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "[e]ngaging in any act or practice that is unfair or deceptive to the consumer"; and "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6).

654.   Ford, Plaintiffs, and Class members are "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

- 190 -

655.   Ford engaged in "trade" and "commerce" within the meaning of R.I. Gen. Laws § 6-13.1-1(5).

656.   Plaintiffs purchased Affected Vehicles primarily for personal, family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

657.   Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). Plaintiffs also seek punitive damages at the discretion of the Court.

## COUNT SIXTY-THREE

## VIOLATION OF THE SOUTH CAROLINA
## UNFAIR TRADE PRACTICES ACT
## (S.C. CODE ANN. § 39-5-10, *ET SEQ.*)

658.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

659.   Plaintiffs bring this claim on behalf of the South Carolina Class.

660.   The South Carolina Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." S.C. Code Ann. § 39-5-20(a).

661.   Ford is a "person" under S.C. Code Ann. § 39-5-10.

662.   Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiffs seek monetary relief to recover their economic losses. Because Ford's actions were willful and knowing, Plaintiffs' damages should be trebled.

663.   Plaintiffs further allege that Ford's malicious and deliberate conduct warrants an assessment of punitive damages because Ford carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to cruel and unjust hardship as a result. Ford misrepresented the safety of the Affected Vehicles. Ford also concealed that the wheels on Affected Vehicles would not be removable by the operator in the event of a flat tire. Ford manipulated consumers and jeopardized the safety of drivers and those around them, all for the sake of increasing revenue through higher prices. Ford's egregious conduct warrants punitive damages.

664.   Plaintiffs further seek an order enjoining Ford's unfair or deceptive acts or practices.

### COUNT SIXTY-FOUR

### VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-6)

665.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

666.   Plaintiffs bring this claim on behalf of the South Dakota Class.

667.   The South Dakota Deceptive Trade Practices and Consumer Protection Law prohibits deceptive acts or practices, which include "[k]nowingly act[ing], us[ing], or employ[ing] any deceptive act or practice, fraud, false

- 192 -

pretense, false promises, or misrepresentation or to conceal, suppress, or omit any

material fact in connection with the sale or advertisement of any merchandise,

regardless of whether any person has in fact been misled, deceived, or damaged

thereby"; and "advertising price reductions without . . . including in the

advertisement the specific basis for the claim of a price reduction or [o]ffering the

merchandise for sale at the higher price from which the reduction is taken for at

least seven consecutive business days during the sixty-day period prior to the

advertisement." S.D. Codified Laws §§ 37-24-6(1), 37-24-31.

668.   Under S.D. Codified Laws § 37-24-31, Plaintiffs are entitled to a

recovery of their actual damages suffered as a result of Ford's acts and practices.

## COUNT SIXTY-FIVE

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
### PRACTICES AND CONSUMER PROTECTION ACT
### (TEX. BUS. & COM. CODE § 17.4, *ET SEQ.*)

669.   Plaintiffs hereby incorporate by reference the allegations contained in

the preceding paragraphs of this complaint.

670.   Plaintiff intends to assert a claim under the Texas Deceptive Trade

Practices Act ("TDTPA"), which makes it unlawful to commit "[f]alse, misleading,

or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus.

& Com. Code § 17.46. Plaintiffs will make a demand in satisfaction of Tex. Bus. &

Com. Code § 17.45(2), and may amend this Complaint to assert claims under the

TDTPA once the required 60 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the TDTPA.

## COUNT SIXTY-SIX

## VIOLATION OF THE UTAH CONSUMER SALE PRACTICES ACT (UTAH CODE ANN. § 13-11-1, *ET SEQ.*)

671.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

672.  Plaintiffs bring this claim on behalf of the Utah Class.

673.  The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction," including, but not limited to, "indicat[ing] that a specific price advantage exists, if it does not." Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

674.  Ford knew, or had reason to know, that consumers would rely on Ford's representations about the safety of the Affected Vehicles and marketed the Affected Vehicles as safe and reliable, thereby commanding a higher price due to such representations. Ford also knew that the omissions about the Affected Vehicles having two-piece lug nuts that would swell and delaminate would negatively impact the price and, as such, chose not to disclose this information to

consumers. Ford therefore engaged in an unconscionable act within the meaning of Utah Code Ann. § 13-11-5.

675.    Pursuant to Utah Code Ann. § 13-11-4, Plaintiffs seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff; reasonable attorneys' fees; and any other just and proper relief available under the Utah CSPA.

## COUNT SIXTY-SEVEN

## VIOLATION OF THE VERMONT CONSUMER FRAUD ACT
## (VT. STAT. ANN. TIT. 9, § 2451, *ET SEQ.*)

676.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

677.    Plaintiffs bring this claim on behalf of the Vermont Class.

678.    The Vermont Consumer Fraud Act makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce . . . ." Vt. Stat. Ann. tit. 9, § 2453(a).

679.    Ford were sellers within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

680.    Plaintiffs are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding

- 195 -

three times the value of the consideration given by [them]," pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT SIXTY-EIGHT

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT (WASH. REV. CODE ANN. § 19.86.010, *ET SEQ.*)

681.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

682.    Plaintiffs bring this claim on behalf of the Washington Class.

683.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code Ann. § 19.96.010.

684.    Ford committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of Wash. Rev. Code Ann. § 19.96.010.

685.    Ford is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

- 196 -

## COUNT SIXTY-NINE

### VIOLATION OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
### (W. VA. CODE § 46A-1-101, *ET SEQ.*)

686.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

687.   Plaintiffs bring this claim on behalf of the West Virginia Class.

688.   Plaintiffs intend to assert a claim under the West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." W. Va. Code § 46A-6-104. Plaintiffs will make a demand in satisfaction of W. Va. Code § 46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once the required 20 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CCPA.

## COUNT SEVENTY

### VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
### (WIS. STAT. § 110.18)

689.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

690.   Plaintiffs bring this claim on behalf of the Wisconsin Class.

- 197 -

691.    The Wisconsin Deceptive Trade Practices Act prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

692.    Ford is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

693.    Plaintiffs and Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1). Plaintiffs purchased Affected Vehicles.

694.    Plaintiffs are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because Ford's conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

695.    Plaintiffs also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

## COUNT SEVENTY-ONE

## VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT (WYO. STAT. § 40-12-105, *ET SEQ.*)

696.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

697.    Plaintiff intends to assert a claim under the Wyoming Consumer Protection Act ("Wyoming CPA"), which makes it unlawful for a person, in the course of their business and in connection with a consumer transaction, to knowingly: "(iii) Represent[] that merchandise is of a particular standard, grade,

- 198 -

style or model, if it is not"; "(v) Represent[] that merchandise has been supplied in accordance with a previous representation, if it has not…"; "(viii) Represent[] that a consumer transaction involves a warranty, a disclaimer of warranties, particular warranty terms, or other rights, remedies or obligations if the representation is false"; "(x) Advertise[] merchandise with intent not to sell it as advertised"; or "(xv) Engage[] in unfair or deceptive acts or practices." Wyo. Stat. § 45-12-105. Plaintiff will make a demand in satisfaction of Wyo. Stat. § 40-12-109, and may amend this Complaint to assert claims under the CPA once the required time period has elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and State Classes, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.      Certification of the proposed Nationwide Class and State Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.      Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

C.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

D.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.


DATED: August 24, 2017          Respectfully Submitted,

                                By */s/ Steve W. Berman*
                                    Steve W. Berman
                                Thomas E. Loeser
                                HAGENS BERMAN SOBOL SHAPIRO LLP
                                1918 Eighth Avenue, Suite 3300
                                Seattle, WA 98101
                                Telephone: (206) 623-7292
                                Facsimile: (206) 623-0594
                                steve@hbsslaw.com
                                toml@hbsslaw.com

010700-11 977510 V1

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
THE MILLER LAW FIRM PC
950 W. University Dr., Ste. 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com

*Attorneys for Plaintiffs and
the Proposed Class*

010700-11 977510 V1