UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSH WOZNIAK, et al.,

                Plaintiffs,                Case No. 2:17-cv-12794

v.                                      HONORABLE STEPHEN J. MURPHY, III

FORD MOTOR COMPANY,          MAGISTRATE DAVID R. GRAND

                Defendant.
_____

### FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Ford Motor Company moves to dismiss Plaintiffs' First Amended Class Action Complaint under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). In support, Ford relies on the attached brief and accompanying exhibits.

On January 30, 2018, pursuant to E.D. Mich. LR 7.1(a), defense counsel had a telephone conference with Plaintiffs' counsel during which Ford explained the nature and legal bases of the motion and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, Ford respectfully requests that the Court grant its motion and dismiss Plaintiffs' First Amended Class Action Complaint with prejudice.

Respectfully submitted,

BUSH SEYFERTH & PAIGE PLLC
Attorneys for Ford Motor Company

By: /s/ Stephanie A. Douglas
    Stephanie A. Douglas (P70272)
    Jessica V. Currie (P74213)
    3001 W. Big Beaver Rd., Ste. 600
    Troy, MI 48084
    (248) 822-7800
    douglas@bsplaw.com
    currie@bsplaw.com

Dated:   February 5, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSH WOZNIAK, et al.

              Plaintiffs,           Case No. 2:17-cv-12794

v.                                HONORABLE STEPHEN J. MURPHY, III

FORD MOTOR COMPANY,         MAGISTRATE DAVID R. GRAND

              Defendant.

_____

**BRIEF IN SUPPORT OF FORD MOTOR COMPANY'S MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## STATEMENT OF ISSUES PRESENTED

1. Among other pleading problems, Plaintiffs bring claims under the laws of states where no Plaintiff resides, placeholder claims they "intend to assert" later, and warranty claims under the laws of states where Plaintiffs did not purchase their vehicles. Should these claims, as summarized below, be dismissed under Rule 12(b)(6)?

| Count(s) | Pleading Problem | Affected Plaintiffs |
|---|---|---|
| 5, 9, 18, 19, 24–26, 34–36, 40, 41, 58, 65, 69, 74, 83, 88, 96–98, 109, 113, 120 | Claims with no resident Plaintiff and no Plaintiff-specific allegations | Named Plaintiffs & AK, AR, CT, DE, GA, HI, IN, IA, KS, LA, ME, MS, NE, NH, MN, ND, OK, RI, SC, SD, VT, WA, WY Classes |
| 24, 34, 41, 45, 114 | Claims Plaintiffs "intend to assert" at a later date | Named Plaintiffs Elwin, Thornburg & GA, IN, ME, MA, WV Classes |
| 6–8, 10–14, 30–33, 79–82, 99–102, 110–112 | Plaintiff does not assert any claims | Named Plaintiffs Jackson, VanderMeeden, Dahlke, Nyiri, Thomas, Cando |
| 23, 48, 82, 101 | Warranty claims despite different state of purchase | Named Plaintiffs Ay, Elwin, Nyiri, Lycan, Thomas & MA, TN Classes |
| 14, 105 | State does not recognize claim | Named Plaintiffs Castaneda, VanderMeeden, Horton & CA, TX Classes |

2.  Plaintiffs do not allege facts to support a breach of Ford's New Vehicle Limited Warranty or satisfaction of pre-suit requirements. Should Plaintiffs' warranty-based claims, as summarized below, be dismissed under Rule 12(b)(6)?

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 1 | Magnuson-Moss Warranty Act | Named Plaintiffs & Nationwide Class |
| 23, 32, 48, 52, 57, 73, 78, 82, 87, 95, 101 | Breach of express warranty | Named Plaintiffs & FL, IL, MA, MI, MN, NJ, NY, NC, OH, PA, TN Classes |

3.  Plaintiffs do not identify any lug nut-specific representations by Ford and instead rely on puffery about vehicle "quality" and "style." Plaintiffs also fail to allege the omission of any material fact that Ford was duty-bound to disclose. Should their consumer protection, false advertising, and common-law fraud claims, as summarized below, be dismissed under Rules 9(b) and 12(b)(6)?

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 2, 5, 6, 9–11, 15, 18–20, 24–27, 30, 34–37, 40–42, 45, 49, 53, 54, 58, 59, 62, 65, 66, 69, 70, 74, 75, 79, 83, 84, 88, 89, 92, 96–99, 103, 106, 109, 110, 113, 114, 117, 120 | State consumer protection | Named Plaintiffs & All State Classes |
| 12 | CA false advertising | Named Plaintiffs Castaneda, VanderMeeden & CA Class |
| 3, 7, 13, 16, 21, 28, 31, 38, 43, 46, 50, 55, 60, 63, 67, 71, 76, 80, 85, 90, 93, 100, 104, 107, 111, 115, 118 | Fraud by concealment | Named Plaintiffs & AL, AZ, CA, CO, FL, ID, IL, KY, MD, MA, MI, MN, MO, MT, NV, NJ, NY, NC, OH, OR, PA, TN, TX, UT, VA, WV, WI Classes |

4.  Plaintiffs do not sufficiently allege that Ford has received a benefit, much less a benefit that Ford has unjustly retained, the New Vehicle Limited Warranty is a binding contract that supplies Plaintiffs with the relief they bargained for, and adequate legal remedies exist. Should Plaintiffs' unjust-enrichment claims, as summarized below, be dismissed under Rules 9(b) and 12(b)(6)?

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 4, 8, 14, 17, 22, 29, 33, 39, 44, 47, 51, 56, 61, 64, 68, 72, 77, 81, 86, 91, 94, 102, 105, 108, 112, 116, 119 | Unjust enrichment | Named Plaintiffs & AL, AZ, CA, CO, FL, ID, IL, KY, MD, MA, MI, MN, MO, MT, NV, NJ, NY, NC, OH, OR, PA, TN, TX, UT, VA, WV, WI Classes |

5.  Plaintiffs' warranty claims accrued at the time of tender. Plaintiffs allege that their fraud-based claims accrued when they discovered the alleged defect in their lug nuts. Should Plaintiffs' claims, as summarized below, be dismissed as untimely under Rules 9(b) and 12(b)(6)?

| Count(s) | Nature of Claim | Affected Plaintiffs |
|---|---|---|
| 23, 32, 48, 52, 57, 73, 78, 82, 87, 101 | Breach of express warranty | Named Plaintiffs Garland, Dahlke, Elwin, Nace, Bents, Barron, Maurer (F-150), Desotelle, Nyiri, Ellis, Thomas & MA, MI, NC, NJ, OH Classes |
| 2, 6, 11, 27, 37, 75, 84, 89, 117 | State consumer protection | Named Plaintiffs Brown, Wozniak, Castaneda (Flex), Law, Hutchinson, Maurer (F-150), Ellis, Wood, Petrashek, Rahlf & AL, ID, KY, OH, OR, WI Classes |
| 13, 28, 76, 85, 93 | Fraud by concealment | Named Plaintiffs Castaneda (Flex), Law, Maurer (F-150), Ellis, Bonarrigo & ID, OH, PA Classes |

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 9(b)

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)

*Beck v. FCA US LLC,*
      No. 17-CV-10267, 2017 WL 3448016 (E.D. Mich. Aug. 11, 2017)

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007)

*Cipollone v. Liggett Group, Inc.*,
      505 U.S. 504 (1992)

*Darne v. Ford Motor Co.*,
      No. 13-CV-03594, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2017)

*In re OnStar Contract Litig*.,
      600 F. Supp. 2d 861 (E.D. Mich. 2009)

*Lassen v. Nissan N. Am., Inc.*,
      211 F. Supp. 3d 1267 (C.D. Cal. 2016)

*Minger v. Green*,
      239 F.3d 793 (6th Cir. 2001)

*Sanderson v. HCA-The Healthcare Co*.,
      447 F.3d 873 (6th Cir. 2006)

*Williams v. Yamaha Motor Co.*,
      851 F.3d 1015 (9th Cir. 2017)

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................1

STATEMENT OF ALLEGED FACTS...............................................................3

ARGUMENT ......................................................................................................7

I.   The complaint contains fundamental pleading problems. ...................................7

II.  The warranty-based claims are deficient. ...........................................................9

    A.  No Plaintiff alleges facts to support a breach of the NVLW. .................10

        1. Florida Plaintiffs (Ay, Garland) .......................................................12

        2. Illinois Plaintiffs (Chauhan, Dahlke) ...............................................12

        3. Massachusetts Plaintiff (Elwin) ........................................................13

        4. Michigan Plaintiff (Nace).................................................................14

        5. Minnesota Plaintiffs (Johnson, Bents) ..............................................14

        6. New Jersey Plaintiff (Barron) ..........................................................15

        7. New York Plaintiff (Maurer).............................................................15

        8. North Carolina Plaintiffs (Desotelle, Nyiri).......................................16

        9. Ohio Plaintiff (Ellis).........................................................................17

        10. Pennsylvania Plaintiff (Bonarrigo) .................................................17

        11. Tennessee Plaintiffs (Lycan, Thomas)............................................18

    B.  Plaintiffs' latent defect theory does not save their claims......................18

    C.  The NVLW did not fail in its essential purpose.....................................20

    D.  Plaintiffs fail to plead notice for their state warranty claims. .................21

    E.  Plaintiffs fail to state a Magnuson-Moss Warranty Act claim................23

        1. Plaintiffs fail to plead any predicate warranty claim. ........................23

        2. Plaintiffs did not give Ford an opportunity to cure............................24

        3. Plaintiffs did not resort to Ford's dispute resolution procedure. ........25

III. The fraud-based claims are deficient.................................................................26

    A.  Plaintiffs' misrepresentation theory fails. ..............................................27

        1. Plaintiffs identify no lug nut-specific representations. .......................27

        2. Plaintiffs rely on non-actionable puffery. .........................................29

        3. Plaintiffs did not plead injuries caused by a misrepresentation.........30

B.   Plaintiffs' omission theory fails. ...........................................................31

   1. Plaintiffs fail to plead an omission that was material. .......................33

   2. Plaintiffs fail to plead superior or exclusive knowledge....................34

   3. Plaintiffs fail to plead active concealment. ........................................36

   4. Plaintiffs fail to plead any partial representation. ..............................37

   5. Plaintiffs fail to plead an actionable safety defect. ............................38

C.   The economic loss doctrine bars several claims. ....................................41

D.   Several individual claims fail for additional reasons. .............................42

E.   Several Plaintiffs fail to implicate Ford. ................................................44

IV. The unjust enrichment claims are deficient. .....................................................45

A.   Ford did not unjustly retain a benefit. ....................................................45

B.   The NVLW and adequate legal remedies preclude relief. ......................48

V.  Many claims are untimely..................................................................................50

A.   Several warranty-based claims are time-barred. ....................................50

B.   Several fraud-based claims are time-barred. ..........................................52

C.   Tolling is unavailable. ............................................................................53

D.   Equitable estoppel is unavailable. ..........................................................55

CONCLUSION ........................................................................................................56

# INDEX OF AUTHORITIES

## <u>CASES</u>

*679637 Ontario Ltd. v. Alpine Sign & Printer Supply, Inc.*,
   No. 16-12866, 2018 WL 287956 (E.D. Mich. Jan. 3, 2018) .............................11

*A & M Supply Co. v. Microsoft Corp.*,
   No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008) ........................47

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986).............................................................................20

*Adams v. U.S. Airways, Inc.*,
   No. CIV 10-1088-PHX-DKD, 2011 WL 644089 (D. Ariz. Feb. 11, 2011).......46

*Adamson v. Ortho-McNeil Pharm., Inc.*,
   463 F. Supp. 2d 496 (D.N.J. 2006) ...................................................................50

*Affordable Cmtys. of Mo. v. Fed. Nat. Mortg. Ass'n*,
   714 F.3d 1069 (8th Cir. 2013) ..........................................................................49

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
   738 F.3d 1350 (Fed. Cir. 2013)...........................................................................8

*Allstate Ins. Co. v. Gen. Motors Corp.*,
   56 U.C.C. Rep. Serv. 2d 241 (Minn. Dist. Ct. 2005).........................................51

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................7

*Ashland, Inc. v. Oppenheimer & Co.*,
   648 F.3d 461 (6th Cir. 2011)..............................................................................40

*Bardin v. Daimlerchrysler Corp.*,
   136 Cal. App. 4th 1255 (2006) ..........................................................................38

*Beck v. FCA US LLC*,
   No. 17-CV-10267, 2017 WL 3448016 (E.D. Mich. Aug. 11, 2017).......... passim

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................7

*Bickerstaff v. Lucarelli*,
   830 F.3d 388 (6th Cir. 2016)................................................................................7

*Blystra v. Fiber Tech Grp., Inc.*,
   407 F. Supp. 2d 636 (D.N.J. 2005) ...................................................................50

*Booe v. Shadrick*,
   322 N.C. 567 (1988) (NC) .................................................................49

*Boston v. Estate of Clark*,
   No. 11-14935, 2012 WL 4048877 (E.D. Mich. Sept. 13, 2012) ......................45

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*,
   226 F. Supp. 2d 557 (D.N.J. 2002) .......................................................41

*Bright v. Gallia Cnty.*,
   753 F.3d 639 (6th Cir. 2014).................................................................7

*Bussian v. DaimlerChrysler Corp.*,
   411 F. Supp. 2d 614 (M.D.N.C. 2006) ...................................................42

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
   94 Cal. App. 4th 151 (2001) ...............................................................48

*Caldas v. Affordable Granite & Stone, Inc.*,
   820 N.W.2d 826 (Minn. 2012)..............................................................50

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   No. 12 C 7782, 2013 WL 3866507 (N.D. Ill. July 25, 2013) ...........................44

*Canal Elec. Co. v. Westinghouse Elec. Co.*,
   973 F.2d 988 (1st Cir.1992) ................................................................19

*Certified Fire Prot. Inc. v. Precision Constr.*,
   283 P.3d 250 (Nev. 2012) ...................................................................47

*Chaudoin v. Thor Motor Coach, Inc.*,
   No. 15-13871, 2017 WL 3485803 (E.D. Mich. Aug. 15, 2017).......................43

*Chesbrough v. VPA, P.C.*,
   655 F.3d 461 (6th Cir. 2011)................................................................27

*Cipollone v. Liggett Group, Inc.*,
   505 U.S. 504 (1992).........................................................................10

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011)................................................................45

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ..........................................................19, 33

*Coleman v. Watts*,
   87 F. Supp. 2d 944 (D. Ariz. 1998) .......................................................31

*Columbia/HCA Healthcare Corp. v. Cottey*,
   72 S.W.3d 735 (Tex. Ct. App. 2002) ......................................................31

*Commonwealth of Kentucky v. Marathon Petroleum Co., LP*,
   191 F. Supp. 3d 694 (W.D. Ky. 2016) ................................................................47

*Connick v. Suzuki Motor Co., Ltd.*,
   675 N.E.2d 584 (Ill. 1996) ................................................................22

*Cosman v. Ford Motor Co.*,
   674 N.E.2d 61 (Ill. Ct. App. 1996) ......................................................51

*Cummins Law Office, P.A. v. Norman Graphic Printing Co.*,
   826 F. Supp. 2d 1127 (D. Minn. 2011) ................................................50

*Darne v. Ford Motor Co.*,
   No. 13-CV-03594, 2017 WL 3836586 (N.D. Ill. Sept. 1, 2017) .................. 11, 13

*Del Mar Land Partners, LLC v. Stanley Consultants, Inc.*,
   No. CV-11-8013-PCT-PGR, 2012 WL 1019066 (D. Ariz. Mar. 26, 2012) ........41

*Dineen v. Pella Corp.*,
   No. 2:14-CV-03479-DCN, 2015 WL 6688040 (D.S.C. Oct. 30, 2015) ..............56

*Doe v. Univ. of the South*,
   687 F. Supp. 2d 744 (E.D. Tenn. 2009) ................................................49

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) .............................................. 45, 47

*Durbin v. Ross*,
   916 P.2d 758 (Mont. 1996) ................................................................31

*Dynalectric Co. v. Whittenberg Constr. Co.*,
   No. 5:06-CV-208-M, 2010 WL 11549153 (W.D. Ky. Feb. 18, 2010) ...............48

*Egerer v. Woodland Realty, Inc.*,
   556 F.3d 415 (6th Cir. 2009) ................................................................55

*Elegant Homes of Va., Inc. v. Boberski*,
   No. CL05–10, 2006 WL 2949005 (Va. Cir. Apr. 13, 2006) ..........................50

*Embree Const. Group Inc. v. Rafcor, Inc.*,
   411 S.E.2d 916 (N.C. 1992) ................................................................50

*Fed. Deposit Ins. Corp. v. W.R. Grace & Co.*,
   877 F.2d 614 (7th Cir. 1989) ................................................................32

*First Commodity Traders, Inc. v. Heinold Commodities, Inc.*,
   591 F. Supp. 812 (N.D. Ill. 1984) ........................................................48

*Flynn v. Am. Home Prods. Corp.*,
   627 N.W.2d 342 (Minn. Ct. App. 2001) ................................................31

*Francis v. Mead Johnson & Co.*,
   No. 1:10-CV-00701-JLK, 2010 WL 5313540 (D. Colo. Dec. 17, 2010)............49

*Garcia v. Chrysler Group LLC*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015)....................................................23

*Gason v. Dow Corning Corp.*,
   170 F. Supp. 3d 989 (E.D. Mich. 2016)...............................................31

*Goldemberg v. Johnson & Johnson Consumer Cos, Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014).......................................................50

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
   525 F. App'x 94 (3d Cir. 2013) ...........................................................36

*Great Plains Tr. Co. v. Union Pac. R. Co.*,
   492 F.3d 986 (8th Cir. 2007)................................................................54

*Grosse Pointe Law Firm, PC v. Jaguar Land Rover N. Am., LLC*,
   317 Mich. App. 395 (2016).................................................................11

*Guarantee Elec. Co. v. Big Rivers Elec. Corp.*,
   669 F. Supp. 1371 (W.D. Ky. 1987)....................................................49

*Guinn v. Hoskins Chevrolet*,
   361 Ill. App. 3d 575 (2005)................................................................49

*Harlan v. Packaging Corp. of Am.*,
   No. CV1600077RBKKMW, 2017 WL 3894965 (D.N.J. Sept. 6, 2017) ..........49

*Haskins v. Symantec Corp.*,
   654 F. App'x 338 (9th Cir. 2016) ........................................................29

*Heise v. Pilot Rock Lumber Co.*,
   352 P.2d 1072 (Or. 1960)....................................................................31

*Hess v. Chase Manhattan Bank, USA N.A.*,
   220 S.W.3d 758 (Mo. 2007) ...............................................................31

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ..............................................42

*Hughes v. Vanderbilt Univ.*,
   215 F.3d 543 (6th Cir. 2000)...............................................................13

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) ........................................................................49

*In re Aftermarket Filters Antitrust Litig.*,
   No. 08 C 4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ................47

*In re Apple & AT & T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ..............................................50

*In re Auto. Parts Antitrust Litig.*,
  50 F. Supp. 3d 836 (E.D. Mich. 2014)................................................46

*In re Capacitors Antitrust Litig.*,
  106 F. Supp. 3d 1051 (N.D. Cal. 2015) ..........................................8, 24

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
  No. 03–4558, 2010 WL 2813788 (D.N.J. July 9, 2010)....................46

*In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*,
  No. MDL 1718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007) .............. 26, 37

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
  664 F. Supp. 2d 752 (E.D. Mich. 2009)..............................................49

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  350 F. Supp. 2d 160 (D. Me. 2004) ...................................................48

*In re OnStar Contract Litig.*,
  600 F. Supp. 2d 861 (E.D. Mich. 2009)................................ 19, 25, 30

*In re Processed Egg Prod. Antitrust Litig.*,
  931 F. Supp. 2d 654 (E.D. Pa. 2013) .................................................55

*In re Refrigerant Compressors Antitrust Litig.*,
  No. 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) ...............46

*In re Takata Airbag Prod. Liab. Litig.*,
  193 F. Supp. 3d 1324 (S.D. Fla. 2016) .................................. 41, 46, 48

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
  490 F. Supp. 2d 1091 (D. Nev. 2007)..................................................49

*Indiana State Dist. Council of Laborers v. Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009)..............................................................26

*Jackson v. Eddy's LI RV Ctr., Inc.*,
  845 F. Supp. 2d 523 (E.D.N.Y. 2012) ................................................53

*Jimenez v. Ford Motor Credit Co.*,
  No. 322909, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015) ......................43

*Johnson v. KB Home*,
  720 F. Supp. 2d 1109 (D. Ariz. 2010) ......................................... 46, 48

*Johnson v. Microsoft Corp.*,
  834 N.E.2d 791, 799 (Ohio 2005)......................................................47

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013)................................................................42

*Kaloti Enters., Inc. v. Kellogg Sales Corp.*,
    699 N.W.2d 205 (Wis. 2005)...........................................................................31

*Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*,
    65 F.3d 498 (6th Cir. 1995)...............................................................................49

*Kuns v. Ford*,
    543 F. App'x 572 (6th Cir. 2013) ....................................................................24

*L. Zingerman, D.D.S., P.C. v. Nissan N. Am. Inc.*,
    No. 14 C 7835, 2015 WL 1840952 (N.D. Ill. 2015)........................................26

*Lassen v. Nissan N. Am., Inc.*,
    211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...........................................................40

*Leasepartners Corp. v. Robert L. Brooks Trust*,
    942 P.2d 182 (Nev. 1997) .................................................................................49

*Liss v. Lewiston-Richards, Inc.*,
    478 Mich. 203 (2007)........................................................................................43

*Litman, Asche & Gioiella, LLP v. Chubb Custom Ins. Co.*,
    373 F. Supp. 2d 314 (S.D.N.Y. 2005)...............................................................46

*MacDonald v. Thomas M. Cooley Law Sch.*,
    724 F.3d 654 (6th Cir. 2013).............................................................................32

*Maietta v. Ford Motor Co.*,
    No. 96 C 8347, 1997 WL 162894 (N.D. Ill. Mar. 24, 1997) ...........................45

*Maniscalco v. Brother Int'l (USA) Corp.*,
    709 F.3d 202 (3d Cir. 2013)..............................................................................23

*Marchionna v. Ford Motor Co.*,
    No. 94 C 275, 1995 WL 476591 (N.D. Ill. Aug. 10, 1995)..............................24

*McMullen v. Joldersma*,
    174 Mich. App. 207 (1988)...............................................................................31

*McQueen v. BMW of N. Am., LLC*,
    No. 12–06674, 2014 WL 656619 (D.N.J. Feb. 20, 2014) ................................36

*Merkin v. Honda N. Am., Inc.*,
    No. 17CV03625PGSDEA, 2017 WL 5309623 (D.N.J. Nov. 13, 2017) ...........47

*Meyer v. Laser Vision Inst.*,
    714 N.W.2d 223 (Wis. Ct. App. 2006) ............................................................49

*Minger v. Green*,
   239 F.3d 793 (6th Cir. 2001)................................................................26

*Mitchell v. Moore*,
   729 A.2d 1200, 1203 (Pa. Super. 1999)..............................................47

*Morrison v. Marsh & McLennan Companies, Inc.*,
   439 F.3d 295 (6th Cir. 2006)..............................................................37

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) .......................................42, 43

*Murillo v. Kohl's Corp.*,
   197 F. Supp. 3d 1119 (E.D. Wis. 2016)..............................................44

*Murphy v. Proctor & Gamble Co.*,
   695 F. Supp. 2d 600 (E.D. Mich. 2010) .............................................41

*Mydlach v. DaimlerChrysler Corp.*,
   226 Ill. 2d 307 (2007) ........................................................................11

*Nejo v. Tamaroff Buick Honda Isuzu Nissan*,
   88 F. App'x 881 (6th Cir. 2004) .........................................................39

*O'Connor v. Boeing N. Am., Inc.*,
   311 F.3d 1139 (9th Cir.2002) .............................................................54

*Ocana v., Ford Motor Co.*,
   992 So. 2d 319 (Fla. Dist. Ct. App. 2008) .........................................12

*Ohio Valley Health Servs. & Educ. Corp. v. Riley*,
   149 F. Supp. 3d 709 (N.D.W. Va. 2015) ............................................49

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*,
   No. 08-4133-CV-C-SOW, 2009 WL 10671349 (W.D. Mo. Aug. 21, 2009)......50

*Pacamor Bearings, Inc. v. Minebea Co.*,
   918 F. Supp. 491 (D.N.H. 1996).........................................................8

*Patterson v. Rite Aid Corp Hdqtrs.*,
   752 F. Supp. 2d 811 (N.D. Ohio 2010)...............................................49

*Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*,
   505 F. Supp. 2d 1272 (M.D. Ala. 2007) .............................................49

*Petty v. Marvin Lumber & Cedar Co.*,
   2014 WL 4854292 (E.D.N.C. Sept. 4, 2014).......................................51

*Pilar Servs., Inc. v. NCI Info. Sys., Inc.*,
   569 F. Supp. 2d 563 (E.D. Va. 2008) .................................................49

*Prohias v. Pfizer, Inc.*,
490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...............................................................49

*Puttkammer v. Minth*,
266 N.W.2d 361 (Wis. 1978) ...............................................................................47

*Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*,
555 F. App'x 493 (6th Cir. 2014) ........................................................................30

*Randolph v. New England Mut. Life Ins. Co.*,
526 F.2d 1383 (6th Cir. 1975) .............................................................................50

*Rawlings v. Rawlings*,
240 P.3d 754 (Utah 2010) ....................................................................................47

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012)........................................................................ 26, 31

*Rice v. Electrolux Home Prod., Inc.*,
No. 4:15-CV-00371, 2015 WL 4545520 (M.D. Pa. July 28, 2015) ...................49

*Roadmaster Indus., Inc. v. Columbia Mfg. Co.*,
893 F. Supp. 1162 (D. Mass. 1995) .....................................................................44

*Rochester-Genesee Reg'l Trans. Auth. v. Cummins Inc.*,
2010 WL 2998768 (W.D.N.Y. 2010) ..................................................................51

*Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*,
No. 260320, 2007 WL 1264008 (Mich. Ct. App. May 1, 2007) ........................49

*RSB Vineyards, LLC v. Orsi*,
15 Cal. App. 5th 1089, 223 Cal. Rptr. 3d 458 (Ct. App. 2017)..........................31

*Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*,
491 F.3d 522 (6th Cir. 2007)...............................................................................31

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................33

*Sanderson v. HCA-The Healthcare Co.*,
447 F.3d 873 (6th Cir. 2006)........................................................................ 26, 29

*Santos v. SANYO Mfg. Corp.*,
No. 12-11452, 2013 WL 1868268 (D. Mass. May 3, 2013)................................14

*Sassafras Enters., Inc. v. Roshco, Inc.*,
915 F. Supp. 1 (N.D. Ill. 1996) .............................................................................8

*Sater v. Chrysler Grp. LLC*,
No. EDCV 14-00700, 2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ..............8, 48

xiv

*Schechner v. Whirlpool Corp.*,
    237 F. Supp. 3d 601 (E.D. Mich. 2017)................................................48

*Schiesser v. Ford Motor Co.*,
    No. 16 C 730, 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) ..................... 13, 29

*Sharp v. Laubersheimer*,
    347 N.W.2d 268 (Minn. 1984)..............................................................49

*Sheris v. Nissan N. Am. Inc.*,
    No. 07-2516, 2008 WL 2354908 (D.N.J. 2008) ......................................26

*Sherrin v. Nw. Nat. Life Ins. Co.*,
    2 F.3d 373 (11th Cir. 1993)..................................................................31

*Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*,
    836 S.W.2d 907 (Ky. Ct. App. 1992) ...................................................45

*Skrupsky v. Elbert*,
    526 N.W.2d 264 (Wis. Ct. App. 1994) .................................................53

*Small v. Univ. Med. Ctr. of S. Nev.*,
    No. 213CV00298APGPAL, 2016 WL 4157309 (D. Nev. Aug. 3, 2016)...........50

*Smith v. Ford Motor Co.*,
    462 F. App'x 660 (9th Cir. 2011) .......................................................41

*Smith v. Globe Life Ins. Co.*,
    460 Mich. 446 (1999)........................................................................43

*Snyder v. Farnam Cos., Inc.*,
    792 F. Supp. 2d 712 (D.N.J. 2011) ......................................................46

*Spence v. Griffin*,
    236 Va. 21 (1988) ............................................................................27

*Stanford v. Ronald H. Mayer Real Estate, Inc.*,
    849 P.2d 921 (Colo. App. 1993) .........................................................48

*Stevens v. Thacker*,
    550 F. Supp. 2d 161 (D. Mass. 2008) ..................................................47

*Stockdall v. TG Investments, Inc.*,
    129 F. Supp. 3d 871 (E.D. Mo. 2015)...................................................47

*Taragan v. Nissan N.A., Inc.*,
    No. C 09-3660, 2013 WL 3157918 (N.D. Cal. June 20, 2013)................... 34, 35

*Temple v. Fleetwood Enterprises, Inc.*,
    133 F. App'x 254 (6th Cir. 2005) .......................................................24

*Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*,
   96 F.3d 174 (6th Cir. 1996)...................................................................49

*Thorpe v. Washington City*,
   243 P.3d 500 (Utah App. 2010) ...........................................................50

*Tietsworth v. Harley-Davidson, Inc.*,
   270 Wis. 2d 146 (Wis. 2004) ...............................................................42

*Toone v. Wells Fargo Bank, N.A.*,
   716 F.3d 516 (10th Cir. 2013) .............................................................29

*Total Indus. Plant Servs., Inc. v. Turner Indus. Grp., LLC*,
   368 Mont. 189 (2013) ..........................................................................49

*U.S. Fid. v. U.S. Sports Specialty*,
   270 P.3d 464 (Utah 2012) ....................................................................49

*U.S. Welding, Inc. v. Battelle Energy All., LLC*,
   728 F. Supp. 2d 1110 (D. Idaho 2010) ................................................48

*United Jersey Bank v. Kensey*,
   704 A.2d 38 (N.J. Super. App. Div. 1997) .........................................31

*View Point Med. Sys., LLC v. Athena Health, Inc.*,
   9 F. Supp. 3d 588 (D. Md. 2014) .........................................................48

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
   673 F. Supp. 2d 1073 (E.D. Cal. 2009)................................................42

*Walther v. Gen. Motors Co.*,
   No. WOCV200902491, 2011 WL 4424066 (Mass. Super. July 29, 2011)........14

*Welu v. Twin Hearts Smiling Horses, Inc.*,
   386 Mont. 98 (2016) .............................................................................50

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002)..................................................................42

*White v. Microsoft Corp.*,
   454 F. Supp. 2d 1118 (S.D. Ala. 2006)................................................48

*William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*,
   677 F. App'x 979 (6th Cir. 2017) ........................................................32

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ............................................... 33, 38, 41

*Woods v. Google, Inc.*,
   889 F. Supp. 2d 1182 (N.D. Cal. 2012) ...............................................42

*Woolums v. Nat'l RV*,
    530 F. Supp. 2d 691 (M.D. Pa. 2008) .................................................................12

*Xi Chen Lauren v. PNC Bank, N.A.*,
    296 F.R.D. 389 (W.D. Pa. 2014) .................................................................8, 23

*Zanger v. Gulf Stream Coach, Inc.*,
    2015 WL 2769007 (E.D. Mich. Oct. 25, 2005) .................................................14

*Zanger v. Gulf Stream Coach, Inc.*,
    No. 05-72300, 2006 WL 1494952 (E.D. Mich. May 25, 2006) .........................23

*Zaremba v. Marvin Lumber and Cedar Co.*,
    458 F. Supp. 2d 545 (N.D. Ohio 2006).............................................................51

*Zirkle v. City of Kingston*,
    396 S.W.2d 356 (Tenn. 1965).............................................................................50

## STATUTES

15 U.S.C. § 2304(a)(4) ...............................................................................................24

15 U.S.C. § 2310 .........................................................................................................25

42 Pa. Cons. Stat. § 5524(7) .......................................................................................53

49 U.S.C. § 30112(a) ..................................................................................................43

720 ILCS 295/1A ..........................................................................................................8

735 ILCS 5/13-205 ......................................................................................................52

810 ILCS 5/2-725 ................................................................................................. 50, 51

815 ILCS 505/10a(e) ...................................................................................................52

Ala. Code § 8-19-14 ....................................................................................................52

Ariz. Rev. Stat. Ann. § 12-541(5) ...............................................................................52

Cal. Civ. Code § 1783 .................................................................................................52

Cal. Civ. Proc. Code § 338 .........................................................................................52

Fla. Stat. § 95.031(2)(a) ..............................................................................................52

Fla. Stat. § 95.11 ................................................................................................... 51, 52

Idaho Code § 48-619 ...................................................................................................52

Idaho Code § 5-218(4) ................................................................................................52

Ky. Rev. Stat. § 367.220(1) ........................................................................................52

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq....................... 3, 10, 23, 25

Mass. Gen. Laws ch. 106 § 2-318 ................................................................51

Mass. Gen. Laws ch. 260 § 5A ...................................................................52

Md. Code Ann. Cts. & Jud. Proc. § 5-101 ..................................................52

Mich. Comp. Laws § 440.2725 ...................................................................51

Mich. Comp. Laws § 445.904(1)(a) ............................................................43

Minn. Stat. § 336.2–725(1) .........................................................................51

N.C. Gen. Stat. § 1-52(9) ............................................................................52

N.C. Gen. Stat. § 25-2-725(1) .....................................................................51

N.C. Gen. Stat. § 75-16.2 ............................................................................52

N.J. Stat. § 12A:2-725 .................................................................................51

N.Y. C.P.L.R. § 213(8) ................................................................................52

N.Y. C.P.L.R. § 214(2) ................................................................................52

N.Y. U.C.C. § 2-725(1) ...............................................................................51

O.R.C.A. § 2305.09(D) ...............................................................................51

Ohio Rev. Code Ann. § 1345.10(C) ...........................................................52

Ohio Rev. Code Ann. § 2305.09(C) ...........................................................52

Or. Rev. Stat. § 12.110(1) ...........................................................................53

Or. Rev. Stat. § 646.638(6) .........................................................................53

Tenn. Code Ann. § 28-3-104 .......................................................................51

Tenn. Code Ann. § 28-3-105(1) ..................................................................53

Tenn. Code Ann. § 47-18-110 .....................................................................53

Va. Code Ann. § 59.1-204.1(A) ..................................................................53

Va. Code Ann. § 8.01 ..................................................................................53

W. Va. Code Ann. § 55-2-12 .......................................................................53

Wis. Stat. § 100.18(11)(b)(3) ......................................................................53

## **RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................... 7

Fed. R. Civ. P. 8(a)(2) ...................................................................... 7

Fed. R. Civ. P. 9(b) .............................................................. 26, 31, 32, 45

## **REGULATION**

49 C.F.R. § 571 ............................................................................... 43

## INTRODUCTION

The 36 vehicle owners and lessors who now bring this action are disappointed that their lug nuts are not indestructible. But their economic frustrations do not support a nationwide class action on behalf of millions of vehicle owners under any viable theory. Plaintiffs attempt to frame their claims as involving undisclosed safety defects. But without an allegation that the purported defect has caused physical injury to any person or property, they cannot (and appropriately do not) bring product-liability claims. Instead, pleading purely economic harm, Plaintiffs attempt to cast their product-defect allegations as warranty, fraud, and unjust-enrichment claims. These claims fail, and must be dismissed, because Plaintiffs received exactly what they bargained for: a vehicle with a limited repair warranty, under which Ford agreed to replace covered parts that fail or malfunction pursuant to the terms of the warranty.

In providing new vehicle warranties, Ford never promised that its lug nuts would last forever. To the contrary, Ford disclosed that its vehicles may contain defects and disclaimed any obligation to redesign replacement parts that function properly. Here, no Plaintiff pleads a valid warranty claim because none of them alleges that Ford charged for replacement lug nuts after they presented their vehicle during the warranty period with lug nuts that had failed or malfunctioned.

Plaintiffs' fraud-based claims fare no better. Plaintiffs do not identify any

representation about lug nuts, much less a *mis*representation, and the vague statements about vehicle "quality, reliability, and safety" they do rely on are textbook puffery. In support of an omission theory, Plaintiffs allege that Ford was duty-bound to disclose a "safety" risk in their lug nuts, but that risk—waiting for a tow truck on the side of the road—would not be attributable to the lug nuts, but to a flat tire, which can happen to any vehicle at any time for any number of reasons. And based on the pleading, this risk has never manifested in injury for *anyone*. At best, Plaintiffs allege that their lug nuts create a risk of prolonged inconvenience for someone at some future date, which does not trigger a duty to disclose.

Plaintiffs' unjust enrichment claims also fail. Ford does not benefit from indirect purchases, and Plaintiffs do not allege that they paid for higher-quality lug nuts than they actually received, so no benefit was conferred unjustly. Moreover, Ford's warranty governs the relationship and determines which party bears the cost of repair, and adequate legal remedies are available in the event of a breach.

For these and other reasons developed below, the Court should dismiss the complaint in its entirety with prejudice.[1]

---

[1] For the Court's benefit, Ford has attached a chart summarizing all bases for dismissal. *See* ECF 19-2.

## STATEMENT OF ALLEGED FACTS[2]

Plaintiffs from 27 states bring claims on behalf of themselves and others who, over an unspecified period, bought or leased new or used Ford vehicles equipped with what they describe as "two-piece capped" lug nuts. They assert 120 claims, including 53 state-law consumer-protection claims; 27 fraudulent-concealment claims; 27 unjust-enrichment claims; 12 warranty-based claims; and 1 false-advertising claim. Plaintiffs seek to certify not only classes of consumers from their home states, but also putative classes under the consumer-protection laws of the 23 states where none of them reside, and a nationwide class under the Magnuson-Moss Warranty Act.

Plaintiffs' theory is that Ford was duty-bound to sell defect-free vehicles, to disclose and correct every post-sale defect discovered or "cease selling the vehicle[s]" altogether, and to "stand by [its] warranty," apparently *forever*, despite express time and mileage limitations. ECF 14 ¶ 1. As the purported defect, Plaintiffs allege that, over time (almost always outside the warranty period), the lug nuts swell and delaminate to the point where they cannot be removed by the Ford-supplied wrench. *Id.* ¶ 3.

Plaintiffs allege that their lug nuts somehow deprived them of a vehicle that

---

[2] For the Court's benefit, Ford has attached a chart breaking down the factual allegations of each Plaintiff. *See* ECF 19-3. Ford does not stipulate to the accuracy of the allegations and will answer the complaint if and when it is required to do so.

"functions properly and safely for its advertised use and is free from defects." *Id.*
¶ 1. For the most part, however, Plaintiffs learned of the purported defect during
routine maintenance or while already at a repair shop for other reasons. *See, e.g.*,
*id.* ¶¶ 143, 195, 218, 287. Some (but not all) purchased new lug nuts, either at the
shop or over the Internet. *See, e.g.*, *id.* ¶¶ 55, 111, 203, 226. A few Plaintiffs allege
that they learned of the lug nut condition during a tire change, *e.g.*, *id.* ¶¶ 48, 55,
202, 211, and one learned while attempting to change a flat tire on the side of the
road, *id.* ¶ 76. Two had their vehicles towed to a repair facility where they paid
someone to remove and replace their lug nuts. *Id.* ¶¶ 186–188, 255–56. No Plaintiff
was injured. Plaintiffs allege generically with respect to the entire class that Ford
had "notice of their concerns" and was asked by unidentified people to "follow-
up," but refused to replace lug nuts under the warranty. *Id.* ¶¶ 329–38.

In its New Vehicle Limited Warranty ("NVLW"), Ford (1) disclaims that its
vehicles are "defect free"; (2) disclaims any obligation to redesign replacement
parts that function properly as originally designed; and (3) promises to replace for
free parts that malfunction or fail within three years or 36,000 miles, whichever
comes first, so long as the vehicle was "properly operated and maintained" and
"taken to a Ford dealership for a warranted repair during the warranty period." *Id.*
¶¶ 330, 332; ECF 14-14 (Ford's NVLW), PgID 1131–32. Ford also identifies what
falls outside the NVLW's coverage, including damage caused by "misuse,"

4

"deterioration" from "exposure to the elements," and "normal wear and tear." ECF 14-14, PgID 1135–36. Only one Plaintiff who brings a warranty claim alleges that his vehicle is "still covered by the manufacturer's warranty," but even he did not present his vehicle to the dealership when he made the request, as the NVLW requires. ECF 14 ¶¶ 221, 225, 227.

The NVLW also informs consumers about a complimentary roadside assistance program, which is separate from the NVLW: "It begins at the warranty start date and lasts for five years or 60,000 miles (whichever occurs first)." ECF 14-14; PgID 1139. Even after this period, "Ford will provide a refund for the tow charge" if "the vehicle disablement is later found to be covered by another Ford warranty." *Id*. Here, two Plaintiffs allege that they called tow trucks, *see id*. ¶¶ 186, 255, so their towing costs may have been covered by this program.

In support of their fraud-based claims, Plaintiffs allege that Ford knew that its lug nuts were defective but somehow concealed the alleged defect by misrepresenting or omitting material facts, including through (1) materials that described Ford vehicles as "attractive and stylish," *e.g.*, *id*. ¶¶ 299–304; (2) Ford's website, *e.g.*, *id*. ¶ 29; (3) conversations with dealership salespeople about vehicle "quality, safety, and reliability," *e.g.*, *id*. ¶ 223; (4) anonymous online reviews, *id*. ¶ 81; (5) third-party websites, *e.g.*, *id*. ¶ 277; and (6) test-drives of similar vehicles, *e.g.*, *id*. ¶ 200. Plaintiffs allege that they made their purchase decisions based on

5

their belief in, and Ford's active promotion of, the quality, safety, and reliability of Ford vehicles. *See, e.g.*, *id.* ¶ 34. Although Plaintiffs drove their cars for tens of thousands of miles without incident, they allege that, had Ford informed them that "defects" posed safety risks that could "prevent the full use" of their vehicles, Plaintiffs would not have purchased them. *See, e.g.*, *id.* ¶ 262.

Plaintiffs plead a variety of economic damage theories. Most allege that they overpaid for their vehicles at the time of sale. *See, e.g.*, *id.* ¶ 61. Most claim future economic harm because their vehicles have allegedly diminished in value, *e.g.*, *id.* ¶ 80, or may diminish in value, *e.g.*, *id.* ¶ 35, and they may incur costs for future repairs, *e.g.*, *id.* ¶ 15. Those who incurred out-of-pocket loss generally paid between $20 and $200, *e.g.*, *id.* ¶¶ 17, 152, with an outlier at $2,113.96, *id.* ¶ 97.

The allegations range from the conjectural ("when drivers are lucky enough not [to] be injured or killed," ¶ 310), to the theoretical (diminished resale value as alleged harm for a *leased* car, ¶ 199), to the inconceivable ("Ford salespeople" at a Buick GMC dealership, ¶ 54). Some allegations are irrelevant (anonymous complaints on third-party websites, ¶¶ 313–25), while others are nonsensical (out-of-pocket expenses as alleged harm for unnecessary lug nut purchases, ¶¶ 90, 265). Viewed as a whole, Plaintiffs' complaint reads more like a press release than a collection of clear, straightforward factual allegations entitling them to relief.

## ARGUMENT

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), courts accept non-conclusory allegations in the complaint as true. *Bright v. Gallia Cty.*, 753 F.3d 639, 652 (6th Cir. 2014).[3] The Court, drawing on its "judicial experience and common sense," must be able to reasonably infer from those well-pleaded facts that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Only "direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory" suffice. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). Deficient claims should be exposed and dismissed early to prevent unnecessary "expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). This is especially true with respect to claims for class relief. *Cf. Beck v. FCA US LLC*, No. 17-CV-10267, 2017 WL 3448016, at *1 (E.D. Mich. Aug. 11, 2017).

### I.    The complaint contains fundamental pleading problems.

Although Plaintiffs have quintupled their contingent and doubled the length of their pleading, deficiencies still abound. Plaintiffs still assert consumer-protection claims under the laws of 23 states where none of them reside. *See* ECF 19-2 (Counts 5, 9, 18, 19, 24–26, 34–36, 40, 41, 58, 65, 69, 74, 83, 88, 96–98, 109,

---

[3] Internal quotation marks, alterations, and citations are omitted throughout.

7

113, 120). Plaintiffs do not allege that these state laws have extraterritorial effect. *See Pacamor Bearings, Inc. v. Minebea Co.,* 918 F. Supp. 491, 504 (D.N.H. 1996); *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1358 (Fed. Cir. 2013) (applying state consumer protection law to out-of-state transactions violates the Commerce Clause); *Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014) (rejecting nationwide allegations because the plaintiff "suffered an alleged injury exclusively under Ohio law"); *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1073 (N.D. Cal. 2015) (striking nationwide class allegations because extraterritorial application of California law would violate due process). Claims for which there is no state representative should be dismissed.

Plaintiffs also include several paragraphs "for purposes of notice only" as placeholders for claims they intend to assert later. *See* ECF 14 ¶¶ 639 (GA), 739 (IN), 793 (ME), 826 (MA), 1584 (WV). They assert unjust-enrichment claims from two states that do not even "recognize unjust enrichment as an independent cause of action." *Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700, 2015 WL 736273, at *14 (C.D. Cal. Feb. 20, 2015) (CA, TX). They even bring a claim under 720 ILCS 295/1A, ECF 14 ¶¶ 686–92 (Count 30), a repealed criminal statute that "does not provide for a private right of action." *See Sassafras Enters., Inc. v. Roshco, Inc.*, 915 F. Supp. 1, 11 (N.D. Ill. 1996).

For six of the states where two named Plaintiffs reside, only one Plaintiff

actually brings claims, so the second-named Plaintiffs from those states necessarily fail to state claims. *See* ECF 14 ¶¶ 435 (Jackson-AZ), 476 (VanderMeeden-CA), 687 (Dahlke-IL), 1191 (Nyiri-NC), 1406 (Thomas-TN), 1545 (Cando-VA). For the other 21 states, the complaint includes claims not only on behalf of the named Plaintiffs who reside there, but also on behalf of *all* named Plaintiffs. *See* ECF 14, PgID 521. In effect, nearly every named Plaintiff purports to bring claims under the laws of every state.

Some Plaintiffs did not purchase or lease their vehicles in the state where they reside, *id.* ¶¶ 58 (Ay-FL), 108 (Elwin-MA), 191 (Nyiri-NC), 221 (Lycan-TN), 230 (Thomas-TN), and thus do not have viable warranty claims under the laws of their home states given the NVLW's choice-of-law provision. *See* ECF 14-14, PgID 1130 (stating that "enforceability and interpretation [of the NVLW] are governed by the law of the state in which you purchased your Ford vehicle"). These claims cannot proceed.

## II. The warranty-based claims are deficient.

Express warranty claims generally require a plaintiff to prove that the seller: "(1) made an affirmation of fact or promise or provided a description of its good; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Beck*, 2017 WL 3448016, at *15.

9

Plaintiffs premise their warranty claims on Ford's NVLW, under which Ford promises to repair or replace parts that fail or malfunction during the warranty period. *See* ECF 14 ¶ 330.[4] Yet not a single Plaintiff pleads facts from which the Court could reasonably infer that Ford breached its promise. Courts routinely reject attempts to impose liability *outside* the warranty period under the theory that products contain "latent" defects, as that would improperly convert a limited-period warranty into a lifetime one. Plaintiffs also do not plead that the NVLW failed in its essential purpose, since no one alleges that they received warranty repairs that were ineffective. Beyond these flaws, several Plaintiffs have not pleaded the requisite notice under state law. Finally, Plaintiffs' Magnuson Moss Warranty Act ("MMWA") claim cannot stand without pleading a predicate state-law claim and prerequisites like an opportunity to cure and satisfaction of Ford's informal dispute resolution procedure.

### A.   No Plaintiff alleges facts to support a breach of the NVLW.

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992). Ford's NVLW promises "warranted repair during the warranty period," which "is three years or 36,000 miles, whichever comes first."

---

[4] Certain Plaintiffs purchased extended warranties, *e.g.*, ECF 14 ¶ 65, but the complaint does not specify the terms of those warranties or if Ford provided them.

ECF 14 ¶¶ 330, 332. Ford does not warrant that its vehicles are "defect free," but "provides the [NVLW] to remedy any such defects that result in vehicle part malfunction or failure during the warranty period." *Id*. ¶ 330. To obtain a warranted repair, owners "are responsible for presenting [their] vehicle to a Ford Motor Company dealer as soon as a problem exists." ECF 14-14, PgID 1148.

The NVLW does not contain any promise that Ford's vehicles or component parts will meet any performance criteria or last for any specified period. In at least two states, repair-or-replace warranties like these do not create "express warranties" that goods will conform to any standard of quality. *See Mydlach v. DaimlerChrysler Corp*., 226 Ill. 2d 307, 320 (2007); *Darne v. Ford Motor Co.*, No. 13-CV-03594, 2017 WL 3836586, at *5 (N.D. Ill. Sept. 1, 2017); *679637 Ontario Ltd. v. Alpine Sign & Printer Supply, Inc.*, No. 16-12866, 2018 WL 287956, at *8 (E.D. Mich. Jan. 3, 2018). As one court put it:

> Goods cannot "conform" to a promise to repair or replace because such a promise says nothing about the character or quality of the goods, but rather identifies a remedy if the buyer determines that the goods are defective. . . . A promise to repair or replace . . . provides nothing more than a remedy for a product that breaks.

*Grosse Pointe Law Firm, PC v. Jaguar Land Rover N. Am., LLC*, 317 Mich. App. 395, 404 (2016).

Even courts that treat repair-or-replace warranties as express warranties acknowledge that product malfunction does not suffice to state a claim. *See, e.g.*,

11

*Woolums v. Nat'l RV*, 530 F. Supp. 2d 691, 698–99 (M.D. Pa. 2008) (reasoning that the plaintiff could not state a claim where defects were successfully repaired or were never presented for repair). Plaintiffs must instead allege that Ford failed to repair or replace lug nuts upon presentment of the vehicle to an authorized Ford dealer for a warranted repair within the sooner of three years or 36,000 miles. Of the 11 Plaintiffs who bring warranty claims, not one meets this basic burden.

### 1.    Florida Plaintiffs (Ay, Garland)

Plaintiff Ay alleges that he paid a Ford dealer to replace two lug nuts on his 2016 Ford F-150, but he does not allege that he had presented the vehicle to a Ford dealership for a warranted repair during the warranty period or that the request was refused. *See* ECF 14 ¶ 62; *Ocana v.*, *Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. Dist. Ct. App. 2008) (dismissing warranty claim absent allegation that Ford failed to adequately repair). Plaintiff Garland does not allege warranty presentment during the warranty period because she first discovered a problem with the lug nuts on her 2011 Ford Fusion seven years after purchase. ECF 14 ¶¶ 65, 69.

### 2.    Illinois Plaintiffs (Chauhan, Dahlke)

Plaintiff Chauhan pleads that "Ford refused to replace the defective lug nuts under the warranty," but he does not say when this refusal occurred or whether the warranty was operative. ECF 14 ¶ 83. He discovered the alleged defect in his 2014 Ford Fusion "approximately two years ago," though he does not allege the mileage

at the time. *Id.* Rather than present his vehicle to a Ford dealer "as soon as [the] problem exist[ed]," ECF 14-14, PgID 1148, Chauhan admitted in his original complaint that he only "[r]ecently" brought his vehicle to a dealer, ECF 1 ¶ 35,[5] and the visit was not for a warranted repair, but for an oil change and tire rotation, ECF 14 ¶ 83. Chauhan has not pleaded that the warranty applied. *See Darne*, 2017 WL 3836586, at *6 (requiring facts like mileage to plead that "the alleged issues fell within the covered period").

Plaintiff Dahlke does not allege that his 2013 Ford Focus ST, which he purchased used from a Volkswagen dealer in 2015, came with *any* warranty. ECF 14 ¶ 86. He also fails to allege that he presented his vehicle to a Ford dealer for a warranted repair within the sooner of three years or 36,000 miles or that Ford refused to replace the lug nuts under warranty. *See Schiesser v. Ford Motor Co.*, No. 16 C 730, 2017 WL 1283499, at *3–4 (N.D. Ill. Apr. 6, 2017) (dismissing warranty claim where the complaint did not allege presentment before Ford's NVLW had expired).

### 3.    Massachusetts Plaintiff (Elwin)

Plaintiff Elwin discovered the alleged defect in his 2014 Ford Fusion more

---

[5] Although the word "[r]ecently" was removed from the amended complaint, the prior admission precludes any inference that Chauhan timely presented his vehicle. *See Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000) ("Plaintiffs are bound by admissions in their pleadings[.]").

13

than three years after purchase and with 42,857 miles on the vehicle. ECF 14 ¶¶ 108, 111. The allegation that "Ford refused to replace the lug nuts under the warranty" says nothing about whether the warranty was still operative, which it plainly was not. *Id.* ¶ 111; *see Santos v. SANYO Mfg. Corp.*, No. 12-11452, 2013 WL 1868268, at *3 (D. Mass. May 3, 2013) (dismissing claim where television set malfunctioned after the warranty expired). Elwin also cannot allege that he presented his vehicle to a Ford dealer for a warranted repair during the warranty period, as the NVLW requires. *See Walther v. Gen. Motors Co.*, No. WOCV200902491, 2011 WL 4424066, at *3 (Mass. Super. July 29, 2011) (dismissing claim where the plaintiff did not comply with warranty conditions).

### 4.    **Michigan Plaintiff (Nace)**

Plaintiff Nace purchased her 2010 Ford F-150 used from Rose City Motors in 2015 but does not allege that it came with any warranty. ECF 14 ¶ 115. She thus cannot allege that she presented it for warranted repair within the warranty period. *See Zanger v. Gulf Stream Coach, Inc.*, 2005 WL 2769007, at *4 (E.D. Mich. Oct. 25, 2005) (dismissing warranty claim and noting the "warranty is effective for a limited time and only covers repair and replacement of defective parts").

### 5.    **Minnesota Plaintiffs (Johnson, Bents)**

Plaintiff Johnson discovered the alleged defect in his 2014 Ford Fusion more than three years after he entered into his lease and with 43,501 miles on the

vehicle. ECF ¶¶ 121, 125. And Plaintiff Bents alleges that he first discovered defective lug nuts on his 2013 Escape more than three years after purchase and with 69,466 miles on the vehicle. ECF 14 ¶¶ 129, 132, 136. Neither has stated a warranty claim. *See Liedtke v. Cloquet Serv. Ctr., Inc.*, 367 N.W.2d 117, 118 (Minn. Ct. App. 1985) (dismissing claim where the plaintiff did not notify the seller or return the vehicle until after the warranty had expired).

### 6.   New Jersey Plaintiff (Barron)

Plaintiff Barron's claim fails because she discovered the alleged defect in her 2013 Ford Fusion more than three years after purchase and with 45,000 miles on the vehicle. ECF 14 ¶¶ 162, 166; *see Nobile v. Ford Motor Co.*, No. 10-1890, 2011 WL 900119, at *4 (D.N.J. Mar. 14, 2011) (dismissing complaint where the named plaintiffs did not allege a malfunction or failure to repair during the warranty period); *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *5 (D.N.J. Aug. 16, 2010) (dismissing warranty claims for failure to plead vehicle presentment during the warranty period).

### 7.   New York Plaintiff (Maurer)

Plaintiff Maurer purchased two vehicles: a new 2012 Ford F-150 and a used 2017 Ford Escape. ECF 14 ¶¶ 169, 174. Maurer pleads only that he discovered the alleged defect in his F-150 at his "40,000-mile service appointment." *Id*. ¶ 173. He does not allege that he presented his F-150 for a warranted repair during the

warranty period or that Ford refused to replace his lug nuts upon presentment. With respect to his Escape, Maurer does not provide the mileage on the vehicle when he discovered the alleged defect. *Id.* ¶ 177; *Miller v. Hyundai Motor Am.*, No. 15-CV-4722, 2017 WL 4382339, at \*2 (S.D.N.Y. Sept. 29, 2017) (dismissing warranty claim based on allege breach "when her vehicle was no longer covered under the Limited Warranty").

### 8.   North Carolina Plaintiffs (Desotelle, Nyiri)

Plaintiffs Desotelle and Nyiri first discovered alleged problems with their lug nuts after their vehicle warranties had expired. Desotelle learned at a service visit more than three years and unspecified miles after he purchased his 2013 Ford Fusion. ECF 14 ¶¶ 180, 184. Given the expired warranty, "[t]he dealership told Mr. Desotelle that it would not replace the lug nuts under warranty," and Desotelle declined to replace his lug nuts at that visit. *Id.* ¶ 185. When Desotelle later got a flat tire and had to have his vehicle towed for repair, "[t]he dealership would not replace the lug nuts under the vehicle warranty," which was appropriate because the warranty had expired. *Id.* ¶¶ 186–87.[6] Plaintiff Nyiri discovered the alleged defect in his 2013 Ford Escape at a maintenance visit more than three years after purchase and with 61,362 miles on the vehicle. *Id.* ¶¶ 191, 195.

---

[6] Despite alleging that the lug nuts had "dangerously" subjected him to "injury or death," Desotelle replaced his lug nuts on only one wheel. *Id.* ¶¶ 186–88.

### 9.    Ohio Plaintiff (Ellis)

Although Ellis alleges that "Ford would not replace the lug nuts under the vehicle warranty," she does not allege that her leased 2014 Ford Fusion came with any warranty. ECF 14 ¶ 198, 203. Nor does she allege when, or after how many miles, she discovered the alleged defect. *Id*. ¶ 202. Further, "contact[ing]" the dealer for replacement lug nuts does not satisfy the vehicle presentment requirement. *Id*. ¶ 203. Her conclusory allegations are insufficient to plead a warranty claim. *See Huffman v. Electrolux Home Prod., Inc.*, No. 3:12CV2681, 2013 WL 5591939, at *2 (N.D. Ohio Sept. 30, 2013) (failure outside the warranty period precludes an express warranty claim).

### 10.    Pennsylvania Plaintiff (Bonarrigo)

Plaintiff Bonarrigo discovered the alleged defect in her 2015 Ford Expedition at her 40,000-mile oil change, though she does not allege when or at what exact mileage. ECF 14 ¶ 218. Bonarrigo also fails to allege that she asked for a warranted repair during the warranty period or that Ford refused the request upon presentment. *Werwinski v. Ford Motor Co.*, No. CIV.A. 00-943, 2000 WL 1201576, at *2 (E.D. Pa. Aug. 15, 2000), *aff'd*, 286 F.3d 661 (3d Cir. 2002) (dismissing express warranty claims by plaintiffs who never attempted to have their vehicles fixed during the warranty period).

### 11.    Tennessee Plaintiffs (Lycan, Thomas)

Plaintiff Lycan discovered the alleged defect in his 2015 Ford F-150 within the warranty period, ECF 14 ¶¶ 221, 225, but does not allege that he presented his "vehicle" for a warranted repair, as the NVLW requires, *see* ECF 14-14, PgID 1148. Instead, Lycan allegedly presented only his "lug nuts" and "asked the dealership to replace" them. ECF 14 ¶ 225. This would fully explain the dealership's alleged refusal to replace the lug nuts: "the problem with the lug nuts was not experienced at a Ford dealership." *Id*. With only a pile of lug nuts, the dealer could not have verified that they came from a Ford vehicle or that the vehicle was still under warranty. Contacting Ford Customer Care to request replacement lug nuts likewise falls short of vehicle presentment. *Id*. ¶ 227.

Plaintiff Thomas discovered the alleged defect in his 2013 Ford Escape more than three years after purchase and with 40,791 miles on his vehicle. *Id*. ¶¶ 230, 234. He does not allege vehicle presentment or dealership refusal to repair. Although Thomas's lug nuts were allegedly "worn," they apparently did not fail, since Thomas decided not to replace them. ECF 14 ¶¶ 234–35.

### B.   Plaintiffs' latent defect theory does not save their claims.

Because Plaintiffs' lug nuts almost universally outlasted their vehicle warranty periods, Plaintiffs allege that, before a warranty expires, Ford's lug nuts begin a "degenerative process" that will require replacement at some indeterminate

time: "While the process may not result in complete failure requiring immediate replacement during [the] warranty period, there can be no reasonable doubt that *the degenerative process will have begun*, and thus the defect will have manifested, within the warranty period." ECF 14 ¶ 335 (emphasis added). This "latent defect" theory is foreclosed by the warranty itself, which promises to repair or replace parts only if they malfunction or fail "during the applicable coverage period." *Id.* ¶ 330. By its terms, the NVLW does not cover parts that begin to degrade *during* the coverage period but fail only *after* it expires.

Courts across the country, including this one, agree: "To allow a customer to seek [relief] beyond the limits specified in [an express] warranty would in effect compel the manufacturer to insure all latent defects for the entire life of the product and would place a burden on the manufacturer for which it did not contract." *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009); *see also, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("Every manufactured item is defective at the time of sale in the sense that it will not last forever[.]"); *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 993 (1st Cir. 1992) ("[T]ime-limited warranties do not protect buyers against hidden defects—defects that may exist before, but typically are not discovered until after, the expiration of the warranty period."); *Cannon Techs., Inc. v. Sensus Metering Sys., Inc.*, 734 F. Supp. 2d 753, 763 (D. Minn. 2010) (reasoning that it would be

19

"non-sensical" if a "plaintiff could always claim that a defect manifesting itself after the express-warranty period was endemic to the product on the date it was purchased, and hence the product was 'defective' when bought").

Imposing liability outside the warranty period based on a manufacturer's knowledge that parts may eventually fail would render time and mileage limitations meaningless. *See Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986). After all, "the purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009). Here, the NVLW marked that point in time, and Plaintiffs received exactly what they bargained for: a promise to repair or replace covered parts that fail or malfunction under the terms of the warranty.

### C.   The NVLW did not fail in its essential purpose.

Plaintiffs allege that Ford's NVLW "fails in its essential purpose because the contractual remedy is insufficient to make [them] whole and because Ford has failed and/or refused to adequately provide the promised remedies within a reasonable time." *See*, *e.g*., ECF 14 ¶ 628. But as detailed above, not a single Plaintiff alleges that Ford refused to replace lug nuts upon presentment to a Ford dealer during the warranty period, and the contractual remedy is not "insufficient"

20

when lug nuts outlast the warranty. The warranty served its essential purpose.

To the extent Plaintiffs allege that Ford's lug nuts are "inherently defective" in design, *e.g.*, *id*. ¶ 625, such that replacement lug nuts even during the warranty could not have made them "whole," *e.g.*, *id*. ¶ 628, that theory is not viable either. "A claim that Ford failed to repair the unrepairable is a non-sequitur." *Darne*, 2017 WL 3836586, at *6. In *Darne*, involving engine parts, the court explained:

> [Plaintiff asserts] that Ford did not effectively remove, *redesign,* and replace the VE3508 vehicle's engine with one free from such inherent and permanent defects; nothing short of that could have resolved the "inherent" and "permanent" problems the plaintiffs allege. But again, Ford expressly acknowledged the possibility that the engine had defects. It did not promise a defect-free engine; it promised to repair the problems those defects caused during a limited period.

*Id.* Thus, Ford need not redesign its lug nuts to last forever. The NVLW says as much: "Nothing in this warranty should be construed as requiring defective parts to be replaced with parts of a different type *or design* than the original part, so long as the vehicle functions properly with the replacement part." ECF 14-14, PgID 1132 (emphasis added). In short, absent an allegation that Plaintiffs received replacement lug nuts and that did not function, they have not pleaded that the NVLW failed in its essential purpose.

### D. Plaintiffs fail to plead notice for their state warranty claims.

Under § 2-607(3)(a) of the Uniform Commercial Code, adopted in every state at issue here, a "buyer must *within a reasonable time* after he discovers or

should have discovered any breach notify the seller of breach or be barred from any remedy." *See, e.g.*, F.S.A. § 672.607(3)(a) (emphasis added). Satisfaction of this notice requirement must be pleaded. *See, e.g.*, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996); *In re: Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 2001 WL 1266317, at *14 (D.N.J. Sept. 30, 1997).

Plaintiffs attempt to satisfy this requirement with allegations that Ford received notice "through the receipt of numerous complaints." *See, e.g.*, ECF 14 ¶ 634. Allegations of third-party complaints are insufficient in many states, including at least Florida, Illinois, New Jersey, New York, and Pennsylvania. *See Schmidt*, 972 F. Supp. 2d at 719 (PA, NJ); *In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, 2007 WL 2421480, at *6 (E.D. Mich. Aug. 24, 2007) (FL, IL); *Connick*, 675 N.E.2d at 590 (IL); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (NY).

Most Plaintiffs who bring state warranty claims do not allege facts from which the Court could reasonably infer that they notified Ford or an authorized dealer of any breach, let alone within a reasonable time after discovering the defect. *See* ECF 14 ¶¶ 57–63 (Ay-FL), 64–70 (Garland-FL), 85–91 (Dahlke-IL), 107–13 (Elwin-MA), 114–19 (Nace-MI), 128–37 (Bents-MN), 161–67 (Barron-

22

NJ), 168–78 (Maurer-NY), 190–96 (Nyiri-NC), 214–19 (Bonarrigo-PA), 229–36 (Thomas-TN). Chauhan, who alleges that "Ford refused to replace the defective lug nuts under the warranty," likewise fails to adequately plead notice because he waited roughly two years after discovering the defect to visit a dealer. *Id.* ¶ 83.

### E.   Plaintiffs fail to state a Magnuson-Moss Warranty Act claim.

### 1.   Plaintiffs fail to plead any predicate warranty claim.

"[A] Magnuson–Moss Warranty Act claim only exists if a valid breach of warranty claim is also stated." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017). Plaintiffs, having failed to adequately plead any predicate state warranty claims, cannot pursue individual MMWA claims. *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law."); *Zanger v. Gulf Stream Coach, Inc*., No. 05-72300, 2006 WL 1494952, at *7 (E.D. Mich. May 25, 2006) (same). And having attempted to plead warranty claims under the laws of only 11 states, Plaintiffs cannot possibly represent a *nationwide* class. *See, e.g.*, *Maniscalco v. Brother Int'l (USA) Corp*., 709 F.3d 202, 209 (3d Cir. 2013) (recognizing that it would frustrate policy if one state law was applied nationwide); *Xi Chen Lauren*, 296 F.R.D. at 391 (rejecting nationwide allegations because the plaintiff "suffered an alleged injury exclusively under Ohio law"); *In re Capacitors Antitrust Litig.*,

106 F. Supp. 3d at 1073 (striking nationwide class allegations because extraterritorial application of California law would violate due process).

### 2.   Plaintiffs did not give Ford an opportunity to cure.

The MMWA claim also fails because Plaintiffs have not pleaded that they afforded a "reasonable opportunity to cure." 15 U.S.C. § 2310(e). The consumer must afford at least two chances to remedy the alleged defect. *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Marchionna v. Ford Motor Co.*, No. 94 C 275, 1995 WL 476591, at *11 (N.D. Ill. Aug. 10, 1995) (reasoning that the plurality of the word "attempts" in 15 U.S.C. § 2304(a)(4) connotes at least two tries). No Plaintiff's allegations meet that threshold here.

Plaintiffs allege that affording an opportunity to cure would be futile. *See, e.g.*, ECF 14 ¶ 367. But it is not enough to plead a subjective belief that the warrantor will be unable to cure. *See Kuns v. Ford*, 543 F. App'x 572, 576 (6th Cir. 2013) (finding no "case law indicating that this statutory requirement can be waived if a plaintiff subjectively determines that demand would be futile and does not so much as request the seller to cover the necessary repair"). In any event, Plaintiffs do not allege that new lug nuts, installed in accordance with factory instructions and with the Ford-supplied wrench, are defective. Instead, Plaintiffs assert that the purported defect in the lug nuts generally manifests in malfunction only after years on a vehicle, with untold rotations with unknown wrenches at

24

unspecified torque, meaning that new lug nuts function properly. By their own admissions, then, Plaintiffs have not pleaded futility.

Plaintiffs apparently want lifetime lug nuts, but Ford never promised those. That burden is unreasonable and impractical: "Failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself." *In re OnStar Contract Litig*., 600 F. Supp. 2d at 876. The Court should prevent that result and dismiss the MMWA claim.

### 3. Plaintiffs did not resort to Ford's dispute resolution procedure.

The MMWA allows warrantors to include informal dispute settlement mechanisms in their written warranties. If the mechanism complies with the Act's requirements and the Federal Trade Commission's associated rules, and if the written warranty requires the consumer to use the mechanism, then consumers must utilize the mechanism before filing suit. 15 U.S.C. § 2310(a)(3).

Here, the NVLW contains such mechanism: "You are required to submit your warranty dispute to the BBB AUTO LINE before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq." ECF 14-14, PgID 1130. Because Plaintiffs do not plead that they followed this mandated procedure, their MMWA claim must be dismissed. *See, e.g.*, *L. Zingerman, D.D.S., P.C. v. Nissan N. Am. Inc*., No. 14 C 7835, 2015 WL

25

1840952, at *2–3 (N.D. Ill. Apr. 20, 2015) (dismissing MMWA claim due to no alleged use of warranty-required dispute resolution mechanism); *Sheris v. Nissan N. Am. Inc.*, No. 07-2516, 2008 WL 2354908, at *8 (D.N.J. June 3, 2008) (same).

### III. The fraud-based claims are deficient.

Unable to point to any physical injuries (because there were none), and unable to assert warranty claims (because the lug nuts functioned throughout the warranty period), Plaintiffs pursue 53 consumer-protection claims and 27 fraudulent-concealment claims, all of which "sound in fraud." Allegations of fraud, including consumer-protection claims based on fraudulent misrepresentations, concealment, or omissions, must meet Rule 9(b)'s heightened pleading standard. *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001); *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009); *In re Ford*, 2007 WL 2421480, at *9 ("State consumer-fraud act claims asserted in federal court must satisfy Rule 9(b)."). Fraud claims "pose a high risk of abusive litigation," *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012), so Rule 9(b) requires plaintiffs to allege the "who, what, when, where, and how" of the fraud, *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). This high standard narrows "wide-ranging discovery to relevant matters," prevents "fishing expeditions," and puts defendants on notice so they may respond to "the particulars of their alleged misconduct" while protecting their reputations.

*Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011).

While the elements of their fraud-based claims vary,[7] Plaintiffs predicate all of them on two theories: misrepresentations or omissions of material facts about lug nuts. Their misrepresentation theory fails because Plaintiffs do not identify a single representation by Ford about lug nuts, and their omission theory fails because they allege no material facts to support a duty to disclose.

### A.   Plaintiffs' misrepresentation theory fails.

In general, to plead fraud based on misrepresentations, Plaintiffs must allege that Ford knowingly made false representations to them at or before the time of purchase, Ford intended Plaintiffs to rely on those representations, and Plaintiffs in fact relied on those representations to their detriment. *See, e.g.*, *Spence v. Griffin*, 236 Va. 21, 28 (1988).

### 1.   Plaintiffs identify no lug nut-specific representations.

In their entire 429-page, 1,645-paragraph complaint, Plaintiffs do not allege a single lug nut-specific representation by Ford, let alone a *mis*representation. Nor do Plaintiffs say that they all viewed the same materials. Instead, they cite generic

---

[7] The consumer-protection claims from at least 37 states are bare statutory recitals without corresponding facts. Only 19 of those claims incorporate allegations from a resident named Plaintiff, and even then, the Court is not required to sift through allegations in an attempt to create cognizable claims. *See* ECF 14 ¶¶ 434 (AZ), 527 (CO), 652 (ID), 686 (IL), 753 (KY), 794 (MD), 870 (MI), 920 (MN-PCFA), 926 (MN-DTPA), 978 (MO), 1010 (MT), 1050 (NV), 1086 (NJ), 1141 (NY), 1190 (NC), 1246 (OH), 1305 (OR), 1337 (PA), 1544 (VA), 1611 (WI).

photos and slogans that Ford used to advertise its vehicles, as well as nameless materials Ford purportedly provided online and in person. *See, e.g.*, ECF 14 ¶¶ 299 (photo of 2017 Ford Fusion that no Plaintiff owned, with the slogan: "We all drive. Some of us just look better doing it."), 300 ("Striking in looks, equally impactful in function."), 301 (photo of wheels available on various models), 445 (supposed "standard and uniform material" that describes Ford vehicles as "safe" and without "significant defects"). Plaintiffs also allege that Ford misrepresented facts on its website and during individual conversations with salespeople about vehicle "quality, safety, and reliability," *e.g.*, *id.* ¶ 29, within anonymous online vehicle reviews and message boards, *e.g.*, *id.* ¶¶ 81, 261, on third-party websites, *e.g.*, *id.* ¶ 277, and during test-drives of similar vehicles, *e.g.*, *id.* ¶ 200.

These allegations are insufficient, for basic reasons. The allegation that Ford misrepresented its vehicles as being "free from defects," *e.g.*, ECF 14 ¶ 399, is contradicted by the NVLW, which explicitly disclaims that "each Ford vehicle is defect free," *id.* ¶ 330. The other allegations are too generic. The slogans do not mention lug nuts, and the pictures cannot be said to "feature" lug nuts over any other aspect of the vehicle. To the extent the pictures *show* lug nuts, they do not represent their metallurgic content or suggest that lug nuts are warranted for life. Vague references to "materials" provided with Ford vehicles, "conversations with dealership salespeople," and Ford's website tell the Court absolutely nothing about

28

their content. And anonymous reviews and third-party websites have no connection to Ford whatsoever. Even if the materials happened to mention lug nuts, no Plaintiff claims to have seen them. *See, e.g.*, *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal when plaintiff "did not allege that she read and relied on a specific misrepresentation").

Plaintiffs also leave out necessary detail regarding the "time, place, and content" of the statements, the fraudulent scheme and intent, and the resulting injury. *See Sanderson*, 447 F.3d at 877. Plaintiffs do not allege the names of those who made the representations (they may not have been speaking for Ford); what specifically was said (they may have been speaking about a different feature); where the representations occurred (context is important); their consequences (the consumer may have asked follow-up questions); or when the representations were made (the statements may have been true when made or may not have factored into the purchase decision). Without these details, Plaintiffs' misrepresentation-based claims necessarily fail. *See Schiesser v. Ford Motor Co.*, No. 16 C 730, 2017 WL 1283499, at *6 (N.D. Ill. Apr. 6, 2017); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 522 (10th Cir. 2013).

### 2.    Plaintiffs rely on non-actionable puffery.

These alleged misrepresentations about vehicle quality, safety, and reliability are textbook examples of non-actionable puffery on which a consumer

cannot reasonably rely. *Beck*, 2017 WL 3448016, at *7. "Quality," "safety," and "reliability" are terms that "consistently qualify as puffery," and thus do not suffice to state a claim. *Id*.; *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 501 (6th Cir. 2014) (puffery includes a salesperson's talk in "promoting a sale" and "hyp[ing] a product beyond objective proof").

### 3.    Plaintiffs did not plead injuries caused by a misrepresentation.

Even assuming that Plaintiffs believed their lug nuts would last forever, there is no causal link between that belief and any representations by Ford about lug nuts, let alone representations about how long they would last. Regardless, that belief is unreasonable given the NVLW, which expressly contemplates defects, wear and tear, and the need for replacement parts. *See* ECF 14 ¶ 330 ("This warranty does not mean that each Ford vehicle is defect free."); *see also In re OnStar Contract Litig.*, 600 F. Supp. 2d at 877. In light of this disclosure, the Court cannot reasonably infer that Ford somehow led Plaintiffs to believe that its lug nuts would never swell or become difficult to remove, even after the warranty period. Moreover, given that there is an entire market devoted to replacement lug nuts, the existence of which Plaintiffs acknowledge, any belief that factory-installed lug nuts will never need to be replaced is unreasonable. *See, e.g.*, ECF 14 ¶¶ 173, 203, 212, 226 (after-market purchases).

## B.   Plaintiffs' omission theory fails.

To the extent Plaintiffs rely on omissions, their fraud claims fail. Omission-based claims generally require, at minimum, an injury caused by the omission of a material fact that the defendant was duty-bound to disclose.[8] Rule 9(b) requires Plaintiffs to plead "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the defendant] obtained as a consequence of the alleged fraud." *Republic Bank*, 683 F.3d at 255–56. Mere nondisclosure is generally insufficient to support a fraud claim. *Gason v. Dow Corning Corp.*, 170 F. Supp. 3d 989, 997 (E.D. Mich. 2016), *aff'd,* 674 F. App'x 551 (6th Cir. 2017). But nondisclosure is all that Plaintiffs allege here. They simply state that "[n]one of the information" they reviewed "contained any disclosure relating to any defects in the lug nuts" and "[n]one of the salespeople at the dealership disclosed this

---

[8] *See, e.g., Sherrin v. Nw. Nat. Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993) (AL); *Coleman v. Watts*, 87 F. Supp. 2d 944, 951–52 (D. Ariz. 1998) (AZ); *RSB Vineyards, LLC v. Orsi*, 15 Cal. App. 5th 1089, 1096–97, 223 Cal. Rptr. 3d 458, 464 (Ct. App. 2017) (CA); *McMullen v. Joldersma*, 174 Mich. App. 207, 213 (1988) (MI); *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 349–50 (Minn. Ct. App. 2001) (MN); *Hess v. Chase Manhattan Bank, USA N.A.*, 220 S.W.3d 758, 765 (Mo. 2007) (MO); *Durbin v. Ross*, 916 P.2d 758, 762–63 (Mont. 1996) (MT); *United Jersey Bank v. Kensey*, 704 A.2d 38, 43 (N.J. Super. App. Div. 1997) (NJ); *Heise v. Pilot Rock Lumber Co.*, 352 P.2d 1072, 1076 (Or. 1960); *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 527 (6th Cir. 2007) (TN); *Columbia/HCA Healthcare Corp. v. Cottey*, 72 S.W.3d 735, 744 (Tex. Ct. App. 2002) (TX); *Kaloti Enters., Inc. v. Kellogg Sales Corp.*, 699 N.W.2d 205, 211–12 (Wis. 2005).

information." *See, e.g.*, ECF 14 ¶¶ 8, 28, 30. No Plaintiff alleges that he or she even *considered* lug nuts when purchasing a vehicle, much less any details regarding the content, proposed source, or misleading manner of the omissions, as required by Rule 9(b).

Moreover, Plaintiffs fail to allege a material fact that Ford was duty-bound to disclose. "Without a duty to disclose, there can be no fraud by omission." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 984 (6th Cir. 2017). For good reason: absent a limiting principle, sellers would have to maintain a dynamic, publicly-accessible list of every purported "defect" on every part of every product it ever sold. *Cf. Fed. Deposit Ins. Corp. v. W.R. Grace & Co.*, 877 F.2d 614, 619 (7th Cir. 1989) (a "general duty to disclose" would "turn every bargaining relationship into a fiduciary one," eliminate "arm's-length bargaining," and impede "enterprise and commerce"). It makes sense, then, that a duty to disclose arises most commonly when a plaintiff makes inquiries "to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 666 (6th Cir. 2013) (affirming dismissal of fraud claim because of failure to inquire). But Plaintiffs allege no questions they asked about lug nuts, no misleading half-truth by Ford about lug nuts, and no special relationship with Ford that would have required Ford to disclose every conceivable thing that might

require an in-warranty or out-of-warranty repair.

Based on Plaintiffs' conclusory allegations, Ford anticipates that Plaintiffs will attempt to establish Ford's duty to disclose on one of the following narrow grounds: (1) superior or exclusive knowledge of material facts; (2) active concealment of material facts; (3) suppression of material facts with partial representations; or, in limited circumstances, (4) knowing omission of material facts about an unreasonable safety hazard. *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028–29 (9th Cir. 2017). Plaintiffs fail on all fronts.

### 1.    Plaintiffs fail to plead an omission that was material.

At the outset, Plaintiffs fail to plead a "material" fact, the omission of which "is likely to deceive a reasonable consumer." *Clemens*, 534 F.3d at 1025. That consumers might have difficulty removing their lug nuts outside the warranty period cannot plausibly be considered "material" to reasonable car purchasers at the time of sale. To the extent Plaintiffs argue that the potential need for a tow truck is material, that risk is already present in every purchase. Indeed, there are many reasons a driver might need to call a tow truck, the least of which is their lug nuts. A motorist might experience a dead alternator, blown timing belt, wrecked ball joint, or ill-timed wiper-motor failure, to name a few.

Unlike those problems, which a customer is unlikely to discover until they

33

happen, customers can inspect the condition of their lug nuts and replace them during routine maintenance, before any malfunction leaves them stranded. *See, e.g.*, ECF 14 ¶¶ 184–86 (Plaintiff Desotelle learned about swollen lug nuts during service visit, declined to replace them, and later got a flat tire). If Ford had a duty to disclose the theoretical "risk" here—one that has rarely happened, that has injured no one, and that a customer acting with reasonable diligence could discover and prevent before manifestation (as most of these Plaintiffs did)—then Ford would be duty-bound to provide prospective purchasers with a parts inventory and affirmatively disclose that any part may fail. That result would be absurd. Of course, Ford *does* disclose that defects may exist and promises to repair or replace parts when covered under warranty. But the reality that lug nuts (or other parts) may someday fail and might require replacement at a fraction of a percent of a vehicle's purchase price simply cannot qualify as a material omission.

### 2. Plaintiffs fail to plead superior or exclusive knowledge.

To plead superior or exclusive knowledge, Plaintiffs must allege that (1) Ford knew of the defect at the time of sale; (2) Plaintiffs did not know of the defect; and (3) the nature of the defect made it difficult to discover. *Beck*, 2017 WL 3448016, at *10. Plaintiffs must offer "specific substantiating facts" to this effect. *Taragan v. Nissan N. Am., Inc.*, No. C 09-3660 SBA, 2013 WL 3157918, at *6 (N.D. Cal. June 20, 2013). It is not enough to allege that Ford "has a superior

understanding about the product's design generally." *Id*.

Here, Plaintiffs cannot show that Ford had *any* knowledge, much less superior or exclusive knowledge, about allegedly defective lug nuts on Plaintiffs' vehicles. Plaintiffs cite to anonymous "records of complaints" lodged in third-party forums like "f150forum.com," "repairpal.com," and "ford-trucks.com" for the proposition that "Ford and its dealer network know, and have known for years, that Ford's defective lug nuts systematically fail." ECF 14 ¶¶ 313–26. They also point to some 30 complaints submitted to the National Highway Traffic Safety Administration ("NHTSA") between 2013 and 2017,[9] allegedly "a resource that Ford regularly monitors." ECF 14 ¶¶ 326–28.

These anonymous online "complaints" by non-parties establish nothing. They include no alleged injuries, they are statistically infinitesimal (*see* ECF 14 ¶ 352, referring to over five million allegedly affected vehicles sold from 2012 to 2015), and they are patently deficient to create a plausible inference that Ford knew about a material defect in *Plaintiffs'* lug nuts. Most of the NHTSA complaints, for example, post-date the vehicle purchases here (which occurred as early as 2009, *see* ECF 14 ¶ 34), and the public nature of the forums negates any suggestion of exclusive knowledge by Ford at the time of sale. *See Beck*, 2017 WL

---

[9] Plaintiffs say the complaints are from "as early as 2010," but cite only complaints from 2013 (3), 2014 (1), 2015 (1), 2016 (11), and 2017 (14). *Id.* ¶ 328.

3448016, at *10–11 (rejecting NHTSA complaints as evidence of knowledge); *see also Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013); *McQueen v. BMW of N. Am., LLC*, No. 12–06674, 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014) (NHTSA complaints say "nothing" about what the defendant knew or when it acquired the knowledge).

Beyond the anonymous complaints, Plaintiffs admit that mechanics at Ford dealers and at non-Ford shops knew about and indeed shared with Plaintiffs that: (1) lug nuts might swell over time, *e.g.*, ¶ 38, 48, 184; (2) the swelling may be due to moisture, *e.g.*, ¶ 136; (3) a different wrench could be more effective, *e.g.*, ¶ 76; and (4) many others have experienced similar problems, *e.g.*, ¶ 55, 184. Given these admissions, the Court cannot reasonably infer that Ford had superior or exclusive knowledge of this information to trigger a duty to disclose. Nor can the Court reasonably infer that Plaintiffs would have had difficulty discovering information about their lug nuts. Based on their own allegations, information about the "defect" was widely known, discussed, and accessible to anyone interested.

### 3.    Plaintiffs fail to plead active concealment.

Allegations of active concealment require specific "affirmative acts" on Ford's part in "hiding, concealing or covering up the matters complained of," and "[n]either mere nondisclosure nor generalized allegations with respect to active concealment will suffice." *Beck*, 2017 WL 3448016, at *12. Plaintiffs fail to allege

that Ford "took any specific affirmative acts to conceal the alleged defective" lug nuts. *Id*. Plaintiffs do not allege, for example, that Ford prohibited dealership mechanics from discussing the durability of their lug nuts. Indeed, they allege that mechanics spoke candidly about the lug nuts, to the point where they recommended consumers order replacements from a third-party retailer. The allegations that mention active concealment are conclusory and unwarranted. *See, e.g.*, ECF 14 ¶ 1205. Put simply, the Court need "not consider Plaintiffs' legal conclusion of duty to be true without any factual allegations to support such a conclusion." *In re Ford Motor Co.*, 2007 WL 2421480, at *8 (citing *Morrison v. Marsh & McLennan Companies, Inc.*, 439 F.3d 295, 300 (6th Cir. 2006)); *Iqbal*, 556 U.S. at 678 (explaining that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Thus, Plaintiffs fail to plead a duty to disclose on this basis.

### 4.   Plaintiffs fail to plead any partial representation.

Plaintiffs also do not plead that Ford made representations but omitted facts that materially qualified the disclosure or rendered the disclosure "likely to mislead." *Id.* at *13. Plaintiffs allege that they considered "Ford's active and persistent promotions touting the quality of its vehicles" and believed Ford's vehicles were "high quality," "safe," and "reliable," ECF 14 ¶ 14, but they do not allege when or where they "ever saw, heard, or relied on" those representations, or

that they were misled by them in such a way that Ford "should have fully disclosed the related information." *Beck*, 2017 WL 3448016, at *7, 13. Nor could they have. Particularly where the NVLW makes clear that vehicles may have defects and may require repair, and that the warranty covers repairs only for three years and 36,000 miles, puffery about quality, reliability, and safety could not have reasonably misled Plaintiffs to think that their lug nuts would last forever.

To the extent Plaintiffs allege that Ford was duty-bound to disclose the alleged "two-piece capped" *design* of the lug nuts, their theory fails. Ford never made "a single affirmative representation" about the design of its lug nuts, much less something that could have misled the public about Ford's use of the design. *See, e.g.*, *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1276 (2006) (finding no duty to disclose use of certain materials in exhaust manifolds).

### 5.    Plaintiffs fail to plead an actionable safety defect.

When a defendant has made no affirmative misrepresentations, some jurisdictions require a plaintiff to allege "the existence of an unreasonable safety hazard and a causal connection between the defect and the hazard," *Williams*, 851 F.3d at 1026; specifically, "(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and [(4)] that the manufacturer knew of the defect at the time a sale was made." *Id.* at 1025. The failure to sufficiently allege Ford's

knowledge of the "defect" at the time of sale, therefore, forecloses this theory entirely. *See, e.g.*, ECF 14 ¶ 34 (no allegations of knowledge at time of 2009 purchase); *accord Beck*, 2017 WL 3448016, at *11 n.10.

In any event, this case does not involve physical injuries. *See* ECF 14 ¶ 349 (excluding injured persons from the putative class). And the only "safety concern" is speculative and conclusory. *See, e.g.*, *id.* 14 ¶¶ 308–09 (alleging that lug nuts "cause a substantial safety risk" because "scores of drivers are killed every year when stopped on the shoulder of a highway and struck by passing traffic on a busy roadway"). Indeed, every case that Ford could find involving lug nuts was a tort or insurance-coverage action where someone had been injured by a failure of lug nuts to keep wheels on a vehicle. *See, e.g.*, *Nejo v. Tamaroff Buick Honda Isuzu Nissan*, 88 F. App'x 881 (6th Cir. 2004) (injuries sustained in accident after worker failed to properly fasten lug nuts). That never happened here. In fact, Plaintiffs allege the opposite—that the lug nuts and thereby the wheels are difficult to remove. Notwithstanding the alleged delamination of their lug nuts over time, Plaintiffs' vehicles at all times functioned as vehicles, and their lug nuts never allowed a wheel to come off while driving.

In alleging that a manufacturer has a duty to disclose that lug nuts are not indestructible, Plaintiffs essentially assert that their lug nuts failed to provide an added safety benefit—the ability to quickly change a flat tire using the Ford-

supplied wrench, without roadside assistance, for the entire life of the vehicle. *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1283, 1284 (C.D. Cal. 2016) (the plaintiffs "did not purchase their vehicles based on any expectation that they included additional safety features" in a keyless fob system). But the alleged risk that Plaintiffs fear—being stranded roadside—would not be caused by the lug nuts, but by the flat tire. *See, e.g.*, ECF 14 ¶ 3. And the purported threat is not that the lug nuts could injure the stranded driver, but that some third-party might.

That a stranded driver could be exposed to risks of other drivers is both obvious and disclosed. The materials provided with Plaintiffs' vehicles warn that consumers should "not attempt to change a tire on the side of the vehicle close to moving traffic," and advise consumers to "[p]ull far enough off the road to avoid the danger of being hit when operating the jack or changing the wheel." *See* ECF 19-4 (2013 Fusion Owner's Manual),[10] p. 289. Ford also provides complementary roadside assistance—which of course implicitly discloses that customers might need roadside assistance. *See* ECF 14-14, PgID 1139 (describing the "complimentary Ford Roadside Assistance Program" under which Ford covers a tow to the nearest Ford dealership, a flat tire change, fuel delivery, jump starts, and

---

[10]  The Owner's Manual (available at http://www.fordservicecontent.com/Ford_Content/catalog/owner_guides/13fsnom3e.pdf) is integral to the complaint and "appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011).

other services for "five years or 60,000 miles").

Plaintiffs have not pleaded an alleged safety risk that is "unreasonable," as opposed to "merely conjectural." *Williams*, 851 F.3d at 1028–29; *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663 (9th Cir. 2011) (safety risk from ignition-lock defect "strand[ing a driver] on the roadway" or rendering the vehicle "vulnerable to runaway or theft" was "too speculative" to trigger a duty to disclose). This standard prevents consumer-fraud statutes from being used to impermissibly extend a product's warranty period—essentially, what Plaintiffs attempt here. *Williams*, 851 F.3d at 1029. Thus, Plaintiffs cannot succeed on the theory that their lug nuts pose an unreasonable safety hazard that Ford failed to disclose.

### C.   The economic loss doctrine bars several claims.

Plaintiffs predicate their common-law fraud claims on benefit-of-the-bargain and contract-like damages, including out-of-pocket loss, diminution in value, and future-repair costs. Absent additional injuries, the economic loss doctrine bars several of these claims. *Del Mar Land Partners, LLC v. Stanley Consultants, Inc.*, No. CV-11-8013-PCT-PGR, 2012 WL 1019066, at *2 (D. Ariz. Mar. 26, 2012) (AZ); *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1339–42 (S.D. Fla. 2016) (FL, PA); *Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 608 (E.D. Mich. 2010) (MI); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 565 (D.N.J. 2002) (NJ); *Kalimantano GmbH v. Motion in*

*Time, Inc.*, 939 F. Supp. 2d 392, 416–17 (S.D.N.Y. 2013) (NY); *Tietsworth v.*

*Harley-Davidson, Inc.*, 270 Wis. 2d 146, 162 (Wis. 2004) (WI). The doctrine also

bars two of their consumer protection claims. *Bussian v. DaimlerChrysler Corp.*,

411 F. Supp. 2d 614, 625–27 (M.D.N.C. 2006) (NC); *Werwinski v. Ford Motor*

*Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (PA).

**D.    Several individual claims fail for additional reasons.**

**Count 12 (CA False Advertising Claim)**: For their false advertising claim,

the California Plaintiffs (Castaneda and VanderMeeden) must allege with

particularity that Ford knew or should have known that its advertising was untrue

or misleading, *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1199 (N.D. Cal.

2016), and that they "suffered an injury due to [their] own actual and reasonable

reliance" on those advertisements, *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182,

1196 (N.D. Cal. 2012). They must point to an "untrue or misleading statement";

they cannot base their claims on alleged omissions. *Hodsdon v. Mars, Inc.*, 162 F.

Supp. 3d 1016, 1023 (N.D. Cal. 2016). But here, Castaneda and VanderMeeden

make only conclusory allegations that Ford made false statements in its advertising

that enticed them to buy their vehicles, without identifying the statements or

explaining their alleged falsity. *See* ECF 14 ¶¶ 33–50, 494–500; *see also VP*

*Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal.

2009) (rejecting "conclusory allegations" as basis for false advertising claim). To

the extent they rely on Ford's reputation and statements about quality and safety, those statements are puffery. *Moss*, 197 F. Supp. 3d at 1199. Accordingly, the false advertising claim must be dismissed.

**Count 49 (MI Consumer Protection Claim):** Michigan courts have held that manufacture and sale of motor vehicles is specifically authorized and fully regulated by state and federal law. *See* Mich. Comp. Laws § 445.904(1)(a); 49 U.S.C. § 30112(a), 49 C.F.R. § 571. *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465 (1999) (relevant inquiry is "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited"). Because Plaintiffs premise their MCPA claim on a motor vehicle sale, it is exempt from the MCPA. *See Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 206, 215 n.41 (2007) (exempting residential homebuilding from MCPA); *Jimenez v. Ford Motor Credit Co.*, No. 322909, 2015 WL 9318913, at *5 (Mich. Ct. App. Dec. 22, 2015) (exempting car sales from MCPA); *Chaudoin v. Thor Motor Coach, Inc.*, No. 15-13871, 2017 WL 3485803, at *24 (E.D. Mich. Aug. 15, 2017) (citing *Jimenez* favorably and exempting RV sales from MCPA).

**Counts 30, 46, 117 (IL Consumer Protection Claim; MA Fraud by Concealment Claim; WI Consumer Protection Claim)**: Illinois and Wisconsin consumer-protection laws do not permit omission-based claims. *Camasta v. Jos. A. Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 3866507, at *3–4 (N.D. Ill. July 25,

2013) (alleged omissions cannot support an ICFA claim), *aff'd*, 761 F.3d 732 (7th Cir. 2014); *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1126 (E.D. Wis. 2016) (alleged omissions cannot support a WDTPA claim). Neither does Massachusetts law with respect to fraudulent-concealment claims. *Roadmaster Indus., Inc. v. Columbia Mfg. Co.*, 893 F. Supp. 1162, 1179 (D. Mass. 1995) ("[F]ailure to disclose any nonapparent defect, without more, is not actionable[.]"). Because Plaintiffs' misrepresentation theory fails, these claims cannot stand.

### E. Several Plaintiffs fail to implicate Ford.

For purposes of their fraud claims, Plaintiffs allege that dealership "sales representatives" conveyed information that Ford provided and "expected to be passed to consumers." *See, e.g.*, ECF 14 ¶ 29. Indeed, several Plaintiffs allege that was the only information they recall about their vehicles. *See, e.g.*, *id.* ¶¶ 36, 40, 46, 54, 60, 270. Some Plaintiffs purchased their vehicles from entities having no affiliation with Ford, like "Suss Buick GMC," and "VW of Crystal Lake," *id.* ¶¶ 52 (CO), 86 (IL), and independent car lots like "Pigg Enterprises," "MP Auto Sales," "Glockner," "Rose City Motors," "Carvana," and "AutoNation," *id.* ¶¶ 14 (AL), 20 (AZ), 93 (KY), 115 (MI), 155 (NV), 238 (TX). At least three Plaintiffs do not allege exposure to *any* Ford-provided information. *Id.* ¶¶ 13–18, 371–91 (Brown-AL), 114–19, 870–76 (Nace-MI), 99–106, 794–98 (Brooks-MD). They cannot bring claims against Ford. Relatedly, their claims separately fail for lack of privity,

as required in several states. *See, e.g.*, *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992).

Even the Ford dealers are not Ford's agents, so their alleged representations and omissions cannot be attributed to Ford. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 552 (D. Md. 2011) ("[D]ealerships are generally not agents of automobile manufacturers in the selling of vehicles[.]"); *Maietta v. Ford Motor Co.*, No. 96 C 8347, 1997 WL 162894, at *4 (N.D. Ill. Mar. 24, 1997) (a bare allegation that an entity is an "authorized dealer" or "agent" of Ford is a "legal conclusion" and does not impute a salesman's statements to Ford).

## IV.  The unjust enrichment claims are deficient.

As stated above, Plaintiffs' allegations of fraud fail to meet Rule 9(b)'s particularity requirement. Because Plaintiffs' unjust enrichment claims are grounded in fraud, the Court can dismiss their unjust enrichment claims on this basis alone. *See Boston v. Estate of Clark*, No. 11-14935, 2012 WL 4048877, at *7 (E.D. Mich. Sept. 13, 2012); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (unjust-enrichment claim rests on the same alleged improper conduct). The unjust-enrichment claims fail for other basic reasons as well.

### A.  Ford did not unjustly retain a benefit.

To maintain their unjust-enrichment claims, Plaintiffs must sufficiently allege that Ford received and unjustly retained a benefit. *Storey v. Attends*

*Healthcare Prod., Inc.*, No. 15-CV-13577, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016); *Litman, Asche & Gioiella, LLP v. Chubb Custom Ins. Co.*, 373 F. Supp. 2d 314, 318 (S.D.N.Y. 2005) ("[D]efendants must in fact be enriched."). Plaintiffs have not met this burden.

First, no Plaintiff alleges that he or she purchased or leased a vehicle directly from Ford; they simply allege, in conclusory terms, that Ford had "knowledge and appreciation" of a benefit. *See, e.g.*, ¶ 617. Alleged benefits conferred to Ford *dealers* will not suffice, *e.g.*, ECF 14 ¶¶ 65, 162, much less benefits conferred to competing dealers, *e.g.*, *id.* ¶¶ 52, 86, and independent car dealers, *e.g.*, *id.* ¶¶ 14, 20, 93, 115, 155, 238. Absent allegations of a "sufficiently direct relationship" between Ford and a third-party dealer, it follows that the consumer purchases "confer a benefit on that third party, not on" Ford. *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011); *see In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. 03–4558, 2010 WL 2813788, at *33 (D.N.J. July 9, 2010), *amended*, 2011 WL 601279 (D.N.J. Feb. 16, 2011) (plaintiffs did not establish "a sufficiently direct relationship between Ford and the dealerships such that Ford received a benefit" from their vehicle purchases).[11]

---

[11] *See also, e.g.*, *In re Takata*, 193 F. Supp. 3d at 1343 (AL, PA); *Adams v. U.S. Airways, Inc.*, No. CIV 10-1088-PHX-DKD, 2011 WL 644089, at *4 (D. Ariz. Feb. 11, 2011) (AZ); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *25 (E.D. Mich. Apr. 9, 2013) (AZ, FL, MA, MI,

Even if they could show a benefit conferred to Ford, Plaintiffs do not plead facts from which the Court could infer any *unjust* retention of benefits. Plaintiffs do not, for example, allege that they bargained and paid a premium for one-piece lug nuts, but instead received two-piece ones. Plaintiffs also do not allege any vehicle or part pricing to support a finding that Ford charged them for lug nuts that were pricier than the lug nuts they actually received. Plaintiffs do not even identify alternative lug nuts that are more durable but less expensive that they would have chosen if given the option.

Plaintiffs merely allege that Ford saves "on the production costs of each and every vehicle it sells that is equipped with the cheaper, defective two-piece lug nuts," ECF 14 ¶ 297, and retains a "direct benefit" by not having to purchase "replacement lug nuts for its customers" or "reimburse its dealers for shop time to remove and replace" them, *id.* ¶ 298. Boiled down, Plaintiffs allege that Ford

---

NY, WV, WI); *Commonwealth of Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706–07 (W.D. Ky. 2016) (KY); *Doll*, 814 F. Supp. 2d at 551–52 (MD); *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2008); *A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (MI); *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2 (N.D. Ill. Apr. 1, 2010) (MI, NY, NC, UT); *Stockdall v. TG Investments, Inc.*, 129 F. Supp. 3d 871, 880 (E.D. Mo. 2015) (MO); *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (NV); *Merkin v. Honda N. Am., Inc.*, No. 17CV03625PGSDEA, 2017 WL 5309623, at *6 (D.N.J. Nov. 13, 2017) (NJ); *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (OH); *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (PA); *Rawlings v. Rawlings*, 240 P.3d 754, 763 (Utah 2010) (UT); *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978).

should have used lug nuts with a different design, but that does not mean Ford *unjustly* received a benefit by selling vehicles with lug nuts as currently designed. Indeed, Plaintiffs here "paid their purchase prices and obtained their vehicles." *See, e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 350 F. Supp. 2d 160, 210 (D. Me. 2004) ("[U]njust enrichment ordinarily does not furnish a basis for liability where parties voluntarily have negotiated, entered into and fully performed their bargain, as consumers do in buying vehicles").

### B. The NVLW and adequate legal remedies preclude relief.

"The Court may not allow Plaintiffs to plead unjust enrichment if the state-court would prohibit the same[.]" *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 619 (E.D. Mich. 2017). Courts do not recognize unjust-enrichment claims when, as here, there is an express binding agreement that defines the parties' rights.[12] Plaintiffs do not dispute that that the NVLW determines which party bears

---

[12] *See, e.g.*, *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 1133 (S.D. Ala. 2006) (AL); *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1122 (D. Ariz. 2010) (AZ); *Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700-VAP, 2015 WL 736273, at *14 (C.D. Cal. Feb. 20, 2015) (CA, TX); *Stanford v. Ronald H. Mayer Real Estate, Inc.*, 849 P.2d 921, 923 (Colo. App. 1993) (CO); *In re Takata*, 193 F. Supp. 3d at 1339 (FL); *U.S. Welding, Inc. v. Battelle Energy All., LLC*, 728 F. Supp. 2d 1110, 1116 (D. Idaho 2010) (ID); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 591 F. Supp. 812, 822 (N.D. Ill. 1984), *aff'd*, 766 F.2d 1007 (7th Cir. 1985) (IL); *Dynalectric Co. v. Whittenberg Constr. Co.*, No. 5:06-CV-208-M, 2010 WL 11549153, at *4 n.2 (W.D. Ky. Feb. 18, 2010) (KY); *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 605 n.14 (D. Md. 2014) (MA); *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th

the financial burden of vehicle repairs, and the NVLW gives Plaintiffs all the relief they bargained for. Thus, their unjust-enrichment claims fail.

Courts also reject unjust-enrichment claims when, as here, there is an adequate remedy at law available.[13] In their unjust-enrichment claims, Plaintiffs

---

Cir. 1996) (MI); *Sharp v. Laubersheimer*, 347 N.W.2d 268, 271 (Minn. 1984) (MN); *Affordable Cmtys. of Mo. v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013) (MO); *Total Indus. Plant Servs., Inc. v. Turner Indus. Grp., LLC*, 368 Mont. 189, 195–96 (2013) (MT); *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (NV); *Harlan v. Packaging Corp. of Am.*, No. CV1600077RBKKMW, 2017 WL 3894965, at *6 (D.N.J. Sept. 6, 2017) (NJ); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) (NY); *Booe v. Shadrick*, 322 N.C. 567, 570 (1988) (NC); *Patterson v. Rite Aid Corp. Hdqtrs.*, 752 F. Supp. 2d 811, 818 (N.D. Ohio 2010) (OH); *Rice v. Electrolux Home Prod., Inc.*, No. 4:15-CV-00371, 2015 WL 4545520, at *8 (M.D. Pa. July 28, 2015) (PA); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 761 n.3 (E.D. Tenn. 2009) (TN); *U.S. Fid. v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012) (UT); *Pilar Servs., Inc. v. NCI Info. Sys., Inc.*, 569 F. Supp. 2d 563, 569 (E.D. Va. 2008) (VA); *Ohio Valley Health Servs. & Educ. Corp. v. Riley*, 149 F. Supp. 3d 709, 719–20 (N.D.W. Va. 2015) (WV); *Meyer v. Laser Vision Inst.*, 714 N.W.2d 223, 230 (Wis. Ct. App. 2006) (WI).

[13] *See, e.g.*, *Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272, 1278 (M.D. Ala. 2007) (AL); *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318 (Ariz. Ct. App. 2012) (AZ); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752, 763 (CA, TX); *Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *9 (D. Colo. Dec. 17, 2010) (CO); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236–37 (S.D. Fla. 2007) (FL); *In re Wal-Mart Wage & Hour Employment Practices Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007) (ID); *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005) (IL); *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1383 (W.D. Ky. 1987) (KY); *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 506 (6th Cir. 1995) (MI); *Romeo Inv. Ltd. v. Mich. Consol. Gas Co.*, No. 260320, 2007 WL 1264008, at *9 (Mich. Ct. App. May 1, 2007) (MI); *Cummins Law Office, P.A. v.*

seek to recover for the same conduct that underlies their other claims. Plaintiffs do not sufficiently allege that the requested relief in those claims would be inadequate. *See In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."). Dismissal is therefore appropriate.

## V. Many claims are untimely.

### A. Several warranty-based claims are time-barred.

Breach of express warranty claims accrue at the time of *tender* unless the warranty explicitly extends to the future performance of the goods, in which case the "discovery rule" determines the time of accrual. *See, e.g.*, 810 ILCS 5/2-725.

---

*Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1131 (D. Minn. 2011) (MN); *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 842 (Minn. 2012) (MN); *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, No. 08-4133-CV-C-SOW, 2009 WL 10671349, at *6 (W.D. Mo. Aug. 21, 2009) (MO); *Welu v. Twin Hearts Smiling Horses, Inc.*, 386 Mont. 98, 116 (2016) (MT); *Small v. Univ. Med. Ctr. of S. Nev.*, No. 213CV00298APGPAL, 2016 WL 4157309, at *3 (D. Nev. Aug. 3, 2016) (NV); *Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp. 2d 496, 505 (D.N.J. 2006) (NJ); *Blystra v. Fiber Tech Grp., Inc.*, 407 F. Supp. 2d 636, 645 n.11 (D.N.J. 2005) (NJ); *Goldemberg v. Johnson & Johnson Consumer Cos, Inc.*, 8 F. Supp. 3d 467, 483–84 (S.D.N.Y. 2014) (NY); *Embree Const. Grp. Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992) (NC); *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975) (OH); *Zirkle v. City of Kingston*, 396 S.W.2d 356, 363 (Tenn. 1965) (TN); *Thorpe v. Washington City*, 243 P.3d 500, 507 (Utah App. 2010) (UT); *Elegant Homes of Va., Inc. v. Boberski*, No. CL05–10,158, 2006 WL 2949005, at *1 (Va. Cir. Apr. 13, 2006) (VA).

Warranties that merely promise to repair or replace parts for a defined period, as here, do *not* warrant the future performance of the goods, so claims accrue at the time of tender. *See, e.g., Cosman v. Ford Motor Co*., 674 N.E.2d 61, 66 (Ill. Ct. App. 1996) ("A promise to repair parts . . . is a promise that the manufacturer will behave in a certain way, not a warranty that the vehicle will behave in a certain way."); *Rochester-Genesee Reg'l Trans. Auth. v. Cummins Inc.*, 2010 WL 2998768, at *3-4 (W.D.N.Y. 2010) (same); *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 550–51 (N.D. Ohio 2006) (same); *Allstate Ins. Co. v. Gen. Motors Corp*., 56 U.C.C. Rep. Serv. 2d 241, at *3 (Minn. Dist. Ct. 2005) (same); *Petty v. Marvin Lumber & Cedar Co.*, 2014 WL 4854292, at *3–4 (E.D.N.C. Sept. 4, 2014) (predicting that the NC Supreme Court would not find a that a repair-or-replace warranty for a fixed period extends to future performance).

Thus, the following warranty claims are time-barred and cannot proceed:[14]

---

[14] "BEW" means "Breach of Express Warranty": Tenn. Code Ann. § 28-3-104; Fla. Stat. § 95.11(2)(b) (TN-BEW); Mass. Gen. Laws ch. 106 § 2-318; Mich. Comp. Laws § 440.2725 (MI-BEW); Minn. Stat. § 336.2–725(1) (MN-BEW); N.J. Stat. § § 12A:2-725 (NJ-BEW); N.Y. U.C.C. § 2-725(1) (NY-BEW); N.C. Gen. Stat. § 25-2-725(1) (NC-BEW); O.R.C.A. § 2305.09(D) (OH-BEW); 810 ILCS 5/2-725 (IL-BEW).

| Plaintiff | Count | State-Claim | SoL Period | Tender Date | |
|---|---|---|---|---|---|
| Garland | 23 | FL-BEW | 5 years | 9/18/10 | ¶ 65 |
| Dahlke | 32 | IL-BEW | 4 years | 2013 MY[15] | ¶ 86 |
| Elwin | 48 | MA-BEW | 3 years | 12/1/13 | ¶ 108 |
| Nace | 52 | MI-BEW | 4 years | 2010 MY[16] | ¶ 115 |
| Bents | 57 | MN-BEW | 4 years | 4/29/13 | ¶ 132 |
| Barron | 73 | NJ-BEW | 4 years | 11/30/12 | ¶ 162 |
| Maurer  (F-150) | 78 | NY-BEW | 4 years | 12/18/11 | ¶ 169 |
| Desotelle | 82 | NC-BEW | 4 years | 1/15/13 | ¶ 180 |
| Nyiri | 82 | NC-BEW | 4 years | 3/22/13 | ¶ 191 |
| Ellis | 87 | OH-BEW | 4 years | 10/29/13 | ¶ 198 |
| Thomas | 101 | TN-BEW | 4 years | 4/21/13 | ¶ 230 |

**B.   Several fraud-based claims are time-barred.**

Plaintiffs allege that their fraud-based claims accrued when they discovered the alleged defect in their lug nuts. Even accepting that theory for purposes of this argument, the following claims are time-barred:[17]

---

[15] Dahlke does not allege when his vehicle was first tendered, but his claim is timely only if tender was after December 5, 2013—unlikely given the model year.

[16] Nace does not allege when her vehicle was first tendered, but her claim cannot be timely given the model year, so an opportunity to re-plead would be futile.

[17] "CP" means "Consumer Protection" and "FC" means "Fraud by Concealment": Ala. Code § 8-19-14 (AL-CP); Ariz. Rev. Stat. Ann. § 12-541(5) (AZ-CP); Cal. Civ. Code § 1783; Cal. Civ. Proc. Code §§ 338(a), (h) (CA-CP) ; Cal. Civ. Proc. § 338(d)  (CA-FC); Fla. Stat. § 95.11(3)(f) (FL-CP); Fla. Stat. § 95.11(3)(j), 95.031(2)(a) (FL-FC); Idaho Code § 48-619 (ID-CP); Idaho Code Ann. § 5-218(4) (ID-FC); 815 ILCS 505/10a(e) (IL-CP); 735 ILCS 5/13-205 (IL-FC); Ky. Rev. Stat. § 367.220(1) (discovery rule does not apply per statute) (KY-CP); Md. Code Ann. Cts. & Jud. Proc. § 5-101 (MD-CP); Md. Code Ann. Cts. & Jud. Proc. § 5-101 (MD-FC); Mass. Gen. Laws ch. 260, § 5A (MA-CP); Mass. Gen. Laws ch. 260, § 5A (MA-FC); N.Y. C.P.L.R. § 214(2) (NY-CP); N.Y. C.P.L.R. § 213(8) (NY-FC); N.C. Gen. Stat. § 75-16.2 (NC-CP); N.C. Gen. Stat. § 1-52(9) (NC-FC); Ohio Rev. Code Ann. § 1345.10(C) (OH-CP); Ohio Rev. Code Ann. § 2305.09(C)

| Plaintiff | Count | State-Claim | SoL Period | Discovery Date | |
|---|---|---|---|---|---|
| Brown | 2 | AL-CP | 1 year | 7/2016 | ¶ 17 |
| Wozniak | 6 | AZ-CP | 1 year | no discovery alleged | |
| Castaneda (Flex) | 11 | CA-CP | 3 years | 8/2014 | ¶ 38 |
| Castaneda (Flex) | 13 | CA-FC | 3 years | 8/2014 | ¶ 38 |
| Law | 27 | ID-CP | 2 years | not pleaded | ¶ 76 |
| Law | 28 | ID-FC | 3 years | not pleaded | ¶ 76 |
| Hutchinson | 37 | KY-CP | 2 years | 11/2015 | ¶ 96 |
| Maurer (F-150) | 75 | NY-CP | 3 years | not pleaded | ¶ 173 |
| Maurer (F-150) | 76 | NY-FC | 6 years | not pleaded | ¶ 173 |
| Ellis | 84 | OH-CP | 2 years | not pleaded | ¶ 202 |
| Ellis | 85 | OH-FC | 4 years | not pleaded | ¶ 202 |
| Wood | 89 | OR-CP | 1 year | summer '16 | ¶ 211 |
| Bonarrigo | 93 | PA-FC | 2 years | not pleaded | ¶ 218 |
| Petrashek | 117 | WI-CP | 3 years | 6/30/12[18] | ¶ 275 |
| Rahlf | 117 | WI-CP | 3 years | 4/30/14[19] | ¶ 283 |

## C.   Tolling is unavailable.

Limitation periods may be tolled "only when a plaintiff has acted with reasonable diligence and can show extraordinary circumstances that justify the requested toll." *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 533 (E.D.N.Y. 2012). Here, Plaintiffs assert "discovery rule" tolling because they allegedly "had no way of knowing about Ford's deception," ECF 14 ¶ 339, and

---

(OH-FC); Or. Rev. Stat. § 646.638(6) (OR-CP); Or. Rev. Stat. § 12.110(1) (OR-FC); 42 Pa. Cons. Stat. § 5524(7) (PA-FC); Tenn. Code Ann. § 47-18-110 (TN-CP); Tenn. Code Ann. § 28-3-105(1) (TN-FC); Va. Code Ann. § 59.1-204.1(A) (VA-CP); Va. Code Ann. §§ 8.01-243, 8.01-249 (VA-FC); W. Va. Code Ann. § 55-2-12 (WV-CP); W. Va. Code § 55-2-12 (WV-FC); Wis. Stat. § 100.18(11)(b)(3) (WV-CP); *Skrupsky v. Elbert*, 526 N.W.2d 264, 273-74 (Wis. Ct. App. 1994) (accrual from date of alleged unlawful act) (WV-CP).

[18] Barred based on purchase date because WI law does not follow discovery rule.
[19] Barred based on purchase date because WI law does not follow discovery rule.

"fraudulent concealment" tolling because, allegedly, Ford "falsely represented" and "marketed" its vehicles as "safe and free from defects," *id*. ¶ 344. Neither tolling doctrine is available here.

For either tolling doctrine to apply, Plaintiffs were required to plead when and how they discovered the alleged defects. *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1157–58 (9th Cir.2002) (requiring a plaintiff to plead when and how she discovered her claim so the court can judge whether information triggering her filing had been available earlier). They were also required to plead why they could not have discovered the alleged fraud sooner. *See Great Plains Tr. Co. v. Union Pac. R. Co.*, 492 F.3d 986, 996 (8th Cir. 2007) (rejecting tolling argument where the plaintiff did not plead "what actions [the defendant] took to fraudulently conceal the cause of action" or "state when or how [the defendant] perpetrated its alleged concealment").

Here, as explained, the "discovery rule" does not apply to Plaintiffs' warranty claims because the NVLW does not extend to the future performance of goods. Their fraud-based claims, likewise, cannot be tolled because a reasonable investigation before, at, or after the time of sale (reading the NVLW, asking lug-nut-related questions of their salesperson or mechanic, or performing a Google search) would have informed Plaintiffs that their lug nuts may require replacement outside the warranty period. Plaintiffs include no allegations that, after purchase,

Ford somehow prevented them from discovering the condition of the lug nuts on their vehicles. The lug nuts are on the outside of the vehicle, plainly visible to anyone interested in evaluating their condition. Moreover, Ford never represented that its vehicles are defect free, and the NVLW informs customers that their vehicles may contain defects that may require repair. ECF 14 ¶ 330. And although the lug nuts do not pose an "unreasonable safety hazard," Ford does warn its customers to exercise care in the event of a flat tire, again negating any alleged concealment. *See* ECF 19-4, p. 289.

Even if tolling were applicable, it would at most extend accrual to the date of discovery. *See In re Processed Egg Prod. Antitrust Litig.*, 931 F. Supp. 2d 654, 662–63 (E.D. Pa. 2013) (collecting cases from AZ, CA, FL, KA, MI, MN, MS, NM, NY, SD, and TN). As reflected in the table above, many fraud-based claims are time-barred even using the alleged "discovery" date for purposes of accrual.

### D. Equitable estoppel is unavailable.

Plaintiffs also assert that Ford is "estopped" from challenging the timeliness of their claims because "Ford knowingly, affirmatively, and actively concealed or recklessly disregarded important facts" about their lug nuts. ECF 14 ¶ 346. But equitable estoppel applies only "when plaintiffs are aware of their claims but defendants' conduct prevents plaintiffs from timely filing suit." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 (6th Cir. 2009). Here, Plaintiffs do not

allege that "they knew about the defect but delayed filing suit due to [Ford's] misrepresentations." *Dineen v. Pella Corp.*, No. 2:14-CV-03479-DCN, 2015 WL 6688040, at *6 (D.S.C. Oct. 30, 2015). Plaintiffs at most allege "failure to disclose the alleged defect," which does not trigger estoppel. *Id.*

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' complaint with prejudice.

BUSH SEYFERTH & PAIGE PLLC
Attorneys for Ford Motor Company

By:   /s/ Stephanie A. Douglas
Stephanie A. Douglas (P70272)
Jessica V. Currie (P74213)
3001 W. Big Beaver Rd., Ste. 600
Troy, MI 48084
(248) 822-7800
douglas@bsplaw.com
Dated:    February 5, 2018    currie@bsplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2018, I electronically filed the foregoing paper, **FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**, with the Clerk of the Court using the ECF System, which will send notification to all ECF counsel of record.


By:   /s/ Stephanie A. Douglas
       Stephanie A. Douglas (P70272)
       douglas@bsplaw.com