UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSH WOZNIAK, et al.,

    Plaintiffs,

v.

FORD MOTOR COMPANY,

    Defendant.
_____/

Case No. 2:17-cv-12794

HON. STEPHEN J. MURPHY, III

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [19]**

On December 5, 2017, Plaintiffs filed a 120-count amended class action complaint. ECF 14. Plaintiffs allege violations of the Magnuson-Moss Warranty Act and violations of state law in each of the fifty states on behalf of a nationwide class. *See id.* All claims arise from Plaintiffs' interactions with Ford as purchasers of Ford vehicles. *Id.* Plaintiffs allege that Ford used defectively-designed lug nuts. The defect allegedly causes the lug nuts to deform and swell, which makes them difficult to remove from the tires and impedes changing a flat tire. *See id.* at 623–25. Plaintiffs further allege that Ford violated its New Vehicle Limited Warranty ("NVLW") by failing to repair or replace the defective lug nuts when customers notified Ford of the issue. *Id.* at 660–64. Defendant filed a motion to dismiss on February 5, 2018. ECF 19. The Court held a hearing on the motion on September 5, 2018. Upon a thorough consideration of the pleadings and the arguments presented at the hearing, the Court will grant Defendant's motion.

## STANDARD OF REVIEW

When analyzing a motion to dismiss under Civil Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive a motion to dismiss, "the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005) (citation omitted). It must allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

## DISCUSSION

I. <u>Place-Holder Claims</u>

Plaintiffs allege six claims as placeholders—24, 34, 41, 45, 114, and 120 ("Place-Holder Claims"). The Place-Holder Claims do not assert any claims at all. Therefore, claims 24, 34, 41, 45, 114, and 120 must be dismissed for failure to state a claim.

II. <u>State Classes Lacking a Representative</u>

Plaintiffs allege violations of the laws of each of the fifty states but present factual allegations on behalf of named Plaintiffs in only twenty-seven states. *See* ECF 14, PgID 507–10 (table of contents listing named Plaintiff's states). Although class-

certification analysis may precede standing analysis when "the class certification issue [is] 'logically antecedent' to the standing issue", *Smith v. Lawyers Title Ins. Co.*, No. 07–12124, 2009 WL 514210, at *2 (E.D. Mich. Mar. 2, 2009) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) and *Oritz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)), our Court has held that " the 'logical[ly] antecedent' language should be construed in a manner that permits consideration of the standing issue . . . prior to class certification." *Id.* at *3. Like the plaintiffs in *Smith*, the named Plaintiffs here do not allege injuries in states other than their own or base their claims on the application of other states' laws. *See id.* Plaintiffs therefore lack standing to bring claims under the laws of the remaining twenty-three states. Claims 5, 9, 18, 19, 25, 26, 35, 36, 40, 58, 65, 69, 74, 83, 88, 96, 97, 98, 109, and 113[1] must therefore be dismissed for lack of standing.

III. <u>Breach of Warranty Claims</u>

Plaintiffs have not alleged facts sufficient to plead a breach of warranty claim under the Magnuson-Moss Warranty Act or under the laws of any of the states in which they allege breaches of an express warranty. Ford's NVLW promises to "repair, replace, or adjust all parts on [a] vehicle that malfunction or fail during normal use during the applicable coverage period" if the vehicle "is properly operated and maintained" and "was taken to a Ford dealership for a warranted repair during the warranty period." ECF 14-14, PgID 1131–32. The relevant warranty period is the

---

[1] Claims 24, 34, 41, and 120 involved laws of states in which no named Plaintiff has standing, but the claims constitute place-holder claims that failed to state a claim to relief. *See supra* Part I.

3

earlier of three years or 36,000 miles and begins on the day the customer takes delivery of the vehicle or the day it is first put into service, again, whichever is earlier. *See* ECF 14, PgID 662. Regardless of whether the Repair or Replace Warranty qualifies as an express warranty under any applicable state law, Plaintiffs have failed to adequately plead a breach because they have not pleaded that the named Plaintiff presented their vehicles to a Ford dealership before the earlier of three years or 36,000 miles occurred. Because the warranty expires upon the earlier of the time or mileage limits, Plaintiffs must allege both the timeline between the start of the warranty period and the sought-after repairs and the mileage on their vehicles at the time of presentment.

The only Plaintiff who properly alleged both a mileage and timeline within the warranty period is Donald Lycan, but he alleged that he merely presented the lug nuts to a dealership – and not his vehicle. *See* ECF 14, PgID 595; *see also* ECF 14-14, PgID 1131–32 (listing NVLW's prerequisite to free repair or replacement that the vehicle be taken to a dealership).

Plaintiffs readily acknowledge the shortcoming of their complaint but maintain that they do not need to plead the listed requirements to succeed on their breach-of-warranty claims because they adequately pleaded failure of the warranty's essential purpose. *See* ECF 20, PgID 1744. But Plaintiffs pleaded breach of express warranty for eleven states that have adopted the Uniform Commercial Code's

4

provision regarding essential purpose.[2] The provision provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." U.C.C. § 2-719(2). For a repair-or-replace remedy to fail its essential purpose, however, the consumer must give the manufacturer an opportunity to repair or replace the alleged defect during the warranty period. *See Miller v. Gen. Motors, LLC*, No. 17-cv-14032, 2018 WL 2740240, at *6–7 (E.D. Mich. June 7, 2018).[3] The essential purpose doctrine in each relevant

---

[2] *See* Fla. Stat. Ann. § 672.719 (Florida), 810 Ill. Comp. Stat. 5/2-719 (Illinois), Mass. Gen. Laws Ann. ch. 106, § 2-719 (Massachusetts), Mich. Comp. Laws § 440.2719 (Michigan), Minn. Stat. § 336.2-719 (Minnesota), N.J. Stat. Ann. § 12A:2-719 (New Jersey), N.Y. U.C.C. Law § 2-719 (New York), N.C. Gen. Stat. Ann. § 25-2-719 (North Carolina), Ohio Rev. Code Ann. § 1302.93 (Ohio), 13 Pa. Cons. Stat. § 2719 (Pennsylvania), and Tenn. Code Ann. § 47-2-719 (Tennessee).

[3] This is true under the law of every relevant state.
<u>Florida</u>: *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, No. 3:12–cv–1366–J–20JBT, 2013 WL 12172912, at *3 (M.D. Fla. Aug. 28, 2013) (collecting cases showing that under Florida law "[t]he 'essential purposes' exception typically has been limited to circumstances involving repeated (unsuccessful) efforts to repair a product that completely fails in its intended use").
<u>Illinois</u>: *Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 236 (Ill. App. Ct. 2004) (holding that under Illinois law failure of essential purpose occurs when "successful repairs are not made within a reasonable time or within a reasonable number of attempts," assuming that the manufacturer must first be given the opportunity to repair).
<u>Massachusetts</u>: *Boston Helicopter Charter, Inc. v. Augusta Aviation Corp.*, 767 F. Supp. 363, 374 (D. Mass. 1991) (holding that the essential purpose provision of the Massachusetts U.C.C. "is inapplicable once the warranty has expired").
<u>Michigan</u>: *Comput. Network, Inc. v. AM Gen. Corp.*, 696 N.W.2d 49, 55 (Mich. Ct. App. 2005) (under Michigan law, a "warranty fails of its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the *remedy to which the parties agreed*") (citation omitted) (emphasis added).
<u>Minnesota</u>: *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 356 (Minn. 1977) (discussing failure of essential purpose under Minnesota law in terms of whether a manufacturer complies with the terms of the exclusive or limited remedy and whether a failure to comply deprives the purchaser of the benefit of the contracted-for remedy).

5

state is concerned with circumstances in which the essential purpose of the limited remedy agreed to by the parties would fail—in this case, the circumstances are repair or replacement of defective parts during the warranty period. *See supra* fn 3.

To plead that a remedy failed its essential purpose, Plaintiffs must plead facts sufficient to allege that they sought the limited remedy in the warranty period and that the remedy was ineffective. As discussed above, Plaintiffs have not alleged that they presented their vehicles to Ford within the warranty period to have the defective lug nuts replaced. For the same reasons that Plaintiffs fail to allege facts sufficient

---

<u>New Jersey</u>: *BOC Grp., Inc. v. Chevron Chem. Co., LLC*, 819 A.2d 431, 438 (N.J. Super. Ct. App. Div. 2003) (stating that under New Jersey law, "before the exclusive remedy is considered to have failed in its essential purpose, the seller must be given an opportunity to repair or replace the product").
<u>New York</u>: *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 475 (S.D.N.Y. 2010) (stating that under New York law, a limited or exclusive remedy fails of its essential purpose when "the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all") (citation omitted).
<u>North Carolina</u>: *Stutts v. Green Ford, Inc.*, 267 S.E.2d 919, 926 (N.C. Ct. App. 1980) (discussing a comment to North Carolina's essential purpose provision emphasizing it ensures that "at least minimum adequate remedies be available").
<u>Ohio</u>: *Holbrook v. Louisiana-Pacific Corp.*, No. 3:12CV484, 2015 WL 1291534, at *6 (N.D. Ohio Mar. 23, 2015) (stating that under Ohio law, a repair or replace remedy fails its essential purpose "when evidence shows that the seller either refuses to repair or replace the goods or, despite attempting repair, the seller was not able to cure its breach") (citation omitted).
<u>Pennsylvania</u>: *Woolums v. Nat'l RV*, 530 F. Supp. 2d 691, 701 (M.D. Penn. 2008) (discussing the need for a seller to "perform repairs within a reasonable amount of time *after the buyer presents* the defective product" for a repair warranty to uphold its essential purpose) (emphasis added).
<u>Tennessee</u>: *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 29 (Tenn. Ct. App. 1993) (stating that Tennessee's essential purpose provision is "concerned with the essential purpose of *the remedy chosen by the parties,* not with the essential purpose of the code or of contract law, or of justice and/or equity.") (emphasis added).

to state a claim upon which relief can be granted for breach of the express warranty, they also fail to state a claim that the limited remedy failed of its essential purpose. Claims 23, 32, 48, 52, 57, 73, 78, 82, 87, 95, and 101 must therefore be dismissed.

Furthermore, "the applicability of the Magnuson–Moss Act is directly dependent [sic] upon a sustainable claim for breach of warranty. . . . Thus, if there exists no actionable warranty claim, there can be no violation of the Magnuson–Moss Act." *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). Claim 1 must also be dismissed.

IV. <u>Fraud and Consumer Protection Claims</u>

Plaintiffs have not alleged facts sufficient to plead state-law fraud or consumer protection claims. Fraud claims and consumer protection claims sounding in fraud must meet the heightened pleading standard of Civil Rule 9(b). *See Miller*, 2018 WL 2740240, at *14 (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)). For claims involving affirmative misrepresentations, Civil Rule 9(b) requires a plaintiff to allege "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* at *11 (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012)).

And for claims involving fraudulent omissions, Civil Rule 9(b) requires a plaintiff to plead "'the who, what, when, where, and how' of the alleged omission." *Id.* (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). Specifically, a plaintiff pleading a fraudulent omission must allege "(1)

7

precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* (alteration in original) (citing *Republic Bank & Tr. Co.*, 683 F.3d at 256). A complaint may suffice under the applicable standard if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751–52 (E.D. Mich. 2017).

The Plaintiffs' complaint is devoid of any state-law fraud or consumer protection claims based on a misrepresentation theory. Plaintiffs simply have not pleaded any representations related to lug nuts.

As to Plaintiffs' fraudulent omissions theory, Plaintiffs insist that they pleaded, consistent with *Beck*, that Ford knew of the defect before the sale of the vehicles and that the various channels through which they sold the vehicles failed to disclose the defect. *See* ECF 20, PgID 1764–65. But the argument is unpersuasive. Plaintiffs failed to plead their asserted "what" of Ford's knowledge of the defect. Plaintiffs point only to negative reviews on third-party forum websites and complaints filed with the National Highway Traffic Safety Administration ("NHTSA"). They argue that Defendant knew of the defects because of those outside sources. *See* ECF 14, PgID 626–60; *see also Beck*, 273 F. Supp. 3d at 753 (allegations

of complaints to NHTSA are insufficient to allege knowledge).[4] Although "knowledge" need be alleged only "generally" under Civil Rule 9(b), Plaintiffs' general assertions of Defendant's knowledge without any alleged facts that Defendant was even aware of the complaints do not rise above mere speculation. *See Twombly*, 550 U.S. at 545. Under their formulation of the "who, what, when, where, and how," Plaintiffs have failed to plead a "what" necessary to satisfy Civil Rule 9(b)'s heightened pleading standard.[5] Liability cannot attach for a fraudulent omission theory under any state

---

[4] Although *Beck* makes the cited assertion only in the context of analyzing whether the plaintiff sufficiently pleaded superior or exclusive knowledge for a specific state-law claim, the conclusion that complaints to the NHTSA are insufficient to "allege that [the manufacturer] had knowledge—let alone exclusive knowledge" is applicable to the Court's analysis of whether Plaintiffs adequately pleaded the "what" of Ford's knowledge here. Moreover, the *Beck* plaintiff alleged that the Defendant "regularly monitor[ed] NHTSA complaints in order to meet its reporting requirements[.]" 273 F. Supp. 3d at 753. Even that allegation was insufficient to prove Defendant's knowledge of the defect.

And Plaintiffs' reliance on *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) to rebut the conclusion of insufficiency to show knowledge is misplaced. The court in *In re Toyota* found superior or exclusive knowledge when the plaintiff alleged the manufacturer produced secret reports, consumers shared issues with dealers prior to notifying the NHTSA, and the NHTSA produced a "finding" regarding the complaints. The allegations *In re Toyota* far exceed Plaintiffs' allegations here that complaints were made to the NHTSA and other third parties.

[5] Notably, to succeed on an omission theory, each state consumer protection act and common-law fraud scheme relied upon by Plaintiffs requires knowledge of the defect by the defendant, or at least that the defendant should have known of the defect through reasonable inquiry.

Alabama: *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996) (holding that Alabama Deceptive Trade Practices Act requires "some knowledge of false or deceptive conduct"); *Marshall v. Crocker*, 387 So. 2d 176, 179 (Ala. 1980) ("[S]ilence, in order to be an actionable fraud, must relate to a material matter, *known to the party*, and which it is his legal duty to communicate to the other contracting party[.]") (emphasis added).

Arizona: *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1023 (D. Ariz. 2017) (holding that Arizona Consumer Fraud Act and Arizona common law

9

fraud require a manufacturer to intend that the consumer rely on the omission, which presumes that the manufacturer knows of the omission).
California:  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1229 (N.D. Cal. 2014) (holding that omissions are actionable under the California Unfair Competition Law only when there is a duty to disclose—when the defendant is the plaintiff's fiduciary, has exclusive knowledge, actively conceals, or partially represents in a way that makes the omission misleading—the first of which does not apply here and the latter three of which all require knowledge); *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1174–75 (E.D. Cal. 2013) (applying the same standard as *In re Adobe* for omissions claims under the California Consumers Legal Remedies Act); *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 974–75 (N.D. Cal. 2018) (same for California False Advertising Law); *Romero v. Securus Tech., Inc.*, 216 F. Supp. 3d 1078, 1092 (S.D. Cal. 2016) (same for California common law fraud).
Colorado:  *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1120 (10th Cir. 2008) (identifying knowledge requirement for omissions to be actionable under the Colorado Consumer Protection Act); *Denver Bus. Sales Co. v. Lewis*, 365 P.2d 895, 898 (Colo. 1961) (same for Colorado common law fraud).
Florida  *Varner v. Domestic Corp.*, No. 16-22482-Civ-Scola, 2017 WL 3730618, at *15 (S.D. Fla. Feb. 7, 2017) (requiring plaintiffs to "plead with particularity facts sufficient to show [the defendant's] knowledge of the risk" plaintiffs alleged defendant omitted to inform them about under California, Florida, Kansas, Michigan, Minnesota, North Carolina and Texas's consumer protection laws); *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1236 (M.D. Fla. 2011) (holding that Florida common law fraud requires not only knowledge but also intent to induce reliance).
Idaho:  *United Heritage Life Ins. Co. v. First Matrix Inv. Servs. Corp.*, No. CV 06–0496–S–MHW, 2009 WL 3229374, at *7 (D. Idaho Sept. 30, 2009) (holding that Idaho Consumer Protection Act requires knowledge of present or past engagement in unfair or deceptive practices—which Plaintiffs certainly have not pleaded in the absence of adequately pleading knowledge of the defect); *Wash. Fed. Sav. v. Van Engelen*, 289 P.3d 50, 59 (Idaho 2012) (holding that fraud can be established by omission only when there is a duty to disclose (which requires a fiduciary relationship and is thus inapplicable here), to prevent partial statements from being misleading, or if a fact known to one party is so integral that if it were a mutual mistake the contract would be voidable—the last two require knowledge).
Illinois:  *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E. 2d 56, 62 (Ill. App. Ct. 2006) ("[F]or a material omission to be actionable, the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment."); *Fox v. Heimann*, 872 N.E. 2d 126, 138 (Ill. App. Ct. 2007) (recognizing that a defendant's "knowledge of the falsity of the statement, or a deliberate concealment with the intent to deceive is an essential element of common law fraud").
Kentucky:  *Smith v. Gen. Motors Corp.*, 979 S.W. 2d 127, 129–31 (Ky. Ct. App. 1998) (holding that omissions actionable under either the Kentucky Consumer

Protection Act or Kentucky common-law fraud only where fiduciary relationship (inapplicable here) or to prevent partial statements from being misleading or where one party has superior knowledge—both of which require knowledge).
Maryland: *Benik v. Hatcher*, 750 A.2d 10, 23 (Md. 2000) (noting that, under the Maryland Consumer Protection Act, the element of "material misstatements or omissions" requires knowledge on the part of the defendant); *Green v. H&R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999) (holding that Maryland fraud requires intent to defraud or deceive, which presumes knowledge of the omission).
Massachusetts: *Roadmaster Indus., Inc. v. Columbia Mfg. Co., Inc.*, 893 F. Supp. 1162, 1179 (D. Mass. 1995) (holding that fraudulent concealment under Massachusetts law requires affirmative steps to conceal, which implies knowledge).
Michigan: *Wolfe v. A.E. Kusterer & Co.*, 257 N.W. 729, 730 (Mich. 1934) (holding that fraud by omission is actionable under Michigan law only if there is an intent to deceive, which presumes knowledge).
Minnesota: *Nance v. Evje*, No. A06-1730, 2007 WL 2472449, at *3, *5 (Minn. Ct. App. 2007) (holding that claims under both the Minnesota Deceptive Trade Practices Act and Minnesota common law fraud fail when there is no evidence that the defendants knew the omitted information).
Missouri: *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007) (en banc) (holding that Missouri common law fraud requires knowledge of facts omitted and the Missouri Merchandising Practices Act requires that a defendant knew or should have known through reasonable inquiry of an omission—although Missouri courts have yet to develop their jurisprudence regarding what meets the standard, discovering the cited complaints on third-party websites would require more than reasonable inquiry by Defendant).
Montana: *Moline v. Saint-Denis*, 311 P.3d 442, at *2 (Mont. 2013) (Table) (requiring knowledge for an omission-based claim under the Montana Unfair Trade Practices and Consumer Protection Act); *In re Estate of Kindsfather,* 108 P.3d 487, 490 (Mont. 2005) (holding that Montana common-law fraud requires knowledge and intent).
Nevada: *Joson v. Bank of Am., NA*, No. 2:12–cv–00710–GMN–NJK, 2013 WL 1249714, at *5, *6 (D. Nev. Mar. 22, 2013) (holding that Nevada Deceptive Trade Practices Act and common-law fraud both require knowledge).
New Jersey: *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (New Jersey Consumer Fraud Act claims based on omissions require knowledge); *Liebler v. LG Elecs. U.S.A., Inc.*, No. 14–cv–03500, 2015 WL 3561590, at *7 (D.N.J. June 4, 2015) (same for New Jersey common-law fraud).
New York: *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (holding that the New York General Business Law requires a plaintiff to plausibly allege that a defendant had knowledge of material information and failed to disclose it); *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 639 (S.D.N.Y. 2012) (holding that New York common-law fraud requires knowledge of a false omission and an intent to defraud).

North Carolina: *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 196 (M.D.N.C. 1997) (holding that fraud by omission is satisfied if one party takes affirmative steps to conceal material facts of a defect or has knowledge of a defect).

Ohio: *Bierlein v. Bernie's Motor Sales, Inc.*, No. 9590, 1986 WL 6757, at *6 (Ohio Ct. App. June 12, 1986) (stating that Ohio's Consumer Sales Practices Act requires a defendant to have actual awareness of a defect); *Martin v. Ohio State Univ. Found.,* 742 N.E.2d 1198, 1206–07 (Ohio Ct. App. 2000) (holding that Ohio common-law fraud requires knowledge or recklessness to an extent that knowledge can be inferred, as well as intent to mislead).

Oregon: *State ex rel. Rosenblum v. Johnson & Johnson*, 362 P.3d 1197, 1203–04 (Or. Ct. App. 2015) (implying knowledge requirement for nondisclosures challenged under The Oregon Unfair Trade Practices Act); *Aero Marine Engine, Inc. v. Transporter, Inc.*, No. 05–1469–AS, 2007 WL 3128500, at *3 (D. Or. Oct. 23, 2007) (requiring knowledge for Oregon common-law fraud).

Pennsylvania: *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013) (noting that relevant provision of Pennsylvania Unfair Trade Practices and Consumer Protection Act requires knowledge of falsity of statements or misleading nature of acts); *Viguers v. Philip Morris USA, Inc.*, 837 A.2d 534, 540 (Pa. Super. Ct. 2003) (holding that for an omission to constitute fraud, there must be intentional concealment, which implies knowledge).

Tennessee: *Faye v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) (holding that failure to disclose material facts can incur liability coextensive with affirmative misrepresentations under the Tennessee Consumer Protection Act but relying on cases regarding Tennessee common-law fraud for this idea, which specify that the coextensive liability applies only to omissions of known facts. *See, e.g.*, *Justice v. Anderson Cty.*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997)).

Texas: *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (requiring knowledge for Texas common-law fraud).

Utah: *Martinez v. Best Buy Co., Inc.*, 283 P.3d 521, 523 (Utah Ct. App. 2012) (requiring "intentional or knowing behavior" to violate Utah Consumer Sales Practices Act); *Elder v. Clawson*, 384 P.2d 802, 804 (Utah 1963) (holding that omissions are actionable as Utah common-law fraud only for matters known to defendant).

Virginia: *Guy v. Tidewater Inv. Props.*, No. L-95-1194, 1996 WL 33465397, at *10 (Va. Cir. Ct. 1996) (holding that "concealment" can qualify as a misrepresentation under the Virginia Consumer Protection act or Virginia common-law fraud, but "concealment" is described as actively hiding a fact, which necessarily implies knowledge of the concealed fact).

West Virginia: *Soyoola v. Oceanus Ins. Co.*, 986 F. Supp. 2d 695, 709 (S.D.W. Va. 2013) (holding that West Virginia common-law fraud by omission requires intent to mislead or defraud by "one with knowledge, or the means of knowledge").

Wisconsin: *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 n.4 (Wis. 2004) (holding that fraud by omission is not actionable under the Wisconsin Deceptive

fraud or consumer protection law without a properly pleaded "what" of the alleged omission, namely, Ford's knowledge of the lug nut defect. Claims 2, 3, 6, 7, 10, 11, 12, 13, 15, 16, 20, 21, 27, 28, 30, 31, 37, 38, 42, 43, 46, 49, 50, 53, 54, 55, 59, 60, 62, 63, 66, 67, 70, 71, 75, 76, 79, 80, 84, 85, 89, 90, 92, 93, 99, 100, 103, 104, 106, 107, 110, 111, 115, 117, and 118 must therefore be dismissed.

V. <u>Unjust Enrichment Claims</u>

Finally, Plaintiffs assert unjust enrichment claims under the laws of several states. Plaintiffs fail, however, to allege facts sufficient to establish that Ford obtained any benefit from the complained-of conduct. Plaintiffs base their unjust enrichment claims on: (1) an allegation that Ford's defective lug nuts are less expensive than other lug nuts, and (2) an allegation that by refusing to replace the lug nuts, Ford benefits from having neither to purchase new lug nuts for its customers nor to reimburse its dealers for replacing the lug nuts. ECF 14, PgID 619–20. Neither of those allegations, however, sufficiently allege facts that Ford obtained a benefit. Concerning the statement that the two-piece lug nuts are cheaper than other lug nuts, Plaintiffs allege no facts supporting the assertion. Counsel for Plaintiffs conceded during the hearing on the motion to dismiss that the two-piece lug nuts Ford uses are more expensive to purchase on the open market than other lug nuts. The lack of facts supporting the assertion that the two-piece lug nuts are cheaper

---

Trade Practices Act); *State v. Abbott Labs.*, 816 N.W.2d 145, 161 (Wis. 2012) (holding that Wisconsin common-law fraud requires intent to defraud or induce action, which necessarily requires knowledge of an omitted fact).

than other lug nuts— especially in light of contradictory evidence presented during the motion hearing—fails to raise the claim above the speculative level.

Regarding the assertion that Ford benefits by not having to purchase new lug nuts for its customers or reimburse its dealers, if true, those facts would benefit Ford only if Ford otherwise had a duty to pay for the lug nut replacements. And the sole time that Ford has such a duty is if a customer's lug nuts were subject to a valid Repair and Replace Warranty. Because the Court already determined that Plaintiffs failed to adequately plead presentment within the warranty period, the second basis for the unjust enrichment claims necessarily is without merit. Because Plaintiffs fail to allege facts sufficient to plead any unjust enrichment claim, claims 4, 8, 14, 17, 22, 29, 33, 39, 44, 47, 51, 56, 61, 64, 68, 72, 77, 81, 86, 91, 94, 102, 105, 108, 112, 116, and 119 must be dismissed.

Accordingly, plaintiffs have presented no legally viable claims, and the Court must dismiss the case in its entirety.

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss Plaintiffs' first amended class action complaint [19] is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**.

**SO ORDERED**.

s/Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: January 4, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 4, 2019, by electronic and/or ordinary mail.

                                              s/David P. Parker
                                              Case Manager